IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SARAH TONEY, on behalf of herself and others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) No. 1:13-cv-42 |
| v. | ) Judge John F. Grady<br>)<br>) |
| QUALITY RESOURCES, INC., STOMPEEZ, SYNERGY, LTD., LEISURE TIME SAVINGS, and DIRECT DISCOUNT CLUB,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>) |

### DEFENDANTS', QUALITY RESOURCES, INC. AND STOMPEEZ, MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND/OR MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56(c), Defendants QUALITY RESOURCES, INC. ("Quality") and STOMPEEZ ("Stompeez") (collectively, "Defendants") move for an order dismissing Plaintiff Sarah Toney's ("Plaintiff" or "Toney") Complaint (the "Complaint") for failure to state a claim for which relief can be granted and/or granting summary judgment in favor of Defendants (the "Motion"). Defendants' Motion should be granted for five (5) reasons, detailed further below: (1) Toney consented to receive calls from Defendants; (2) Defendants were permitted to call Plaintiff and ultimately attempt to upsell the services of a third party; (3) Toney cannot assert a "do not call"("DNC") list violation when she never actually alleges that her number was registered as such; (4) nowhere in the Complaint is any specific factual allegation of any wrongdoing by Stompeez; and (5) the Complaint fails to set forth any facts which would support the maintenance of this matter as a class action. As such, there is no issue of genuine fact here and Plaintiffs fail to state a claim for which relief can be granted under the Telephone

Consumer Protection Act.

## I. FACTUAL BACKGROUND

On January 3, 2013, Plaintiff, on behalf of herself and a putative class, filed the Complaint and Motion for Class Certification against, *inter alia*, Quality and Stompeez alleging two (2) counts for violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA") and requesting injunctive relief to bar future TCPA violations.[1]

### A. Quality.

Quality has been in business since 1992.[2] As part of its corporate model, the company has agreements with various vendors (who sell goods to consumers) to provide order verification to ensure that there is no fraud or mistakes in online orders.[3] In verifying an online transaction, Quality does *not* make unsolicited phone calls.[4] Rather, Quality confirms the consumer's purchase, name, shipping address, telephone number, and in some cases, the last four (4) digits of the consumer's credit card that was used to make the purchase.[5] In the event that Quality detects an inconsistency between the online order and the information provided during the call, it promptly reports any issues back to the vendor.[6]

By agreement with the vendor, Quality is permitted to offer each of the customer's additional services or products for sale ("upsells") after the verification process.[7] The upsells are offered as part

---

1. *See* DE 1 ("Complaint") at ¶1; ¶¶52-54.

2. *See* Declaration of Cheryl Mercuris at ¶2, a true and correct copy of which is attached hereto as Exhibit A.

3. *See* Declaration of Cheryl Mercuris at ¶2.

4. *See* Declaration of Cheryl Mercuris at ¶3.

5. *See* Declaration of Cheryl Mercuris at ¶3.

6. *See* Declaration of Cheryl Mercuris at ¶4.

7. *See* Declaration of Cheryl Mercuris at ¶5.

of the confirmation telephone call as permitted by law and are fulfilled by independent sellers.[8] **Quality has never worked with, or on behalf of, Synergy, Ltd., Leisure Time Savings, or Direct Discount Club, or tried to upsell their products and/or services.**[9]

### B. Stompeez

Stompeez sells children's slippers and it markets them, in part, online.[10] To ensure the accuracy of Stompeez online orders, it verifies the information that customers input on its website.[11]

### C. Stompeez's and Quality's actions pertaining to Plaintiff.

Toney ordered Stompeez slippers online on Saturday, December 8, 2012.[12] The next business day, on December 10, 2012, Quality attempted to verify the order on behalf of Stompeez but was unable to reach Toney.[13] The following day, Quality called and reached Toney.[14] During this call, which lasted approximately 113 seconds, Quality verified Toney's order, shipping address, and insured there were no other errors.[15] At no point in time did Quality attempt to "advertise[] online shopping clubs Direct Discount Club and Leisure Time Savings" as alleged by Plaintiff in the Complaint.[16]

