**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SARAH TONEY on behalf of herself and others similarly situated, | ) ) | |
| Plaintiff, | ) | Case No. 1:13-cv-42 |
| | ) | |
| v. | ) | Judge Grady |
| | ) | |
| QUALITY RESOURCES, INC., STOMPEEZ, INFOMERCIALS, INC. SEMPRIS, LLC D/B/A BUDGET SAVERS and PROVELL, INC. F/K/A BUDGET SAVERS, | ) ) ) ) ) | |
| | ) | Jury Demanded |
| Defendants. | ) | |

**SECOND AMENDED COMPLAINT**

1.      Plaintiff Sarah Toney ("Plaintiff") brings this putative class action against the defendants to secure redress for their violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

2.      Plaintiff purchased children's slippers from defendant Stompeez around Christmas time 2012. Pursuant to a telemarketing agreement between defendants Stompeez, Infomercials, Inc., Quality Resources, Inc. and Sempris/Provell, Quality Resources called plaintiff's cell phone several times.

3.      Quality Resources has indicated that it made these calls *both* in order to "confirm" plaintiff's order, and in order to try to sell plaintiff goods and services of Budget Savers, which is currently owned and operated by defendant Sempris, LLC.

4.      These calls violate the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* because they were made using an automatic telephone dialing system, and because defendants did not have plaintiff's prior express consent to make the calls.

1

5.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy . . . ."  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).  Specifically, in enacting the TCPA, Congress outlawed telemarketing via unsolicited automated telephone calls, finding:

> Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
> . . . .
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call . . . , is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* § 2(10) and (12).

6.    The Defendants have engaged in an impermissible advertising campaign to persons who are on the National Do Not Call Registry; such campaign also includes calls using an automatic telephone dialing system and/or prerecorded voice, to cell phones.

## JURISDICTION AND VENUE

7.    The Court has federal question jurisdiction over the TCPA claims.  *Mims v. Arrow Financial Services, LLC,* 132 S.Ct. 740 (2012).

8.    Venue is proper because a substantial portion of the events complained of occurred in this District.

**PARTIES**

9.      Plaintiff is an individual who currently resides the Northern District of Illinois. Plaintiff's cell phone number is on the National Do Not Call Registry, and has been on the Registry since May 2009.

10.      Qualit**y** Resources, Inc. ("Quality") is a telemarketing company based in Clearwater, Florida.

11.      Stompeez is a company that sells children's slippers. Its website lists an address of 10303 Norris Ave., Pacoima, California. Upon information and belief, Stompeez has its headquarters and distribution warehouse at or near that address.

12.      Informercials, Inc. is a marketing company located in Springville, Utah.

13.      Sempris, LLC is a Delaware corporation located in Minnesota. Sempris runs a business called Budget Savers, which has a website of www.budgetsaversonline.com.

14.      Provell, Inc. was a Delaware corporation located in Minnesota. Provell was engaged in the type of telemarketing complained of in this case, before it was purchased by Sempris in around February 2011. Provell made calls to class members before it became defunct, just as Sempris did, and is therefore a proper party.

15.      Alternatively, Sempris is liable for the violations of Provell, by virtue of the fact that it purchased and assumed the telemarketing contracts and regime of Provell.

16.      Furthermore, piercing the corporate veil to find Sempris liable for Provell's violations may be appropriate in these circumstances.

17.      At the time of the call to plaintiff, and until around May 2013, the website for the products and services that were being sold during some calls that are the subject of this

case www.budgetsaversonline.com stated that the website was being operated by "Provell, Inc." even though  Provell, Inc. did not exist at that time. Exhibit A.

18.     Sempris was not mentioned on budgetsaversonline.com until after this lawsuit was filed.

19.     Finding Sempris liable for calls made by Provell makes sense: the sale of Provell to Sempris was made solely in order to take advantage of organizational and tax benefits available through Sempris' limited liability company status.

## FACTS

20.     On or about December 8, 2012, plaintiff ordered three pairs of Stompeez children's slippers. They were to be Christmas presents for relatives.  She made the order via the Internet website, Stompeez.com. She entered her shipping information and email.

21.     The web order form Ms. Toney filled out also had a section that required her to provide her telephone number. The form specified that the phone number was being provided "for questions about order."

