**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SARAH TONEY, on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 1:13-cv-42 |
| v. | ) ) | Judge John F. Grady |
| QUALITY RESOURCES, INC. *et al.*, | ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' QUALITY RESOURCES, INC., INFOMERCIALS,
INC. AND STOMPEEZ MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT AND/OR MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56(c), Defendants QUALITY

RESOURCES, INC. ("Quality"), INFOMERCIALS, INC. ("Infomercials"), and STOMPEEZ

("Stompeez")[1] (collectively, "Defendants") move for an order dismissing Plaintiff Sarah Toney's

("Plaintiff" or "Toney") Second Amended Class Action Complaint (the "Second Amended

Complaint") for failure to state a cause of action for which relief can be granted and/or granting

summary judgment in favor of Defendants (the "Motion").  Defendants' Motion should be granted

for four (4) reasons, detailed further below: (1) Plaintiff's TCPA claims fail to state a cause of action

upon which relief may be granted; (2) Toney consented to receive calls from Defendants; (3)

Defendants were permitted to call Plaintiff and ultimately attempt to upsell the services of a third

party; and (4) the Second Amended Complaint fails to set forth any facts which would support the

maintenance of this matter as a class action.  As such, there is no issue of genuine of material fact

here and Plaintiff fails to state a cause of action for which relief can be granted under the Telephone

---

1.        "Stompeez" is a d/b/a for Infomercials, Inc.

Consumer Protection Act.

## I. FACTUAL BACKGROUND

### A. Procedural History.

On January 4, 2013, Plaintiff, on behalf of herself and a putative class, filed her original complaint in this matter against, *inter alia*, Quality and Stompeez alleging two (2) counts for violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. ("TCPA") and requesting injunctive relief to bar future TCPA violations.[2] Thereafter, on March 6, 2013, Quality and Stompeez filed their Motion to Dismiss Plaintiff's Complaint and/or Motion for Summary Judgment (the "First Motion to Dismiss").[3] Presumably in response to the glaring deficiencies pointed out by the Motion to Dismiss, on March 22, 2013, Plaintiff filed the First Amended Class Action Complaint (the "First Amended Complaint").[4] Thereafter, Defendants filed their Motion to Dismiss Plaintiff's First Amended Complaint and/or Motion for Summary Judgment (the "Second Motion to Dismiss").[5] Then, on May 31, 2013 Defendant Provell, Inc. ("Provell") filed its Motion to Dismiss the First Amended Complaint.[6] Once again recognizing the deficiencies in her case, Plaintiff asked the Court for leave to file another amended complaint.[7] Plaintiff filed the third incarnation of her complaint on July 31, 2013.[8]

Like the first two (2) complaints, the Second Amended Complaint attempts to allege (1) violations of the TCPA 47 U.S.C. §227(c) for violations of the National Do Not Call Registry

---

2. DE 1.

3. DE 18.

4. *See* DE 60 ("Second Amended Complaint") at ¶1; Wherefore clause following ¶92.

5. DE 32.

6. DE 47.

7. DE 53.

8. DE 60.

("Count I") and (2) violations of the TCPA 47 U.S.C. §227(b) for using an automatic telephone dialing system to call cellular telephones ("Count II"). Although the Second Amended Complaint does not add any counts, it attempts to add support to substantiate Plaintiff's TCPA allegations against Defendants. However, even with the aid of multiple Defendants' motions to dismiss and/or for summary judgment as a crutch to build her arguments, the Second Amended Complaint still includes nothing more than conclusory, boiler-plate allegations and do not cure any of the deficiencies raised by Defendants' motions. The Second Amended Complaint, like the other two (2) complaints, does nothing more than recite the general language of the TCPA. Moreover, the Second Amended Complaint's "counts" do not differentiate between any of the Defendants or otherwise contain sufficient factual allegations to satisfy the elements required to state a plausible cause of action. As such, dismissal is warranted.

### B. Quality.

Quality has been in business since 1992.[9] As part of its corporate model, the company has agreements with various vendors (who sell goods to consumers) to provide order verification to ensure that there is no fraud or mistakes in online orders.[10] In verifying an online transaction, Quality does *not* make unsolicited phone calls.[11] Rather, Quality confirms the consumer's purchase, name, shipping address, telephone number, and in some cases, the last four (4) digits of the consumer's credit card that was used to make the purchase.[12] In the event that Quality detects an inconsistency between the online order and the information provided during the call, it promptly reports any issues

---

9.    *See* Declaration of Cheryl Mercuris, ***Exhibit A***, at ¶2.

10.    *See* Declaration of Cheryl Mercuris at ¶2.

11.    *See* Declaration of Cheryl Mercuris at ¶3.

12.    *See* Declaration of Cheryl Mercuris at ¶3.

back to the vendor.[13] By agreement with the vendor, Quality is permitted to offer each of the customer's additional services or products for sale ("upsells") after the verification process.[14] The upsells are offered as part of the confirmation telephone call as permitted by law and are fulfilled by independent sellers.[15]

### C. Infomercials and Stompeez.

Infomercials and Stompeez sell children's slippers and it markets them, in part, online.[16] To ensure the accuracy of Infomercials and Stompeez's online orders, they verify the information that customers input on their website.[17]

### D. Infomercials, Stompeez, and Quality's actions pertaining to Plaintiff.

Toney ordered Stompeez slippers online on Saturday, December 8, 2012.[18] Toney provided her cellular telephone number, (consenting to be contacted by Infomercials, Stompeez, and their affiliates) and directed that her cellular telephone number be used for questions about her order.[19] The next business day, on December 10, 2012, Quality attempted to verify the order on behalf of Infomercials and Stompeez but was unable to reach Toney.[20] The following day, Quality called and

---

13.     *See* Declaration of Cheryl Mercuris at ¶4.