Ultimately, (and entirely unconnected to the slippers order and Quality), it appears that Toney confused Quality's caller ID with sales offers from the other defendants in this matter,

---

8. *See* Declaration of Cheryl Mercuris at ¶5.
9. *See* Declaration of Cheryl Mercuris at ¶9.
10. *See* Declaration of Cheryl Mercuris at ¶6.
11. *See* Declaration of Cheryl Mercuris at ¶6.
12. *See* Declaration of Cheryl Mercuris at ¶6; Complaint at ¶10.
13. *See* Declaration of Cheryl Mercuris at ¶6.
14. *See* Declaration of Cheryl Mercuris at ¶6.
15. *See* Declaration of Cheryl Mercuris at ¶7.
16. *See* Declaration of Cheryl Mercuris at ¶8.

Synergy, Ltd., Leisure Time Savings, and/or Direct Discount Club (or someone working on one or all of their behalves). Since Quality and Stompeez do not work with, or on behalf of, any of those three companies,[17] it can only surmise that one or all of those entities (or an affiliate of theirs) called Toney around the same time and that Toney simply confused the separate calls. In any event, Quality did not make an unsolicited call to Toney.[18] Accordingly, Plaintiff's Complaint should be dismissed for failure to state a claim, or in the alternative, summary judgment should be granted in favor of Defendants.

## II. LEGAL STANDARDS

### A. Motion to Dismiss Standard.

A motion under Rule 12(b)(6) challenges the legal sufficiency of a complaint.[19] When examining the merits of a Rule 12(b)(6) motion, the complaint's factual allegations are accepted as true and construed most favorably to the plaintiff.[20] While "well-pleaded" factual allegations are required to be accepted as true, the court does not have any obligation to accept as true legal conclusions or unwarranted factual inferences.[21] Federal Rule of Civil Procedure 8(a) sets for the basic federal pleading standard, requiring a "short and plain statement of the claim" that sufficiently notifies *each* defendant of both the claim and its supporting grounds.[22] However, "Rule 8(a)(2) still

---

17. *See* Declaration of Cheryl Mercuris at ¶9.

18. *See* Declaration of Cheryl Mercuris at ¶6.

19. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811 (7th Cir. 2009).

20. *Brown v. Michigan Dep't of Corrections*, Civil Case No. 06-14468, 2007 WL 295235 at *1 (E.D. Mich. Jan. 29, 2007).

21. *Id.* at *1; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009).

22. Fed. R. Civ. P. 8(a); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

requires a 'showing,' rather than a blanket assertion, of entitlement to relief."[23] Consequently, a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[24] "Factual allegations must be enough to raise [the plaintiff's] right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true."[25] In short, an actionable complaint must include "enough facts to state a claim to relief that is plausible on its face."[26]

Further, when a complaint involves multiple parties and multiple claims, each claim should make it clear which defendant or defendants are alleged to have committed which wrong(s). "If it is 'impossible to tell from the face of the complaint which defendants were accused of which violations, what specific acts constituted violations, or when alleged violations occurred,' such a complaint fails to state a claim upon which relief can be granted."[27] Courts have consistently found that "lumping" defendants together fails to satisfy Rule 8(a) because, in large part, a complaint employing such a technique fails entirely to assert individualized allegations as to each separate defendant.[28] According to the court in *Citco Group*, "[t]his lumping technique 'creates confusion and make [sic] the analysis [of the complaint] unnecessarily burdensome,' resulting in . . . making

---

23. *Twombly*, 127 S.Ct. at 1965 n. 3.

24. *Twombly*, 127 S.Ct. at 1964-65 (citation omitted); *see also Howley v. U.S. Patent and Trademark Office*, No. 08-13976-BC, 2008 WL 4852684 at *1 (E.D. Mich. Nov. 7, 2008).

25. *Twombly*, 127 S.Ct. at 1965 (citations omitted).

26. *Twombly*, 127 S.Ct. at 1974; *Ashcroft*, 129 S. Ct. at 1949.