22.     On or about December 10, 2012, the Plaintiff received three telephone calls on her cellular telephone. The caller ID for the calls was (866) 379-2003. All three of these calls were made by Quality at the direction of, and for the benefit of, Stompeez, Infomercials, Inc, and Sempris.

23.     On or about December 11, 2012, the Plaintiff received another telephone call from (866) 379-2003. This call was also made by Quality, on behalf of and at the direction of Infomericals, Inc., Stompeez and Sempris/Provell.

24.     The individual on the other end of the line told plaintiff that he was contracted by Stompeez to verify her address. After the address and other information was verified, the Quality representative then began trying to sell plaintiff Budget Savers goods and/or services.

25.     Quality has an agreement with Stompeez and Infomercials, Inc. that allows Quality to call Stompeez customers for the purpose of telemarketing the good or services of other Quality clients, including Sempris. Quality had a similar arrangement with Provell during the class period, until Provell transferred its telemarketing contract to Sempris.

26.     Quality made at least 12,887 such calls on behalf of Stompeez, Infomercials, Inc. and Sempris, between June 1, 2012 and June 1, 2013. 12,184 of these calls resulted in sales of Budget Savers goods and services, for Sempris.

27.     These calls to plaintiff were made with the express authorization of Sempris, and under its close supervision and control.

28.     For example, Sempris requires that all telemarketing calls made on its behalf by Quality be recorded, and that such recordings be consensual.

29.     Sempris requires that marketing solicitations be presented to call recipients "verbatim."

30.     Sempris requires that Quality provide Sempris' toll-free telephone number during telemarketing calls.

31.     Quality representatives are authorized to sell Sempris goods and services during telemarketing calls.

32. When a Quality telemarketing call such as that which was made to plaintiff results in a sale, which happens more often than not, Sempris has strict guidelines as to Quality's handling of credit card numbers and acceptance of Sempris terms and conditions.

33. Infomercials, Inc. and Stompeez also expressly authorized these calls, and exercised substantial control over them.

34. Stompeez and Informercials, Inc. expressly approved scripts used by Quality during the call to plaintiff and the class.

35. Stompeez and Informercials, Inc. approved the sale of other goods and services, including those of Budget Savers, during these telephone calls.

36. Stompeez and Informercials, Inc. require Quality to retain recordings of the telemarketing calls for two years.

37. Stompeez and Informercials, Inc. retain the right to monitor and audit the calls.

38. Stompeez and Informercials, Inc. warrant to Quality that they supposedly have an "existing business relationship" with each person like plaintiff that Quality called.

39. Upon information and belief, based upon discovery received, the script read during the call to plaintiff and some class members (and approved by defendants) is attached as Exhibit B.

40. The business model of Quality to "upsell" consumers products that they have no connection to, is disclosed to and approved by Stompeez, Infomercials, Inc. and Sempris. As the company whose products and services are being sold, Budget Savers, Sempris and their clients reap the benefit of these sales calls. Provell similarly reaped the benefit of such calls before it became defunct.

41.     Neither Ms. Toney nor the class consented to receive the calls that are the subject of this lawsuit.

42.     Neither Ms. Toney nor the class were explicitly informed that their information was going to be shared with marketing companies such as Quality, Infomercials, Inc., Provell or Sempris, that would attempt to sell her good or services through telemarketing.

43.     The calls to plaintiff, when answered, started with a distinctive click and pause prior to someone being on the line, indicating that they were coming from a predictive dialer. Upon information and belief, this call was dialed by a machine rather than by a human being.

44.     The calls to Ms. Toney were made using an automatic telephone dialing system.

45.     Defendants intended to make the calls that are the subject of this lawsuit. 47 U.S.C. §312(f)(1). The calls were made pursuant to a common policy, practice or procedure, that was developed with the purpose of selling goods and services, including telephone numbers that are on the National Do Not Call Registry, through use of an automated telephone system.

46.     Furthermore, defendants knew about the TCPA and entered into the agreement described herein in spite of such knowledge. Indeed, the contracts among the parties specifically contemplate what happens if the calls are found to violate the TCPA.

47.     The telemarketing scheme and joint agreement that is the subject of this lawsuit was designed in an effort to "game the system" through the performance of illegal telemarketing that was designed to look legal and legitimate.

48.     Plaintiff and the class all suffered the same injury in that their privacy rights were improperly and illegally invaded by defendants' improper automated telemarketing calls.