14.     *See* Declaration of Cheryl Mercuris at ¶5.

15.     *See* Declaration of Cheryl Mercuris at ¶5.

16.     *See* Declaration of Cheryl Mercuris at ¶6; *see also* DE78, Quality, Infomercials and Stompeez's Rule 56.1 Statement (the "Rule 56.1 Statement") at ¶8.

17.     *See* Declaration of Cheryl Mercuris at ¶6; *see also* Rule 56.1 Statement at ¶9.

18.     *See* Declaration of Cheryl Mercuris at ¶6; Second Amended Complaint at ¶20; *see also* Rule 56.1 Statement at ¶8.

19.     *See* Declaration of Cheryl Mercuris at ¶6; DE 60 at ¶¶20-23; Rule 56.1 Statement at ¶¶13-14.

20.     *See* Declaration of Cheryl Mercuris at ¶6.

reached Toney.[21] During this call, which lasted approximately 113 seconds, Quality *verified* Toney's order, shipping address, and insured there were no other errors.[22] Quality did not make an unsolicited call to Toney.[23] Accordingly, Plaintiff's Second Amended Complaint should be dismissed for failure to state a cause of action, or in the alternative, summary judgment should be granted in favor of Defendants.

## II. LEGAL STANDARDS

### A. Motion to Dismiss Standard.

A motion under Rule 12(b)(6) challenges the legal sufficiency of a complaint.[24] When examining the merits of a Rule 12(b)(6) motion, the complaint's factual allegations are accepted as true and construed most favorably to the plaintiff.[25] While "well-pleaded" factual allegations are required to be accepted as true, the Court does not have any obligation to accept as true legal conclusions or unwarranted factual inferences.[26] Federal Rule of Civil Procedure 8(a) sets for the basic federal pleading standard, requiring a "short and plain statement of the claim" that sufficiently notifies *each* defendant of both the claim and its supporting grounds.[27] However, "Rule 8(a)(2) still

---

21.     *See* Declaration of Cheryl Mercuris at ¶6; *see also* Rule 56.1 Statement at ¶14; DE 60 at ¶23.

22.     *See* Declaration of Cheryl Mercuris at ¶7; *see also* Rule 56.1 Statement at ¶14; DE 60 at ¶24.

23.     *See* Declaration of Cheryl Mercuris at ¶6.

24.     *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7, 570* F.3d 811 (7th Cir. 2009).

25.     *Brown v. Michigan Dep't of Corrections*, Civil Case No. 06-14468, 2007 WL 295235 at *1 (E.D. Mich. Jan. 29, 2007).

26.     *Id.* at * 1; *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed. 2d 868 (2009).

27.     Fed. R. Civ. P. 8(a); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007); *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008).

requires a 'showing,' rather than a blanket assertion, of entitlement to relief."[28]

Consequently, a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[29] "Factual allegations must be enough to raise [the plaintiff's] right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true."[30] In short, an actionable complaint must include "enough facts to state a claim to relief that is plausible on its face."[31] Further, "[i]t is by now well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened to her that might be redressed by the law."[32] Moreover, the Seventh Circuit has read "the Court in *Iqbal* to be admonishing those plaintiffs who merely parrot the statutory language of the claims that they are pleading ..., rather than providing some specific facts to ground those legal claims[.][Such plaintiffs] must do more."[33]

Further, when a complaint involves multiple parties and multiple claims, each claim should make it clear which defendant or defendants are alleged to have committed which wrong(s). "If it is 'impossible to tell from the face of the complaint which defendants were accused of which violations, what specific acts constituted violations, or when alleged violations occurred,' such a

---

28.     *Twombly,* 127 S.Ct. at 1965 n. 3.

29.     *Twombly,* 127 S.Ct. at 1964-65 (citation omitted); *see also Howley v. U.S. Patent and Trademark Office*, No. 08-13976-BC, 2008 WL 4852684 at *1 (E.D. Mich. Nov. 7, 2008).

30.     *Twombly,* 127 S.Ct. at 1965 (citations omitted).

31.     *Twombly,* 127 S.Ct. at 1974; *Iqbal*, 129 S. Ct. at 1949.

32.     *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010); *see also Hanley v. Green Tree Servicing, LLC*, Case No. 12 C 4158, 2013 WL 1189697, *2 (N.D. Ill. Mar. 21, 2013).