27. *Howley*, 2008 WL 4852684 at * 2; *Wilstein v. San Tropai Condo. Master Ass'n*, 1999 WL 51805 (N.D. Ill. Jan. 30, 1999).

28. *See, e.g., Court Appointed Receiver of Lancer Offshore, Inc. v. The Citco Group Ltd.*, No. 05-60080, 2011 WL 1233126 (S.D. Fla. Mar. 30, 2011).

accusations that are 'just not accurate.'"[29] In *Howley*, the plaintiff's complaint was dismissed for the very same reasons as those asserted herein, *i.e.*, that the Complaint "never alleges that any specific wrong was committed by any distinct defendant. Instead, the complaint only refers to 'defendant(s)' collectively."[30] For this reason alone, dismissal is warranted.[31]

### B. Summary Judgment Standard.

A party may move for summary judgment on any "claim or defense," or "part of [a] claim or defense."[32] Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[33] A dispute is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law.[34]

A defendant can prevail on summary judgment merely by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support [any essential element of] the nonmoving party's case."[35] That showing may be based on citations to, *inter alia*, "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits."[36] Once a

---

29. *Id.* at *2 (quoting *Court Appointed Receiver of Lancer Offshore, Inc. v. The Citco Group Ltd.*, No. 05-60080, 2008 WL 926512 (S.D. Fla. Mar. 31, 2008).

30. *Id.*

31. Furthermore, lumping the Defendants together as a supposed "joint enterprise" based upon "information and belief" is wholly improper and insufficient to establish anything. *See Swift v. First USA Bank*, No. 98 C 8238, 1999 WL 965449 at *4 (N.D. Ill. Sep. 30, 1999) ("pleading 'upon information and belief' is patently improper and insufficient under the requirements of federal law").

32. Fed. R. Civ. P. 56(a); *see also Pesek v. Caterpillar Inc.*, 10 C 3546, 2012 WL 3069773 (N.D. Ill. July 27, 2012).

33. Fed. R. Civ. P. 56(a).

34. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

35. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), quoting Fed. R. Civ. P. 56(c).

36. *Early v. Bankers Life & Cas. Co.*, 853 F. Supp. 1074, 1079 (N.D. Ill. 1994) *aff'd*, 65 F.3d 170 (7th Cir. 1995); *see also* Fed. R. Civ. P. 56(c)(1)(A).

defendant meets its initial obligation of showing there is no genuine dispute of material fact, the onus shifts to the plaintiff to come forward with admissible evidence from which a reasonable jury could find that he has met his burden of proof.[37] It is not enough to produce "colorable" evidence; a plaintiff must proffer "significantly probative" evidence, and cannot rely on mere allegations.[38] Similarly, speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact.[39] A plaintiff's naked assertion against sworn testimony does not raise a genuine issue of material fact; rather it pits sworn testimony against speculation, conjecture and self-serving conclusions.[40]

Even if a summary judgment motion is not granted, the court "may enter an order stating any material fact ... that is not genuinely in dispute and treating the fact as established in the case."[41] Thus, where particular issues can properly be adjudicated without trial, courts are authorized to make such rulings even if doing so would not dispose of an entire claim.[42]

## III. ARGUMENT

### A. Toney consented to receive calls from Defendants.

Quality has an agreement with Stompeez to perform order verifications as described above and on behalf of Stompeez.[43] Quality called Toney at the phone number she inputted on an online

---

37. *Celotex*, 477 U.S. at 322-23.

38. *Anderson*, 477 U.S. at 247-49, 256-57; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

39. *Roney v. Illinois Dept. of Transp.*, 376 F. Supp. 2d 857, 864-65 (N.D. Ill. 2005) *aff'd*, 474 F.3d 455 (7th Cir. 2007).

40. *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 934 (7th Cir. 1997).

41. Fed. R. Civ. P. 56(g).

42. *Id.*

43. *See* Declaration of Cheryl Mercuris at ¶5.