## THE LEGAL BASIS OF THE CLAIMS

49.     The claims of the Plaintiff, and the class of persons she seeks to represent, arise pursuant to the provisions of the TCPA, a federal statute enacted to prohibit unreasonable invasions of privacy via certain telemarketing practices.

### *The TCPA explicitly prohibits telemarketing calls made using an automated dialing system*

50.     The TCPA has clear restrictions with respect to the use of automated telephone equipment, stating, "It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system to any telephone number assigned to a...cellular telephone service." 47 U.S.C. § 227(b)(1)(a)(iii).

51.     Prior express consent does not exist unless, prior to the placement of the call, the called party has:

(a)     clearly stated that the telemarketer may call, and

(b)     clearly expressed an understanding that the telemarketer's subsequent call will be made for the purpose of encouraging the purchase of goods or services.

*See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C.R. 1830 at para. 7 (FCC 2012), quoting *In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 F.C.C.R. 12391, 12396, para. 11 (FCC 1995). Asking for consent to market goods and services during the pendency of a call that has already been made is not permissible. *In re Rules and Regulations Implementing the Telephone Consumer*

*Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14,014, 14,095-14,097; ¶136-142

(July 3, 2003).

### The TCPA prohibits telemarketing calls made to persons and entities listed on the Do Not Call Registry

52.     In 1995, under its authority to adopt rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108, the FTC adopted the Telemarketing Sales Rule, 16 C.F.R. § 310, which was later amended in 2003. Among other things, the amended TSR established a "Do Not Call Registry." The Registry lists the telephone numbers of consumers who have informed the FTC that they do not wish to receive certain types of telemarketing calls.

53.     The TCPA prohibits persons or entities from initiating telephone solicitations to registered telephone subscribers. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c). A person whose number is on the Registry, and who has received more than one telephone call within any 12 month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages. 47 U.S.C. § 227(c)(5).

54.     The law contains a safe harbor provision that exempts from liability a person or entity making telephone solicitations (or on whose behalf telephone solicitations are made) who has obtained the subscriber's prior express invitation or permission to make the call. 47 C.F.R. § 64.1200(c)(2)(ii).

55.     Such permission must be evidenced by a signed, written agreement between the consumer and seller that states the consumer agrees to be contacted by this seller, and includes the telephone number to which the calls may be placed. 47 C.F.R. § 64.1200(c)(2)(ii).

56.     The rules promulgated by the FCC are distinct from those promulgated by the FTC. Companies are charged with complying with *both* sets of regulations and statutes, including the FCC's TCPA, 47 C.F.R. §64.1200 *et seq*, and the FTC's Telemarketing Sales Rule, 16 C.F.R.§310.1 *et seq.*

57.     Calls that have more than one purpose, so-called "dual purpose calls" under the FCC rules, regulations and orders, are impermissible if one purpose of the call is telemarketing. *Chsebro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14,014, 14,095-14,097; ¶136-142 (July 3, 2003); see also *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Ruling on Petition of SoundBite Communications, Inc.*, ¶12 (Nov. 29, 2012).

58.     Thus, even if one purpose of the call was truly to ask "questions about your order," the fact that there was a second, telemarketing, purpose, changes the status of the call to telemarketing, subject to the restrictions of the TCPA.

### COUNT I – TCPA – Do Not Call Registry

59.     Plaintiff incorporates all previous paragraphs and allegations. This Count is against all defendants.

60.     As explained above, defendants made unsolicited telemarketing phone calls to plaintiff and the class in violation of the TCPA 47 U.S.C. §227(c) and 47 C.F.R. § 64.1200(c).

61.     Furthermore, defendants' policies, practices and procedures for TCPA compliance are insufficient, because they permit illegal telemarketing to numbers that are on the National Do Not Call Registry.

## CLASS ALLEGATIONS

62.     Plaintiff brings this count pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all other persons or entities similarly situated throughout the United States. Plaintiff seeks certification of an injunctive class pursuant to Rule 23(b)(2) and a damages class pursuant to Rule 23(b)(3).

63.     The class of persons represented by Plaintiff with respect to Count One is tentatively defined as:

> All persons or entities within the United States whose phone numbers were registered on the Do Not Registry, and who, at any time on or after January 3, 2009, received more than one telemarketing call within any twelve-month period of time from, or on behalf of, any Defendant, where any purpose of the call included promoting goods or services.