33.     *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir.2009).

complaint fails to state a claim upon which relief can be granted."[34] Courts have consistently found

that "lumping" defendants together fails to satisfy Rule 8(a) because, in large part, a complaint

employing such a technique fails entirely to assert individualized allegations as to each separate

defendant.[35] According to the court in *Citco Group*, "[t]his lumping technique 'creates confusion and

make [sic] the analysis [of the complaint] unnecessarily burdensome,' resulting in . . . making

accusations that are 'just not accurate.'"[36] In *Howley*, the plaintiff's complaint was dismissed for the

very same reasons as those asserted herein, *i.e.,* that the Second Amended Complaint "never alleges

that any specific wrong was committed by any distinct defendant. Instead, the complaint only refers

to 'defendant(s)' collectively."[37] As the Seventh Circuit recently held, a complaint based on a theory

of collective responsibility is not plausible under *Twombly* and must be dismissed.[38]

### B. Summary Judgment Standard.

A party may move for summary judgment on any "claim or defense," or "part of [a] claim or

defense."[39] Summary judgment is appropriate where there is "no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."[40] A dispute is "genuine" only if there

---

34.     *Howley*, 2008 WL 4852684 at * 2; *Wilstein v. San Tropai Condo. Master Ass'n*, 1999 WL 51805 (N.D. Ill. Jan. 30, 1999).

35.     *See, e.g., Court Appointed Receiver of Lancer Offshore, Inc. v. The Citco Group Ltd.*, No. 05-60080, 2011 WL 1233126 (S.D. Fla. Mar. 30, 2011).

36.     *Id.* at *2 (*quoting Court Appointed Receiver of Lancer Offshore, Inc. v. The Citco Group Ltd.*, No. 05-60080, 2008 WL 926512 (S.D. Fla. Mar. 31, 2008).

37.     *Id.*

38.     *Bank of Am., N.A. v. Knight*, No. 12-2698, 2013 WL 4016522 , *3 (7th Cir. Aug. 8, 2013). Furthermore, lumping the Defendants together as a supposed "joint enterprise" based upon "information and belief" is wholly improper and insufficient to establish anything. *See Swift v. First USA Bank,* No. 98 C 8238, 1999 WL 965449 at *4 (N.D. Ill. Sep. 30, 1999) ("pleading 'upon information and belief' is patently improper and insufficient under the requirements of federal law").

39.     Fed. R. Civ. P. 56(a); *see also Pesek v. Caterpillar Inc.*, 10 C 3546, 2012 WL 3069773 (N.D. Ill. July 27, 2012).

40.     Fed. R. Civ. P. 56(a).

is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law.[41]

A defendant can prevail on summary judgment merely by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support [any essential element of] the nonmoving party's case."[42] That showing may be based on citations to, *inter alia*, "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits."[43] Once a defendant meets its initial obligation of showing there is no genuine dispute of material fact, the onus shifts to the plaintiff to come forward with admissible evidence from which a reasonable jury could find that he has met his burden of proof.[44]  It is not enough to produce "colorable" evidence; a plaintiff must proffer "significantly probative" evidence, and cannot rely on mere allegations.[45] Similarly, speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact.[46] A plaintiff's naked assertion against sworn testimony does not raise a genuine issue of material fact; rather it pits sworn testimony against speculation, conjecture and self-serving conclusions.[47]

Even if a summary judgment motion is not granted, the court "may enter an order stating any

---

41. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

42. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), quoting Fed. R. Civ. P. 56(c).

43. *Early v. Bankers Life & Cas. Co.*, 853 F. Supp. 1074, 1079 (N.D. Ill. 1994) *aff'd*, 65 F.3d 170 (7th Cir. 1995); *see also* Fed. R. Civ. P. 56(c)(1)(A).

44. *Celotex*, 477 U.S. at 322-23.

45. *Anderson*, 477 U.S. at 247-49, 256-57; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

46. *Roney v. Illinois Dept. of Transp.*, 376 F. Supp. 2d 857, 864-65 (N.D. Ill. 2005) *aff'd*, 474 F.3d 455 (7th Cir. 2007).

47. *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 934 (7th Cir. 1997).

material fact … that is not genuinely in dispute and treating the fact as established in the case."[48]

Thus, where particular issues can properly be adjudicated without trial, courts are authorized to make

such rulings even if doing so would not dispose of an entire claim.[49]

## III. ARGUMENT

### A. Plaintiff fails to state a cause of action upon which relief may be granted.

In order to satisfy her pleading requirements and state a cause of action against Defendants

for purported violations of the TCPA, Plaintiff must establish that Defendants: (1) made the call; (2)

Plaintiff was charged for the call; and (3) the call was made using any automatic telephone dialing

system or an artificial or prerecorded voice.[50] Plaintiff's allegations for both Count I and Count II are

wholly inadequate to state a plausible cause of action for purported TCPA violations. For instance,

the sole allegations for Count I are (1) "[a]s explained above, defendants made unsolicited

telemarketing phone calls to plaintiff and the class in violation of the TCPA 47 U.S.C. §227(c) and

47 C.F.R. § 64.1200(c)"; and (2) "defendants' policies, practices and procedures for TCPA

compliance are insufficient, because they permit illegal telemarketing to numbers that are on the

National Do Not Call Registry."[51] Furthermore, Count II simply concludes "defendants made

improper calls to plaintiff and others' cellular telephones using an automatic telephone dialing

system and/or artificial or prerecorded voice, in violation of the TCPA 47 U.S.C. §227(b) and 47

---

48. Fed. R. Civ. P. 56(g).

49. *Id.*

50. *Knutson v. Reply!, Inc.*, 2011 WL 291076 (S.D. Cal.); *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F.Supp.2d 898, 2012 WL 983774 (N.D. Ill. Mar. 20, 2012). Plaintiffs must also establish that the calls were made without their consent, but the FCC has clarified that consent is to be raised as an affirmative defense and is not considered to be an element that must be pled. *Knutson*, 2011 WL 291076 at *1.