12233790:2

order form for Stompeez slippers.[44] Toney provided this number and directed that it be used for questions about her order. Indeed, the order form on Stompeez's website (www.stompeez.com) discloses that a phone number is required when placing an order online "for questions about order."[45] Additionally, Stompeez's website's Privacy Policy contains a section entitled "How We Use the Information We Collect."[46] The Privacy Policy discloses that "[t]he information we collect is used to communicate with you about your product orders ... [and] shared with other organizations to help them contact consumers by e-mail and/or telephone for marketing purposes ..."[47] Toney further consented to being contacted inasmuch that the first paragraph of the Privacy Policy clearly states "[b]y using any of the Websites, you signify that you have read, understand and agree to be bound by this Privacy Policy."[48] In short, Toney consented to the call that verified her order and specified that she be called on her cell phone. The Complaint, Exhibits, and Declaration clearly establish this fact and it is not, and cannot be controverted by Plaintiff.

Given Toney's provision of her number and express consent to being called by Stompeez affiliates, Quality's calling of Toney's cell phone does not constitute a violation of the TCPA.[49]

---

44. *See* Declaration of Cheryl Mercuris at ¶6.

45. A true and correct copy of the portion of the order form including this disclosure is attached hereto as ***Exhibit B***; *see* Declaration of Cheryl Mercuris at ¶10; *see also* Complaint at ¶11 ("The web order form Ms. Toney filled out also had a section that required her to provide her telephone number. The form specified that the phone number was being provided for 'questions about her order.'").

46. A true and correct copy of Stompeez's website's Privacy Policy is attached hereto as ***Exhibit C***; *see* Declaration of Cheryl Mercuris at ¶11.

47. *See **Exhibit C***.

48. *See **Exhibit C***.

49. "Defendant in the instant case does not make 'vague assertions' about the nature of prior business relationships and consent, but has offered specific evidence of the same." *G.M. Sign, Inc. v. Brink's Mfg. Co.*, Case No. 09 C 5528, 2011 WL 248511, at *9 (N.D. Ill. Jan. 25, 2011) (denying plaintiffs' motion for class certification on TCPA claim because class definition would require several mini trials to determine whether there was a prior business relationship between each class member and defendant).

Toney ***voluntarily provided her cell phone number*** with her slippers order, designating such number as her primary contact to confirm and verify her order.[50] Indeed, Plaintiff's Complaint acknowledges that she included her cell phone number at the time of ordering for questions about her order.[51] This is precisely what Quality did – call Toney to confirm and verify her order.

The Federal Communications Commission ("FCC") has clarified what constitutes "express consent" under the statute pursuant to its authority to create rules and regulations implementing the TCPA.[52] Specifically, the FCC ruled that:

> persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached.[53]

In similar instances where a plaintiff provided her cellular telephone number as a contact number, courts in this district have concluded that the plaintiff provided her express consent to be contacted.[54]

For example, in *Frausto*, the plaintiff provided his personal information when registering for a PayPal account.[55] Among other disclosure provisions, the PayPal agreement stated the following:

> 1.10 Calls to You. By providing PayPal a telephone number (including a wireless/cellular telephone), you consent to receiving autodialed and prerecorded message calls from PayPal at that number.

---

50.  *See* Declaration of Cheryl Mercuris at ¶6; Complaint at ¶10.

51.  *See* Complaint at ¶11.

52.  *See* 47 U.S.C. § 227(b)(2).

53.  *Greene v. DirecTv, Inc.*, Case No. 10 C 117, 2010 WL 4628734, *3 (N.D. Ill. Nov. 8, 2010) (granting summary judgment to defendants finding that no genuine issues of fact existed regarding whether plaintiff provided her express consent to defendants to contact her at her cellular telephone number).

54.  *Greene*, 2010 WL 4628734 at *3.

55.  *See Frausto v. IC Sys., Inc.*, Case No. 10 CV 1363, 2011 WL 3704249, *1 (N.D. Ill. Aug. 22, 2011) (granting summary judgment finding plaintiff expressly consented to be contacted on her cell phone by agreeing to defendant's user agreement); *see also Greene*, 2010 WL 4628734 at *3.