64.     The class as defined above is identifiable by phone records and phone number databases, employed by the Defendants, or their agents, in transmitting their telemarketing calls.

65.     On information and belief, the potential class members constitute a class so numerous that joinder of all class members is impracticable.

66.     The Plaintiff is a member of the classes defined above.

67.     Plaintiff's claims are typical of the claims of the classes.

68.     Upon information and belief, as demonstrated through paragraph 5 of the affidavit of Quality CEO Cheryl R. Mercuris, submitted at docket item 18-1, Quality has an

agreement with the other defendants whereby it systematically performs telemarketing to customers like plaintiff.[1]

69.     Indeed, Quality made more than 12,000 such calls on behalf of Sempris during the twelve month period between June 1, 2012 and June 1, 2013.

70.     Plaintiff is an adequate representative of the classes because her interests do not conflict with the interests of the class, she will fairly and adequately protect the interests of the class, and she is represented by counsel skilled and experienced in class actions.

71.     The actions of the Defendants are generally applicable to the class as a whole and to Plaintiff.

72.     There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

a.     Whether the Defendants violated the TCPA by engaging in advertising through unsolicited telemarketing calls to consumers listed on the Do Not Call Registry;

b.     Whether the Defendants obtained prior express consent in writing to contact class members listed on the Do Not Call Regisry;

c.     Whether the calls made to class members were advertisements or solicitations;

d.     Whether the Plaintiff and the members of the class are entitled to statutory damages, or treble damages, as a result of the Defendants actions.

73.     Common questions of law and fact predominate over questions affecting only individual members of the class and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class

---

[1] Plaintiff does not allege that this entire affidavit is true in its entirety; that question remains open to discovery and cross examination. Plaintiff only references this paragraph of the affidavit in order to help rebut Quality's anticipated attempt to argue that plaintiff is somehow different from the other class members. She is not – plaintiff and each class member was treated the same, pursuant to the same policies, practices and procedures.

members, which will be ascertainable from records maintained by Defendants and/or their agents.

74.     Whether the violations were negligent, knowing or willful are common questions ascertainable through blanket proofs that will apply to the class in broad strokes. 47 U.S.C. §312(f).

75.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation, and because many are likely unaware that their rights have been violated.

76.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

77.     Plaintiff is capable of and is willing to represent the other members of the class, and has hired counsel that is experienced in litigating TCPA class cases.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of herself and the class and against the Defendant that provides the following relief:

a)     Statutory damages of up to $500 per violation, and up to $1,500 per violation if proven to be willful or knowing, pursuant to 47 U.S.C. §227(c)(5);

b)     A declaration that defendants violated the TCPA, 47 U.S.C. §227(c), 47 C.F.R. §64.1200(c) (2003) and implementing orders and regulations;

c)     A permanent injunction prohibiting the Defendants, including but not limited to, their employees, agents, affiliates and joint ventures, from engaging in unsolicited telemarketing in violation of the TCPA; and

d)     Any other relief the Court finds just and proper.

## COUNT II – TCPA –Autodialed Calls to Cell Phones

78. Plaintiff incorporates all previous paragraphs and allegations. This Count is against all defendants.

79. As explained above, defendants made improper calls to plaintiff and others' cellular telephones using an automatic telephone dialing system and/or artificial or prerecorded voice, in violation of the TCPA 47 U.S.C. §227(b) and 47 C.F.R. § 64.1200(a).

## CLASS ALLEGATIONS

80. Plaintiff brings this count pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all other persons or entities similarly situated throughout the United States. Plaintiff seeks certification of an injunctive class pursuant to Rule 23(b)(2) and a damages class pursuant to Rule 23(b)(3).

81. The class of persons represented by Plaintiff with respect to Count Two is tentatively defined as:

> All persons within the United States who the Defendants, or an entity or entities acting on their behalf, caused to be initiated telemarketing calls to cell phone telephone numbers via an Autodialer, promoting their goods or services, at any time on or after January 3, 2009, where Defendants did not have the prior express consent of the called party to make such calls.

82. The classes defined above is identifiable by phone records and phone number databases, employed by the Defendants, or their agents, in transmitting their telemarketing calls. On information and belief, the potential class members constitute a class so numerous that joinder of all class members is impracticable.