51. Second Amended Complaint at ¶¶60-61.

C.F.R. § 64.1200(a)."[52] The above allegations are nothing more than legal conclusions, call for speculation as to exactly what Defendants did, and as such, are not enough to state a cause of action pursuant to the TCPA under either Count I or Count II.

Plaintiff's Second Amended Complaint similarly fails to plead sufficient facts that Defendants used "automatic dialing technology and/or an artificial or prerecorded voice" as required by the second element of a TCPA to establish a *prima facie* cause of action. Section 227(a)(1) states:

(a) Definitions

As used in this section –

    (1) The term "automatic telephone dialing system" means equipment which has the capacity—
        (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
        (B) to dial such numbers.[53]

The Second Amended Complaint merely alleges that "[u]pon information and belief, this call was dialed by a machine rather than by a human being" because the call "when answered, started with a distinctive click prior to someone being on the line, indicating that they were coming from a predictive dialer."[54] However, "[a]s an isolated assertion, it is conclusory to allege that messages were sent 'using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.' Such a naked assertion need not be taken as true."[55] In *Kramer*, the court stated proof of the use of an automated

---

52.    Second Amended Complaint at ¶79.

53.    47 U.S.C. § 227(a)(1).

54.    *See* Second Amended Complaint at ¶43.

55.    *Kramer v. Autobytel, Inc.,* 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010).

system existed, however the complaint contained factual allegations about the *call itself* to infer the use of an automatic system.[56]

In this case, Plaintiff's Second Amended Complaint does not allege sufficient facts to allow this Court to infer that the calls fall within the definition of an "automatic telephone dialing system." Indeed, the allegations in Plaintiff's Second Amended Complaint repeatedly contradict themselves by also alleging that Plaintiff spoke with a live operator.[57] Therefore, because (1) alleging the use of an automated telephone system is a requirement to bring a TCPA cause of action, and (2) Plaintiff fails to allege sufficient facts to support his allegation that CCL used any such automated system, Plaintiff has failed to state a cause of action and the Court must dismiss Plaintiff's TCPA claims.

**B.  The call to Plaintiff was in compliance with the TCPA.**

The TCPA requires Plaintiff to show that the call was not made with the prior express consent of the recipient."[58] Here, however, **it is an undisputed fact that Toney expressly consented to receive calls from Defendants**.[59] As such, the Second Amended Complaint should be dismissed, or in the alternative, summary judgment should be granted on both Counts I and II.

1.  <u>Toney consented to receive calls from Defendants.</u>

Quality has an agreement with Infomercials to perform order verifications for Stompeez.[60] Quality called Toney at the phone number *she inputted* on an online order form for Stompeez

---

56.     *Id*. at 1171.

57.     *See, e.g*., Second Amended Complaint at ¶24.

58.     *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 905 (N.D. Ill. 2012).861 F. Supp. 2d at 905; *Chavez v. Advantage Group*, No. 12–cv–02819–REB–MEH., 2013 WL 4011006, *2 (D. Colo. Aug. 5, 2013); *Pimental v. Google Inc.*, C-11-02585-YGR, 2012 WL 691784 (N.D. Cal. 2012).

59.     *See* Rule 56.1 Statement at ¶¶11-14.

60.     *See* Declaration of Cheryl Mercuris at ¶5; *see also* Rule 56.1 Statement at ¶14.

slippers.[61] Toney provided this number and directed that it be used for questions about her order.[62]

Indeed, the order form on Infomercials and Stompeez's website ([www.stompeez.com](www.stompeez.com)) discloses that

a phone number is required when placing an order online "for questions about order."[63] Additionally,

Infomercials and Stompeez's website's Privacy Policy contains a section entitled "How We Use the

Information We Collect."[64] The Privacy Policy discloses that "[t]he information we collect is used to

communicate with you about your product orders … [and] ***shared with other organizations to help***

***them contact consumers by e-mail and/or telephone for marketing purposes*** …"[65] Toney further

consented to being contacted inasmuch that the first paragraph of the Privacy Policy clearly states

"[b]y using any of the Websites, you signify that you have read, understand and agree to be bound

by this Privacy Policy."[66]

The Second Amended Complaint alleges that "Prior express consent does not exist unless,

prior to the placement of the call, the called party has: (a) clearly stated that the telemarketer may

call, and (b) clearly expressed an understanding that the telemarketer's subsequent call will be made

for the purpose of encouraging the purchase of goods or services."[67] As described in the preceding

---

61.     *See* Declaration of Cheryl Mercuris at ¶6; DE 60 at ¶¶20-23; Rule 56.1 Statement at ¶¶13-14.

62.     *See* DE 60 at ¶¶20-23; Rule 56.1 Statement at ¶13.

63.      *See **Exhibit B***, for a true and correct copy of the portion of the order form including this disclosure; *see* Declaration of Cheryl Mercuris at ¶8; Rule 56.1 Statement at ¶9.

64.     *See* Infomercials and Stompeez's website's Privacy Policy ("Stompeez Privacy Policy"), attached as *Exhibit B* to the Second Amended Complaint (DE 60-2); Declaration of Cheryl Mercuris at ¶9; Rule 56.1 Statement at ¶10.