> 1.2 Your Privacy. Protecting your privacy is very important to PayPal. Please review our Privacy Policy in order to better understand our commitment to maintaining your privacy, as well as our use and disclosure of your Information.[56]

Specifically, PayPal's privacy policy indicated that PayPal may use customer's personal information, among other things, to resolve disputes and collect fees.[57] The *Frausto* court held that the plaintiff's agreement to this online user agreement equivocated express consent to be called by PayPal, or anyone acting on PayPal's behalf. Accordingly, here, where Plaintiff provided her cellular telephone number to Stompeez to be contacted regarding her order, she expressly consented to be called by Stompeez or anyone working on Stompeez's behalf. Thus, pursuant to this prior business relationship between Plaintiff and Stompeez and Plaintiff's express consent to be called, Quality's call to Plaintiff was in compliance with the TCPA.[58]

### B. Quality did not attempt to upsell any of the services and/or products alleged by Plaintiff; even if it did, however, Defendants were permitted under the TCPA to call Plaintiff's cell phone and ultimately attempt to upsell the services of a third party.

It is important to note from the outset that Quality did not market or attempt to upsell any of the services and/or products as alleged by Plaintiff in the Complaint. However, after verifying and completing her order, Quality would have been permitted to market or upsell another product for several reasons. First, Toney was already on the phone with Quality, who abided by the applicable TSR requirements for upselling.[59] Second, the Privacy Policy on Stompeez's website disclosed that

---

56. *See Frausto*, 2011 WL 3704249 at *1.

57. *See Frausto*, 2011 WL 3704249 at *1.

58. "[T]he term 'business relationship' should be construed broadly and that an EBR is 'a prior or existing relationship formed by a voluntary two-way communication between the caller and the called party, which relationship has not been previously terminated by either party." *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 451 (7th Cir. 2010) (affirming district court's granting of summary judgment dismissing TCPA claim where parties' relationship fell within the scope of business relationships the FCC intended).

59. The TSR requires that telemarketers soliciting sales of goods or services promptly disclose several key pieces of information in an outbound telephone call or an internal or external

*Motion to Dismiss/Summary Judgment*
Case No. 1:13-cv-42

use of the website and inputting contact information was an acceptance of the Privacy Policy.[60] Third, upsells are not subject to the national "Do Not Call" registry provisions.[61] Thus, as a matter of law, Quality was authorized under the TCPA both to call Toney and attempt to upsell Plaintiff products and services.

Accordingly, Plaintiff's Complaint fails to state a claim under the TCPA for which relief can be granted as a matter of law. In the alternative, summary judgment should be entered here in Defendants' favor because there is no genuine issue of material fact as to whether Toney consented to being called by Quality.

### C. Toney cannot assert a DNC violation when she never actually alleges that her number was registered as such.

Count I of the Complaint alleges violations of §227(c) of the TCPA, specifically, that "[t]he TCPA prohibits persons or entities from initiating telephone solicitations to registered telephone subscribers of the Federal Do Not Call Registry."[62] In order to bring a private right of action under §227(c), a plaintiff must allege that he or she received more than one telephone call within a 12 month period in violation of the registry provision.[63] Conspicuously, however, nowhere in the Complaint does Plaintiff allege that her number was actually on the DNC registry.

---

upsell: (1) the identity of the seller; (2) the fact that the purpose of the call is to sell goods or services; (3) the nature of the goods or services being offered; and (4) in the case of prize promotions, that no purchase or payment is necessary to win. *See* 16 C.F.R. §310.4(d); *see also* 16 C.F.R. §310.2(ee) (defining "upselling" as "the purchase of goods or services following an initial transaction during a single telephone call. The upsell is a separate telemarketing transaction, not a continuation of the initial transaction."). Telemarketers must also disclose in any telephone sales call the cost of the goods or serves and certain other material information. *See* 16 C.F.R. §310.3(a)(1).

60. *See Frausto*, 2011 WL 3704249 at *1; *see also Greene*, 2010 WL 4628734 at *3.