83. The Plaintiff is a member of the classes defined above.

84. Plaintiff's claims are typical of the claims of the classes.

85.     Upon information and belief, as demonstrated through paragraph 5 of the affidavit of Quality CEO Cheryl R. Mercuris, submitted at docket item 18-1, Quality has an agreement with the other defendants whereby it systematically performs telemarketing to customers like plaintiff.[2]

86.     Plaintiff is an adequate representative of the classes because her interests do not conflict with the interests of the class, she will fairly and adequately protect the interests of the class, and she is represented by counsel skilled and experienced in class actions.

87.     The actions of the Defendants are generally applicable to the class as a whole and to Plaintiff.

88.     There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

a.   Whether the Defendants violated the TCPA by engaging in advertising through unsolicited telemarketing calls to consumer's via an Autodialer;

b.   Whether the Defendants had prior express consent to contact the plaintiff and members of the class;

c.   Whether the Plaintiff and the members of the class are entitled to statutory damages, or treble damages, as a result of the Defendants actions.

89.     These and other common questions of law and fact predominate over questions affecting only individual members of the class and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

---

[2] Again, plaintiff does not allege that this entire affidavit is necessarily true; that question remains open to discovery and cross examination. Plaintiff only references this paragraph of the affidavit in order to help rebut Quality's anticipated attempt to argue that plaintiff is somehow different from the other class members. She is not – plaintiff and each class member was treated the same, pursuant to the same policies, practices and procedures.

90.     Whether the violations were negligent, knowing or willful are common questions ascertainable through blanket proofs that will apply to the class in broad strokes. 47 U.S.C. §312(f).

91.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation, and because many are likely unaware that their rights have been violated.

92.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

Plaintiff is capable of and is willing to represent the other members of the class. **C**

WHEREFORE, plaintiff requests that the Court enter judgment in favor of herself and the class and against the Defendants that provides the following relief:

a)  Statutory damages of minimum $500 per violation, and up to $1,500 per violation if proven to be willful or knowing;

b)  A declaration that defendants violated the TCPA, 47 U.S.C. §227(b);

c)  A permanent injunction prohibiting the Defendants, including but not limited to, their employees, agents or other affiliates, to immediately cease engaging in calls to cell phones using an automatic telephone dialing system and/or artificial or prerecorded voice, in violation of the TCPA; and

d)  Any other relief the Court finds just and proper.


Respectfully submitted,

/s/ Alexander H. Burke

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Phone: (312) 729-5288
aburke@burkelawllc.com

Anthony I. Paronich
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA 02110
(508) 221-1510
anthony@broderick-law.com
*Pro Hac Vice*

## JURY DEMAND

The Plaintiff demands a trial by jury.

/s/ Alexander H. Burke
Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Phone: (312) 729-5288
aburke@burkelawllc.com

Anthony I. Paronich
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA 02110
(508) 221-1510
anthony@broderick-law.com
*Pro Hac Vice*

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that the Defendants take affirmative steps to preserve all

recordings, data, emails, documents and all other tangible things that relate to the Plaintiff or

the putative class members, or the sending of emails or making of telephone calls, the events

described herein, any third party associated with any telephone call, campaign, account, sale or

file associated with Plaintiff or the putative class members, and any account or number or

symbol relating to any of them.  These materials are likely relevant to the litigation of this claim.

If Defendants are aware of any third party that has possession, custody or control of any such

materials, Plaintiff demands that the Defendants request that such third party also take steps to

preserve the materials.  This demand shall not narrow the scope of any independent document

preservation duties of the Defendants.

/s/ Alexander H. Burke

# Exhibit A

Provell / Budget Savers Website
May 2013



**Welcome!**

Budget Savers appeals to today's value-conscious consumers with money-saving offers, practical tips, and useful information to help them make the most of their hard-earned dollar.

Your Photo Goes Here

Email:

Password:

New subscribers and first-time users CLICK HERE!

| Car Care |
| Dining On A Dime |
| Dress for Less |
| Family Fun Time |
| Furry Friends |
| Give A Gift |
| To Your Health |
| Turning Your House Into A Home |
| Money Matters |
| Great Getaways |
| Online Shopping Source |
| Ready Rewards |
| Bonus Bucks |
| Coupon Connection |
| Ask Lisa |
| Merchandise |
| All Offers |


**Make Us Your Home Page**


**Sign Up for Special Savings and Ideas Email**

About Budget Savers

Your Household Savings Consultant

Lisa's Q&As

F.A.Q.s

Ask Lisa

See our great deals

## Privacy Policy

This Privacy Policy is effective as of January 1, 2009.