65.     *See* Stompeez Privacy Policy at DE 60-2; Rule 56.1 Statement at ¶11.

66.     *See* Stompeez Privacy Policy at DE 60-2; Rule 56.1 Statement at ¶12.

67.     *See* Second Amended Complaint at ¶51.

paragraph and as evidenced in the attached exhibits, ***this is exactly what Plaintiff did***.[68] Plaintiff erroneously alleges that prior express consent may only be "evidenced by a signed, written agreement between the consumer and seller that states the consumer agrees to be contacted by this seller, and includes the telephone number to which the calls may be placed."[69] Notably, this excerpt of the Telemarketing Sales Rule reflects a recent change in law that does not go into effect until October 16, 2013. Nonetheless, Plaintiff's online signature and provision of her cellular telephone number constitutes prior express consent under either version of the law,[70] and as such, Plaintiff's allegations to the contrary are demonstrably false.

In short, it is an undisputed fact that Toney consented to the call that verified her order and specified that she be called on her cellular telephone.[71] The Complaint, Exhibits, and Declaration clearly establish this fact and it is not, and cannot be, controverted by Plaintiff. Given Toney's provision of her telephone number and express consent to being called by Infomercials and Stompeez affiliates, Quality's calling of Toney's cellular telephone does not constitute a violation of the TCPA.[72] Toney ***voluntarily provided her cellular telephone number*** with her slippers order,

---

68. The Second Amended Complaint argues that "Asking for consent to market goods and services during the pendency of a call that has already been made is not permissible." Second Amended Complaint at ¶51. This allegation is nothing more than a red herring in that (1) Plaintiff does not allege that Quality asked for permission to market goods during the call; and (2) Defendants do not allege this occurred. Nonetheless, Plaintiff previously consented to any such "marketing" when she provided her telephone number and agreed to Stompeez's Privacy Policy. As such, Plaintiff's *non sequitur* should be ignored by the Court.

69. *See* Second Amended Complaint at ¶55 (citing 47 C.F.R. § 64.1200(c)(2)(ii)).

70. "The term 'signature' shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law." 47 C.F.R. § 64.1200(f)(8)(ii).

71. Rule 56.1 Statement at ¶¶11-14.

72. "Defendant in the instant case does not make 'vague assertions' about the nature of prior business relationships and consent, but has offered specific evidence of the same." *G.M. Sign, Inc. v. Brink's Mfg. Co.*, Case No. 09 C 5528, 2011 WL 248511, at *9 (N.D. Ill. Jan. 25, 2011)

designating such number as her primary contact to confirm and verify her order.[73] Indeed, Plaintiff's Second Amended Complaint acknowledges that she included her cellular telephone number at the time of ordering for questions about her order.[74] This is precisely what Quality did – call Toney to confirm and verify her order.

The Federal Communications Commission ("FCC") has clarified what constitutes "express consent" under the statute pursuant to its authority to create rules and regulations implementing the TCPA.[75] Specifically, the FCC ruled that:

> ***persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given***, absent instructions to the contrary. Hence, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached.[76]

In similar instances where a plaintiff provided her cellular telephone number as a contact number, courts in this district have concluded that the plaintiff provided her express consent to be contacted.[77]

For example, in *Frausto*, the plaintiff provided his personal information when registering for a PayPal account.[78] Among other disclosure provisions, the PayPal agreement stated the following:

---

(denying plaintiffs' motion for class certification on TCPA claim because class definition would require several mini trials to determine whether there was a prior business relationship between each class member and defendant).

73.     *See* Declaration of Cheryl Mercuris at ¶6; Second Amended Complaint at ¶¶20-23; Rule 56.1 Statement at ¶13.

74.     *See* Second Amended Complaint at ¶¶20-23.

75.     *See* 47 U.S.C. § 227(b)(2).

76.     *Greene v. DirecTv, Inc*., Case No. 10 C 117, 2010 WL 4628734, *3 (N.D. Ill. Nov. 8, 2010) (granting summary judgment to defendants finding that no genuine issues of fact existed regarding whether plaintiff provided her express consent to defendants to contact her at her cellular telephone number).

77.     *Greene*, 2010 WL 4628734 at *3.

78.     *See Frausto v. IC Sys., Inc*., Case No. 10 CV 1363, 2011 WL 3704249, *1 (N.D. Ill. Aug. 22, 2011) (granting summary judgment finding plaintiff expressly consented to be contacted on

> 1.10 Calls to You. By providing PayPal a telephone number (including a wireless/cellular telephone), you consent to receiving autodialed and prerecorded message calls from PayPal at that number.
>
> 1.2 Your Privacy. Protecting your privacy is very important to PayPal. Please review our Privacy Policy in order to better understand our commitment to maintaining your privacy, as well as our use and disclosure of your Information.[79]

Specifically, PayPal's privacy policy indicated that PayPal may use customer's personal information, among other things, to resolve disputes and collect fees.[80] The *Frausto* court held that the plaintiff's agreement to this online user agreement equivocated express consent to be called by PayPal, or anyone acting on PayPal's behalf.

Accordingly, here, where Plaintiff provided her cellular telephone number to Infomercials and Stompeez to be contacted regarding her order, she expressly consented to be called by Infomercials and Stompeez or anyone working on their behalf. Thus, Quality's call to Plaintiff was in compliance with the TCPA.[81]

> 2. Quality was permitted under the TCPA to call Plaintiff's cell phone and ultimately attempt to upsell the services of a third party.