61. The FTC made it clear that "[t]he Commission does not intend for upselling to be subject to the "do-not-call" requirements . . ." *See* FTC's Final Amended Rule and accompanying Statement of Basis and Purpose at p.45, http://www.ftc.gov/os/2002/12/tsrfrn.pdf (last visited February 26, 2013).

62. Complaint at ¶42.

63. *See* 47 U.S.C. §227(c)(5).

12233790:2

Similarly, the Complaint notes that even where individuals are on a "Do Not Call Registry" and solicitors are not otherwise permitted to call the particular number, there is a safe harbor provision that exempts from liability a person or entity making a telephone solicitation who obtained prior permission to make the call.[64] Since Toney consented to receiving a call on her cell phone to verify her order,[65] Quality's initiation of a call to that number was permissible under the TCPA notwithstanding whether the number was on a "Do Not Call" list, or that the number went to her cell phone.[66]

### D. Nowhere in the Complaint is any specific factual allegation of any wrongdoing by Stompeez.

Notably, Plaintiff does not allege any specific wrongdoing as against Stompeez or on Stompeez's behalf. Instead, Plaintiff impermissibly lumps all Defendants together to make broad legal conclusions. Legal conclusions will not suffice to state a plausible claim for relief.[67] Such legal conclusions are particularly insufficient in actions such as these where Plaintiff accuses *all* Defendants, including Stompeez, of "willful" and "knowing" violations of law, as well as participating in some sort of joint enterprise. Plaintiff does not allege Stompeez made any phone calls here, nor any sort of common law vicarious liability theory between Stompeez, Quality, and the other defendants in this matter. Plaintiff must provide *facts*, which she has blatantly failed to do and cannot do. Neither Quality nor Stompeez has ever worked with, or on behalf of, Synergy, Ltd., Leisure Time Savings, or Direct Discount Club, or tried to upsell their products and/or services.[68]

---

64. *See* Complaint at ¶26; *see also* 16 CFR §310.4(b)(iii)(B)(i).

65. *See* Complaint at ¶¶26-27.

66. "[T]he TCPA does not prohibit calls in which consumers have consented to the call..." *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1012 (N.D. Ill. 2010).

[67] *Ashcroft*, 129 S. Ct. at 1949-40; *Abbas v. Selling Source, LLC*, 2009 WL 4884471 (N.D. Ill.) ("Legal conclusions, however, are not entitled to any assumption of truth.").

68. *See* Declaration of Cheryl Mercuris at ¶9.

Plaintiff does not, because she cannot, plausibly allege any connection between Stompeez, Quality, and the other Defendants. As such, the Complaint should be dismissed.

### E. Plaintiff's claim for a class action is not plausible and must be dismissed.

Despite her inability to state a plausible claim for relief under any theory asserted, Plaintiff seeks to represent two putative nationwide classes consisting of:

> All persons or entities within the United States whose phone numbers were registered on the national Do Not Call Registry, and who, within the four years prior to the filing of the initial Complaint, receiving more than one telemarketing call within any twelve-month period of time from, or on behalf of, any Defendant where the purpose of the call was to promote goods or services.[69] (the "Count I Class")

> All persons within the United States who the Defendants, or an entity or entities acting on their behalf, caused to be initiated telemarketing calls to cell phone numbers, at any time within the four years prior to the filing of the instant Complaint, where the purpose of the all included anything other than "for questions about orders," (e.g., telemarketing).[70] (the "Count III Class")

Putting aside for a moment that Plaintiff herself does not even belong in the either the Count I Class or Count III Class definitions asserted in the Complaint, due to not being registered with the DNC and giving her consent to be called, there are further deficiencies with Plaintiff's class allegations. The Complaint barely contains a "bare recitation" of the elements of a class action. "Mere repetition of the language of Rule 23(a) is not sufficient" and "[t]here must be an adequate statement of the basic *fact[s]* to indicate that each requirement of the Rule is fulfilled."[71] The burden