The following policies are in effect for the domains, sub-domains and Web pages owned and operated by Provell, Inc., and/or its subsidiaries and affiliates (collectively, ("Provell"). The Provell network includes numerous membership marketing Web sites (the "Sites"). By using any of the Sites, you signify that you have read, understand and agree to be bound by this Privacy Policy ("Privacy Policy").

Provell's Privacy Policy (and any revisions thereto) is designed to help you understand how we collect and use the personal information you decide to share, and help you make informed decisions when using the Site. This Privacy Policy shall govern all information collected from or posted at any of the Sites, and the use of the personal information you decide to share. We reserve the right, at our sole discretion, to change, modify, add, or delete portions of this Privacy Policy at any time without further notice. If we do this, we will post the changes to this Privacy Policy on each of the applicable Sites, including www.provell.com, and will indicate at the top of the page the Privacy Policy's effective date. Your continued use of any of the Sites after any such change constitutes your acceptance of the new Privacy Policy. If you do not agree to be bound by these or any revisions thereto, please do not use or access any of the Sites. It is your responsibility to regularly review this Privacy Policy.

Provell cares deeply about online privacy and the privacy of our users. If you have any questions concerning this Privacy Policy, please contact us at privacy@provell.com.

WHAT PERSONAL INFORMATION DO WE COLLECT?

When you register as a member ("Member") on one of our Sites, we will collect and store your personal information, including your name, address, e-mail address, telephone number, and any other information from which your identity is discernible. We will also collect and store payment information, including your credit card number. We may also collect and store demographic information that is not unique to you such as your ZIP code, age, gender, and interests. Sometimes we collect or may collect a combination of the two types of information.

We also gather or may gather certain information about your use of the Site, such as what areas you visit and what services you use. Moreover, there is information about your computer hardware and software that is or may be collected by us. This information can include, without limitation, your IP address, browser type, domain names, access times and referring Web site addresses. This data is used to manage the Site, track usage and improve the Site services. Some of this data is linked to your personal information in order to protect Provell from fraud.

Sharing and Disclosure of Information with Third Parties

Provell may share your information with the following entities:

- Carefully selected third parties for marketing purposes;
- Third-party vendors who provide services or functions on our behalf, including credit card processing, business analytics, customer service, marketing, distribution of surveys or sweepstakes programs, and fraud prevention;
- Business partners with whom we may jointly offer products or services;
- Other companies within the Provell network.

You always will be given the opportunity to unsubscribe from commercial messages in any such messages we send you. Please note we reserve the right to send you other communications, including service announcements, administrative messages, and surveys relating either to your account on one of our Sites or to your transactions on any of the Sites, without offering you the opportunity to opt out of receiving them.

We also may share your information:

- In response to subpoenas, court orders, or other legal process; to establish or exercise our legal rights; to defend against legal claims; or as otherwise required by law. In such cases we reserve the right to raise or waive any legal objection or right available to us.
- When we believe it is appropriate to investigate, prevent, or take action regarding illegal or suspected illegal activities; to protect and defend the rights, property, or safety of Provell, our customers, or others; and in connection with our Terms of Service and other agreements.
- In connection with a corporate transaction, such as a divestiture, merger, consolidation, or asset sale, or in the unlikely event of bankruptcy.

From time to time, Provell or a partner may sponsor a promotion, sweepstakes or contest on one or more of the Sites. Members may be asked to provide personal information, including name, e-mail address or home address, or to answer questions in order to participate. We may transfer personal information to certain ad

partners that you have explicitly requested to receive information from. It will be clear at the point of collection who is collecting the personal information and whose privacy statement will apply.

We also may share aggregate or anonymous information with third parties, including advertisers and investors. For example, we may tell our advertisers the number of visitors a particular Site receives or what are the most popular discount offers. This information does not contain any personal information and is used to develop content and services we hope you will find of interest.