After verifying and completing Plaintiff's order, Quality was permitted to market or upsell another product for several reasons. First, Toney was already on the phone with Quality, who abided

---

her cell phone by agreeing to defendant's user agreement); *see also Greene*, 2010 WL 4628734 at *3.

79. *See Frausto*, 2011 WL 3704249 at *1.

80. *See Frausto*, 2011 WL 3704249 at *1.

81. "[T]he term 'business relationship' should be construed broadly and that an EBR is 'a prior or existing relationship formed by a voluntary two-way communication between the caller and the called party, which relationship has not been previously terminated by either party." *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 451 (7th Cir. 2010) (affirming district court's granting of summary judgment dismissing TCPA claim where parties' relationship fell within the scope of business relationships the FCC intended).

by the applicable TSR requirements for upselling.[82] Second, the Privacy Policy on Infomercials and Stompeez's website disclosed that use of the website and inputting contact information was an acceptance of the Privacy Policy.[83] Third, upsells are not subject to the national "Do Not Call" registry provisions.[84]

Plaintiff attempts to plead around this well-settled law by alleging in the Second Amended Complaint that "[c]alls that have more than one purpose, so-called 'dual purpose calls' under the FCC rules, regulations, and orders, are impermissible if one purpose of the call is telemarketing."[85] Plaintiff's conclusory allegation is a gross misinterpretation of applicable law. Moreover, *Chesbro* is inapposite here as the *Chesbro* court concluded, without discussion, that Chesbro did not consent to receive the phone calls at issue in the first place.[86]

---

82.     *See* Declaration of Cheryl Mercuris at ¶¶3, 5. The TSR requires that telemarketers soliciting sales of goods or services promptly disclose several key pieces of information in an outbound telephone call or an internal or external upsell: (1) the identity of the seller; (2) the fact that the purpose of the call is to sell goods or services; (3) the nature of the goods or services being offered; and (4) in the case of prize promotions, that no purchase or payment is necessary to win. *See* 16 C.F.R. §310.4(d); *see also* 16 C.F.R. §310.2(ee) (defining "upselling" as "the purchase of goods or services following an initial transaction during a single telephone call. The upsell is a separate telemarketing transaction, not a continuation of the initial transaction."). Telemarketers must also disclose in any telephone sales call the cost of the goods or serves and certain other material information. *See* 16 C.F.R. §310.3(a)(1).

83.      *See Frausto*, 2011 WL 3704249 at *1; *see also Greene*, 2010 WL 4628734 at *3.

84.     The FTC made it clear that "[t]he Commission does not intend for upselling to be subject to the "do-not-call" requirements . . ." *See* FTC's Final Amended Rule and accompanying Statement of Basis and Purpose at p.45, http://www.ftc.gov/os/2002/12/tsrfrn.pdf (last visited August 23, 2013).

85.     Second Amended Complaint at ¶57 (citing *Chesbro v. Best Buy Stores, LP*, 705 F.3d 913, 918 (9th Cir. 2012); *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14,014, 14,095-14,097; ¶¶136-142 (July 3, 2003); *see also In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Ruling on Petition of Soundbite Communications, Inc.*, ¶12 (Nov. 29, 2012)).

86.     *Chesbro*, 705 F.3d at 915; *see also Hanley*, 2013 WL 1189697, at *2.

Here, however, Toney expressly consented to be called.[87] Indeed, the Northern District of Illinois had specifically recognized express consent under similar facts.[88] In *Thrasher*, the Court reasoned that "[o]ne 'expresses' consent by, well, expressing it: stating that the other party can call, or checking a box on form *or agreeing to terms of service* that explicitly permit automated telephone contact."[89] Further, as concluded "[i]n the 1992 TCPA Order, the Commission determined that 'persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.'"[90]

Thus, as a matter of law, Quality was authorized under the TCPA both to call Toney and attempt to upsell Plaintiff products and services. Accordingly, Plaintiff's Second Amended Complaint fails to state a claim under either count of the TCPA for which relief can be granted as a matter of law. In the alternative, summary judgment should be entered here in Defendants' favor because there is no genuine issue of material fact as to whether Toney consented to being called by Quality.

### C. Plaintiff's claim for a class action is not plausible and must be dismissed.

Despite her inability to state a plausible claim for relief under any theory asserted, Plaintiff seeks to represent two putative nationwide classes consisting of:

> All persons or entities within the United States whose phone numbers were registered on the national Do Not [Call] Registry, and who, at any time on or after January 3, 2009, received more than one telemarketing call within any twelve-month period of

---

87.     Second Amended Complaint at ¶¶20-23; Rule 56 Statement at ¶¶11-14.

88.     *See, e.g.*, *Thrasher-Lyon v. CCS Commercial, LLC*, 56 Communications Reg. (P&F) 1180 (N.D. Ill. 2012) *reconsideration denied, motion to certify appeal granted*, 11 C 04473, 2012 WL 5389722, at *4 (N.D. Ill. 2012).

89.     *Id*. at *5 (emphasis added).