---

69. Complaint at ¶29.

70. Complaint at ¶30.

71. *Gloria v. Allstate County Mut. Ins. Co.*, No. SA-99-CA-676-PM, 2000 WL 235854563, at *9 b, 109 (W.D. Tex. Sep. 29, 2000) (citing to *In Re Am. Me. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1976)); *Cook Cnty. College Teachers Union, Local 1600, American Federation of Teachers v. Byrd*, 456 F.2d 882, 885 (7th Cir. 1972) (holding that the class seeking to be certified was "obliged in its complaint to allege facts bringing the action within the appropriate requirements of the Rule."); *Travis v. City of Chicago*, 86 C 1133, 1984 WL 15709 (N.D. Ill. Sept. 16, 1984); *Weathers v. Peters Realty Corp.*, 499 F.2d 1197 (6th Cir. 1974); *Doctor v. Seaboard Coast Line R.R. Co.*, 540 F.2d 599, 706-10 (4th Cir. 1976) (denying class certification because plaintiff provided no facts about the existence of alleged class); *Iqbal*, 129 S. Ct. at 1951.

is on the plaintiff, the party seeking to utilize the class action device, to establish his right to do so.[72] Class action allegations are subject to the same Rule 12(b)(6) standards.[73] Thus, as a preliminary matter, Plaintiffs must plead ultimate facts to satisfy all four of the prerequisites contained in Rule 23(a)[74], as well as one of the subcategories of Rule 23(b). The Complaint contains *no facts* to support the conclusory class allegations. By way of example only, the Complaint conclusorily states that "joinder of all members is impractical," that the "Named Plaintiffs' claims are typical of the claims of the Class" and that "[c]ommon questions of law and fact predominate."[75] These conclusions are not supported by fact(s) and thus, dismissal is required.

In addition, the proposed class is far too broad and would require an inordinate number of individualized determinations to ascertain class membership. Although not properly pled, Plaintiffs seem to be alleging that Defendants' purported conduct was "knowing" and "willful." Justifiably, class relief is generally rejected in claims such as these, as the inquiries are highly individualized and specific facts for each putative class member necessarily differs, especially as to matters of proof and reliance. In addition, while Plaintiffs have attempted to "lump" all Defendants together, it will be

---

72. *Senter v. General Motors Corp.*, 532 F. 2d 511, 522 (6th Cir. 1976).

73. *See Manning v. Boston Med. Center Corp.*, No. 09–11463–RWZ, 2012 WL 1355673 at *3 (D. Mass. April 18, 2012); *In re Iowa Ready Mix Concrete Antitrust Litigation*, 768 F. Supp. 2d 961, 974-76 (N.D. Iowa 2011) (granting motion to dismiss where proposed class action lawsuit contained nothing more than conclusory class action allegations).

74. Federal Rule of Civil Procedure 23(a) requires the following prerequisites to maintain a class action: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). In addition, an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and: (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b).

75. Complaint at ¶¶31, 37.

incumbent upon Plaintiffs to demonstrate that each Defendant acted knowingly and willfully. Adjudicating these claims would necessarily require a mini-hearing for each possible class member and proof by each class member as to the separate conduct of each Defendant. Determining class membership, therefore, would devolve into a series of fact-finding hearings that would effectively render the case unmanageable.

Indeed, the Supreme Court recently rejected a class action based on a purported violation of a statute in *Wal-Mart Stores, Inc. v. Dukes*.[76] In *Dukes*, the Supreme Court ruled that the plaintiff must show that class members "have suffered the same injury," not "merely that they have all suffered a violation of the same provision of law."[77] The required inquiries here would rely upon highly individualized and specific facts that would differ for each person. Thus, a mini-hearing for each putative class member would be needed. This effectively renders the case unmanageable.