CHILDREN UNDER THE AGE OF 13

Provell does not knowingly collect or solicit personal information from anyone under the age of 13 or knowingly allow such persons to register. No one under age 13 is allowed to provide any personal information to Provell. In the event we learn that we have collected personal information from a child under age 13 we will delete that information as quickly as possible. If you believe we might have any information from or about a child under 13, please contact us at privacy@provell.com.

USE OF COOKIES

Provell uses "cookies" to help create a better and, for our members, a more personalized experience. A cookie is a piece of data stored on the user's computer, tied to information about the user. Cookies can only track information provided to the Site itself. They are not "spyware" but only store information you have provided in personally identifiable form, or some of your Provell activities. This information may include your user name and password, to avoid your having to retype it every time you return to the Site. Cookie information is stored on your computer, not ours. Your browser and other security applications can be set to prompt you when a Web site is setting a cookie or to reject all cookies. Unless you accept our cookies, you will not be able to use our Web site effectively, and many site sections and applications will not function properly or at all. Please note that Provell allows third party advertisers that are presenting advertisements on some of our pages to set and access their cookies on your computer. Advertisers' use of cookies is subject to their own privacy policies, not the Provell Privacy Policy.

THIRD PARTY ADVERTISING

Advertisements that appear on the Sites are sometimes delivered (or "served") directly to users by third party advertisers. They automatically receive your IP address when this happens. These third party advertisers may also download cookies to your computer, or use other technologies such as JavaScript and "web beacons" (also known as "1x1 gifs") to measure the effectiveness of their ads and to personalize advertising content. Doing this allows the advertising network to recognize your computer each time they send you an advertisement in order to measure the effectiveness of their ads and to personalize advertising content. In this way, they may compile information about where individuals using your computer or browser saw their advertisements and determine which advertisements are clicked. Third party advertisers have no access to your contact information stored on the Sites unless you choose to share it with them. This Privacy Policy covers the use of cookies by Provell and does not cover the use of cookies or other tracking technologies by any of its advertisers.

SECURITY

Site user accounts are secured by passwords. Although no communications over the Internet are 100% secure, we work to protect the security of your information during transmission by using Secure Sockets Layer (SSL) software, which encrypts information you input. Please note, however, that we cannot guarantee the security of user account information. Unauthorized entry or use, hardware or software failure, and other factors may compromise the security of user information at any time. For any additional information about the security measures we use on the Sites, please contact us at privacy@provell.com.

CONTROL OF YOUR PASSWORD

You are responsible for all actions taken with your login information and password. Therefore we do not recommend that you disclose your Provell password or login information to any third parties. If you choose to share this information with third parties, you are responsible for all actions taken with your login information and password and therefore should review each third party's privacy policy. If you lose control of your password, you may lose substantial control over your personally identifiable information and may be subject to legally binding actions taken on your behalf. Therefore, if your password has been compromised for any reason, you should immediately change your password.

DECLINE TO RECEIVE INFORMATION

If you do not want to receive e-mail or other mail from us, please contact us at: privacy@provell.com.

LINKS

The Sites may contain links to other Web sites. We of course are not responsible for the privacy policies and/or practices on other Web sites. When linking to another Web site we encourage our users to read the privacy policy stated on each and every Web site. This Privacy Policy only governs information collected on our Sites.

YOUR CALIFORNIA PRIVACY RIGHTS

California Civil Code Section 1798.83 permits customers of Provell who are California residents to request and obtain from us once a year, free of charge, information about the personal information (if any) we disclosed to third parties for direct marketing purposes in the preceding twelve calendar months. If applicable, this information would include a list of the categories of personal information that was shared and the names and addresses of all third parties with which we shared information in the immediately preceding twelve calendar months. If you are a California resident and would like to make such a request, please submit your request in writing to privacy@provell.com or:

Provell, Inc.
P.O. Box 5265
Hopkins, MN 55343-2265
Attn: California Privacy Rights

CHANGES IN OUR PRIVACY POLICY

From time to time we may make changes to our Privacy Policy. If we make changes, we will post them on the Site to make users aware of what the changes are so users will always be aware of what information we collect, how we use it, and when we may disclose it. Users are bound by any minor changes to the policy when she or he uses the Site after those changes have been posted. If, however, we are going to use a user's personally identifiable information in a manner materially different from that stated at the time of collection we will notify by posting a notice on our Web site for 30 days.

Please send any questions about our Privacy Policy to: privacy@provell.com.

# Exhibit B

Call Script
(filed under seal)