90.     *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, Request of ACA Int'l for Clarification and Declaratory Ruling*, 23 FCC Rcd. 559, 564-65 (2008).

time from, or on behalf of, any Defendant where the purpose of the call was to promote goods or services.[91] (the "Count I Class")

All persons within the United States who the Defendants, or an entity or entities acting on their behalf, caused to be initiated telemarketing calls to cell phone telephone numbers via an Autodialer, promoting their goods or services, at any time on or after January 3, 2009, where Defendants did not have the prior express consent of the called party to make such calls.[92] (the "Count II Class")

Putting aside for a moment that Plaintiff herself does not even belong in the either the Count I Class or Count II Class definitions asserted in the Complaint, due to giving her consent to be called, there are further deficiencies with Plaintiff's class allegations. The Second Amended Complaint barely contains a "bare recitation" of the elements of a class action. "Mere repetition of the language of Rule 23(a) is not sufficient" and "[t]here must be an adequate statement of the basic *fact[s]* to indicate that each requirement of the Rule is fulfilled."[93] The burden is on the plaintiff, the party seeking to utilize the class action device, to establish his right to do so.[94]

Class action allegations are subject to the same Rule 12(b)(6) standards.[95] Thus, as a preliminary matter, Plaintiffs must plead ultimate facts to satisfy all four of the prerequisites

---

91.     Second Amended Complaint at ¶63.

92.     Second Amended Complaint at ¶81.

93.     *Gloria v. Allstate County Mut. Ins. Co.*, No. SA-99-CA-676-PM, 2000 WL 235854563, at *9 , n.109 (W.D. Tex. Sep. 29, 2000) (citing to *In Re Am. Me. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1976)); *Cook Cnty. College Teachers Union, Local 1600, American Federation of Teachers v. Byrd*, 456 F.2d 882, 885 (7th Cir. 1972) (holding that the class seeking to be certified was "obliged in its complaint to allege facts bringing the action within the appropriate requirements of the Rule."); *Travis v. City of Chicago*, 86 C 1133, 1984 WL 15709 (N.D. Ill. Sept. 16, 1984); *Weathers v. Peters Realty Corp.*, 499 F.2d 1197 (6th Cir. 1974); *Doctor v. Seaboard Coast Line R.R. Co.,* 540 F.2d 599, 706-10 (4th Cir. 1976) (denying class certification because plaintiff provided no facts about the existence of alleged class); *Iqbal,* 129 S. Ct. at 1951.

94.     *Senter v. General Motors Corp.,* 532 F. 2d 511, 522 (6th Cir. 1976).

95.     *See Manning v. Boston Med. Center Corp.,* No. 09–11463–RWZ, 2012 WL 1355673, at *3 (D. Mass. April 18, 2012); *In re Iowa Ready Mix Concrete Antitrust Litigation,* 768 F. Supp. 2d 961, 974-76 (N.D. Iowa 2011) (granting motion to dismiss where proposed class action lawsuit contained nothing more than conclusory class action allegations).

contained in Rule 23(a),[96] as well as one of the subcategories of Rule 23(b). The Second Amended Complaint contains *no facts* to support the conclusory class allegations. By way of example only, the Second Amended Complaint conclusorily states that "joinder of all members is impractical" and that "Plaintiffs' claims are typical of the claims of the Class."[97]

In addition, the proposed class is far too broad and would require an inordinate number of individualized determinations to ascertain class membership. Although not properly pled, Plaintiffs seem to be alleging that Defendants' purported conduct was "knowing" and "willful." Justifiably, class relief is generally rejected in claims such as these, as the inquiries are highly individualized and specific facts for each putative class member necessarily differs, especially as to matters of proof and reliance. Plaintiff's hasty assurance to the contrary is not reassuring, and is contrary to common sense.[98] Indeed, Plaintiff's citation to 47 U.S.C. §312(f) is merely the definition of such terms reinforcing the implausibility of the proposed classes.[99]

---

96. Federal Rule of Civil Procedure 23(a) requires the following prerequisites to maintain a class action: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). In addition, an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and: (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b).

97. Second Amended Complaint at ¶¶82, 84.

98. Second Amended Complaint at ¶90 ("Whether the violations were negligent, knowing or willful are common questions ascertainable through blanket proofs that will apply to the class in broad strokes.").

99. Second Amended Complaint at ¶90 citing 47 U.S.C. §312(f) ("Willful" and "repeated" defined; For purposes of this section: (1) The term "willful", when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this chapter or any rule or regulation

Further, while Plaintiffs have attempted to "lump" all Defendants together, it will be incumbent upon Plaintiffs to demonstrate that each Defendant acted knowingly and willfully. Adjudicating these claims would necessarily require a mini-hearing for each possible class member and proof by each class member as to the separate conduct of each Defendant. Determining class membership, therefore, would devolve into a series of fact-finding hearings that would effectively render the case unmanageable.[100]

Indeed, the Supreme Court recently rejected a class action based on a purported violation of a statute in *Wal-Mart Stores, Inc. v. Dukes.*[101] In *Dukes,* the Supreme Court ruled that the plaintiff must show that class members "have suffered the same injury," not "merely that they have all suffered a violation of the same provision of law."[102] The required inquiries here would rely upon highly individualized and specific facts that would differ for each person. Thus, a mini-hearing for each putative class member would be needed. This effectively renders the case unmanageable.[103]

Plaintiffs further fail to identify common questions of law or fact of the purported class sufficient to meet the commonality element. Indeed, Plaintiffs offer several questions that pertain only to the activity of Defendants (improperly lumping them all together) in relation to the TCPA, but which have nothing to do with the class members' alleged injuries or the specific conduct of each Defendant. The questions would only answer whether the putative class members suffered a

---

of the Commission authorized by this chapter or by a treaty ratified by the United States; (2) The term "repeated", when used with reference to the commission or omission of any act, means the commission or omission of such act more than once or, if such commission or omission is continuous, for more than one day.").