Plaintiffs further fail to identify common questions of law or fact of the purported class sufficient to meet the commonality element. Indeed, Plaintiffs lump the Rule 23 elements together for both proposed classes, without pleading separate and distinct allegations for each proposed class. Indeed, Plaintiffs offer several questions that pertain only to the activity of Defendants (improperly lumping them all together) in relation to the TCPA, but which have nothing to do with the class members' alleged injuries or the specific conduct of each Defendant. The questions would only answer whether the putative class members suffered a violation of the same statute, not that the class members suffered the same injury. Not one of these questions relates in any way to demonstrating that each potential class member has suffered any injury, let alone that each has suffered the *same* injury. The Supreme Court noted in *Dukes* that what matters to class certification is not simply the

---

76. 131 S.Ct. 2541, 2011 WL 2437013 at *7 (U.S. 2011).
77. *Id.*

raising of common questions, "but rather, the capacity to generate *common answers* apt to drive the resolution of the litigation."[78] The answers to Plaintiffs' questions have only to do with the alleged violation of a particular statute, they have nothing to do with the individual class members' commonality.

Even still, the TCPA requires an individualized showing with respect to each purported class member as to whether consent was provided.[79] According to *Dukes,* this is impermissible. Moreover, class certification in TCPA cases is difficult to obtain, particularly where "consent" will be an issue, which will certainly be the case here.[80] In *Gene and Gene*, the Fifth Circuit Court of Appeals held that the "plaintiff must advance a viable theory employing generalized proof to establish liability with respect to the class involved, and it means too that district courts must only certify class actions filed under the TCPA when such a theory has been advanced." Here, however, Plaintiffs have not advanced any theory employing generalized proof to establish liability, let alone a *viable* theory.

Plaintiffs apparently invoke Rule 23(b)(3) as the proposed structure of the class they seek to certify but provide no facts to support that construction. As explained above, common issues of fact or law do not predominate here, and no class action can plausibly be stated. Likewise, a class action is simply not the superior (or only) mechanism for resolving the issues involved in this lawsuit.

## IV. CONCLUSION

Because(1) Toney consented to receive calls from Defendants; (2) Defendants were permitted to call Plaintiff and ultimately attempt to upsell the services of a third party; (3) Toney

---

78. *Id.*

79. *See G.M. Sign*, 2011 WL 248511 at *9 (denying plaintiffs' motion for class certification on TCPA claim because class definition would require several mini trials to determine whether there was a prior business relationship between each class member and defendant).

80. *See, e.g., Forman v. Data Transfer*, 164 F.R.D. 400 (E.D. Pa. 1995); *Gene and Gene, LLC v. Biopay LLC*, 541 F.3d 318 (5th Cir. 2008).

cannot assert a DNC list violation when she never actually alleges that her number was registered as such; (4) nowhere in the Complaint is any specific factual allegation of any wrongdoing by Stompeez; and (5) the Complaint fails to set forth any facts which would support the maintenance of this matter as a class action, Defendants QUALITY RESOURCES, INC. and STOMPEEZ respectfully request that this Court dismiss Plaintiff's Complaint for failure to state a claim, or in the alternative, grant summary judgment in favor of Defendants.

DATED: March 6, 2013                    Respectfully submitted,

*s/Richard W. Epstein*
RICHARD W. EPSTEIN, ESQ.
(Fla. Bar No. 229091)
Admitted Pro Hac Vice
Richard.Epstein@gmlaw.com
JEFFREY A. BACKMAN, ESQ
(Fla. Bar No. 0662501)
Admitted Pro Hac Vice
Jeffrey.Backman@gmlaw.com
GREENSPOON MARDER, P.A
200 East Broward Blvd., Suite 1500
Fort Lauderdale, Florida 33301
954.491.1120 (Telephone)
954.343.6958 (Facsimile)

Timothy A. Hudson
THudson@TDRLAWFIRM.com
TABET DiVITO & ROTHSTEIN, LLC
209 S. LaSalle Street, Suite 700
Chicago, Illinois 60604
Telephone: (312) 762-9450
Facsimile: (312) 762-9451
Firm No.: 38234

*Attorneys for Defendants*

12233790:2


*Motion to Dismiss/Summary Judgment*
Case No. 1:13-cv-42

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification on this 6th day of March, 2013.

*s/Richard W. Epstein*
Richard W. Epstein

12233790:2