100.    *See Comcast Corp. et al. v. Behrend et al.*, No. 11-864, 133 S.Ct. 1426, 1432 (March 27, 2013).

101.    131 S.Ct. 2541, 2551 (U.S. 2011).

102.    *Id.*

103.    *Comcast*, 133 S.Ct. at 1435.

violation of the same statute, not that the class members suffered the same injury. Not one of these questions relates in any way to demonstrating that each potential class member has suffered any injury, let alone that each has suffered the *same* injury. The Supreme Court noted in *Dukes* that what matters to class certification is not simply the raising of common questions, "but rather, the capacity to generate *common answers* apt to drive the resolution of the litigation."[104] The answers to Plaintiffs' questions have only to do with the alleged violation of a particular statute, they have nothing to do with the individual class members' commonality.

Even still, the TCPA requires an individualized showing with respect to each purported class member as to whether consent was provided.[105] According to *Dukes,* this is impermissible. Moreover, class certification in TCPA cases is difficult to obtain, particularly where "consent" will be an issue, which will certainly be the case here.[106] In *Gene and Gene*, the Fifth Circuit Court of Appeals held that the "plaintiff must advance a viable theory employing generalized proof to establish liability with respect to the class involved, and it means too that district courts must only certify class actions filed under the TCPA when such a theory has been advanced." [107] Here, however, Plaintiffs have not advanced any theory employing generalized proof to establish liability,

---

104.     *Dukes*, 131 S.Ct. at 2551.

105.     *See G.M. Sign, Inc. v. Brink's Mfg. Co.*, No. 09 C 5528, 2011 WL 248511 (N.D. Ill. Jan. 25, 2011) (denying plaintiffs' motion for class certification on TCPA claim because class definition would require several mini trials to determine whether there was a prior business relationship between each class member and defendant).

106.     *See, e.g., Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D. Pa. 1995); *Gene and Gene, LLC v. Biopay LLC*, 541 F.3d 318 (5th Cir. 2008).

107.     *Gene and Gene*, 541 F.3d at 328.

let alone a *viable* theory. Importantly, post *Comcast*, Plaintiff must establish that damages can be measured on a classwide, rather than an individual basis.[108]

Plaintiffs apparently invoke Rule 23(b)(3) as the proposed structure of the class they seek to certify but provide no plausible facts to support that construction. As explained above, common issues of fact or law do not predominate here, and no class action can plausibly be stated. Likewise, a class action is simply not the superior (or only) mechanism for resolving the issues involved in this lawsuit.

## IV. CONCLUSION

Because (1) Plaintiff's TCPA claims fail to state a claim upon which relief may be granted; (2) Toney consented to receive calls from Defendants; (3) Defendants were permitted to call Plaintiff and ultimately attempt to upsell the services of a third party; and (4) the Second Amended Complaint fails to set forth any facts which would support the maintenance of this matter as a class action, Defendants QUALITY RESOURCES, INC., INFOMERCIALS, INC. and STOMPEEZ respectfully request that this Court dismiss Plaintiff's Second Amended Complaint for failure to state a claim, with prejudice, or in the alternative, grant summary judgment in favor of Defendants.

---

108.    Theses are the sorts of inquiries that the Supreme Court has now made obligatory through *Comcast Corp. v. Behrend, supra.* This "analysis will frequently entail overlap with the merits of the plaintiff's underlying claim ... because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." 133 S.Ct. at 1432 (citations and internal quotation marks omitted); *see also Dukes*, 131 S.Ct. at 2551.

*Motion to Dismiss/Summary Judgment*
Case No. 1:13-cv-42

DATED: August 29, 2013                    Respectfully submitted,


                                          *s/Richard W. Epstein*
                                          RICHARD W. EPSTEIN, ESQ.
                                          (Fla. Bar No. 229091)
                                          Admitted Pro Hac Vice
                                          Richard.Epstein@gmlaw.com
                                          JEFFREY A. BACKMAN, ESQ
                                          (Fla. Bar No. 0662501)
                                          Admitted Pro Hac Vice
                                          Jeffrey.Backman@gmlaw.com
                                          GREENSPOON MARDER, P.A
                                          200 East Broward Blvd., Suite 1500
                                          Fort Lauderdale, Florida 33301
                                          954.491.1120 (Telephone)
                                          954.343.6958 (Facsimile)

                                          Timothy A. Hudson
                                          THudson@TDRLAWFIRM.com
                                          TABET DiVITO & ROTHSTEIN, LLC
                                          209 S. LaSalle Street, Suite 700
                                          Chicago, Illinois  60604
                                          Telephone: (312) 762-9450
                                          Facsimile: (312) 762-9451
                                          Firm No.: 38234

                                          *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF  notification on this 29th day of August, 2013.


                                          *s/Richard W. Epstein*
                                          Richard W. Epstein

- 23 -