IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SARAH TONEY, on behalf of herself and others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) QUALITY RESOURCES, INC. *et al.*, ) ) Defendants. ) | No. 1:13-cv-42 Judge John F. Grady |

**DEFENDANT QUALITY RESOURCES, INC.'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S THIRD
AMENDED COMPLAINT AND/OR MOTION FOR SUMMARY JUDGMENT**

It is undisputed that Plaintiff consented to receive the very telephone calls about which she now complains.[1] Plaintiff also concedes twelve (12) of the thirteen (13) material facts set forth in Quality's Rule 56.1 Statement.[2] Indeed, there is no factual dispute that: (1) Plaintiff ordered Stompeez slippers online;[3] (2) the Order Form to purchase the slippers requires a telephone number when placing an order online "for questions about order;"[4] (3) ***Plaintiff provided her cellular telephone number when placing the online order for slippers***;[5] (4) the Privacy Policy discloses that "[i]nformation we collected is used to communicate with you about your product orders . . . [and] ***shared with other organizations to help them contact consumers by e-mail and/or telephone***

---

1. Although Plaintiff had every opportunity to submit a Declaration stating otherwise, she did not.
2. *See* DE 141, Quality's Local Rule 56.1 Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment ("Quality's Rule 56.1 Statement"); DE 149, Plaintiff's Response to Defendant's Rule 56.1 Statement, ¶¶ 1-13.
3. *See* DE 149, Plaintiff's Response to Defendant's Rule 56.1 Statement, ¶ 7.
4. *See id.*, ¶ 8.
5. *See id.*, ¶ 12.

1

*for marketing purposes;*"[6] and (5) the first paragraph of the Privacy Policy states "[b]y using any of the Website, you signify that you read, understand and agree to be bound by this Privacy Policy."[7]

Having conceded virtually all of Quality's Rule 56.1 Statements, Plaintiff's Response to Quality's Motion ("Plaintiff's Response") confirms what is evident from the Third Amended Complaint ("TAC"): this case is about the labored contrivance of lawyer-driven claims under the Telephone Consumer Protection Act, 47 U.S.C. Section 227, et seq. ("TCPA"). Indeed, Plaintiff resorts to misstatements of record evidence and relies on non-binding cases, on inadmissible hearsay and on otherwise inadmissible evidence, solely in an attempt to defeat Quality's Motion to Dismiss and/or Motion for Summary Judgment ("Quality's Motion"). Yet, Plaintiff's Response cannot overcome four crucial realities: (1) Plaintiff consented to receive the telephone calls at issue and Plaintiff failed to adduce competent evidence to the contrary; (2) Plaintiff misstated the terms of Stompeez's privacy policy ("Privacy Policy") and cited to non-binding case law; (3) Plaintiff cannot undermine and distinguish binding case law regarding prior express consent; and (4) Count I and II of Plaintiff's Third Amended Complaint and her claim for a class action are wholly inadequate to state a cause of action for purported TCPA violations.

**I.     ARGUMENT**

   **A. QUALITY IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW BECAUSE PLAINTIFF PROVIDED PRIOR EXPRESS CONSENT**

The TCPA prohibits certain autodialed calls made to a wireless telephone unless the telephone number was provided with the "prior express consent" of the called party.[8] The FCC has interpreted "prior express consent" to include consumers, such as Plaintiff, who knowingly release

---

6. *See id.*, ¶ 10.
7. *See id.*, ¶ 11.
8. "Calls made to a cell phone using an automatic telephone dialing system or prerecorded message violate the TCPA only if they are made without the called party's express consent." *Greene v. DirecTv, Inc.*, 10 C 117, 2010 WL 4628734 at *2, (N.D.Ill. Nov. 8, 2010).

2

their cellular telephone number to another. The FCC's interpretation of "prior express consent" thus provides an exception to the TCPA's prohibitions against certain autodialed calls, *i.e.*, where the consumer has provided the wireless number on the purchase order, as Plaintiff did in this case.

### 1. Plaintiff Has Not Identified Any Admissible Record Evidence To Create A Genuine Issue of Material Fact Regarding Plaintiff's Prior Express Consent

Plaintiff has not set out any admissible record evidence showing the existence of a genuine issue of material fact to contradict Quality's Motion that – pursuant to the Stompeez order form ("Order Form") and Privacy Policy – Plaintiff provided Quality with prior express consent to call her cellular telephone. Indeed, Quality's Rule 56.1 Statement and the record evidence submitted via the Declaration of Cheryl Mercuris demonstrate just the opposite. "Quality did not make an unsolicited call to Toney."[9]

First, Plaintiff adds three (3) additional facts ("Plaintiff's Additional Facts") that purportedly preclude summary judgment in her Response to Quality's Rule 56.1 Statement and cites to two separate exhibits and the Stompeez Privacy Policy. However, none of Plaintiff's Additional Facts or referenced exhibits controvert or create a genuine issue of fact regarding whether Plaintiff provided prior express consent when she inputted her telephone number on the Order Form. Moreover, neither Plaintiff's Additional Facts nor her exhibits are "authenticated by an affiant through whom the exhibits could be admitted into evidence."[10] The Seventh Circuit has repeatedly held that unauthenticated, hearsay documents such as this may not be considered in opposition to a motion for summary judgment.[11] Since both Plaintiff's Additional Facts and the referenced exhibits are not

---

9. *See* DE 140-1, Declaration of Cheryl Mercuris, ¶ 6.
10. *Szymankiewicz v. Doying,* 187 Fed.Appx. 618, 622 (7th Cir. 2006).
11. *See, e.g., Bodor v. Town of Lowell*, 248 Fed.Appx. 752, 753 (7th Cir. 2007), citing *Scott v. Edinburg*, 346 F. 3d 752, 760 n. 7 (7th Cir. 2003) ("To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)"); *Szymankiewicz v. Doying*, 187 Fed.Appx. 618, 622 (7th Cir. 2006) ("To be admissible, documents must be authenticated by an affiant through whom the exhibits could be admitted into evidence."); *Wells v. Franzen*, 777 F.2d 1258, 1262 (7th

authenticated or otherwise based upon personal knowledge of an affiant, this Court should not consider them in ruling on Quality's Motion for Summary Judgment.[12]

Second, Plaintiff did not include a declaration denying that she consented to receiving telephone calls from Quality, or placed conditions, if any, with providing her cellular telephone number. Rather, the only admissible evidence Plaintiff relies on in an attempt to refute Quality's Motion for Summary Judgment are an irrelevant call script and Stompeez's (a former defendant) Response to Plaintiff's Request for Admission No. 6 ("Stompeez Response No. 6"). None of the foregoing documents create a genuine issue of material fact as to Plaintiff's prior express consent. Significantly, Plaintiff did not assert in a declaration whether she reviewed the terms and conditions of Privacy Policy and Stompeez website, or discuss her recollection of the telephone calls she claims to have received.

Instead, Plaintiff's Response relies on her attorney's statements and unverified allegations in the Third Amended Complaint (both of which amount to inadmissible hearsay or inadmissible evidence).[13] Plaintiff ignores the fundamental principle that "[s]elfserving assertions without factual support in the record will not defeat a motion for summary judgment."[14] "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter [;] rather it

---

Cir. 1985) ("These papers were unaccompanied by certifying affidavits or other means of identification, as required by Rule 56(e), Fed. R. Civ. P., and hence cannot be considered"); *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987) ("When a party seeks to offer evidence through other exhibits, they must be identified by affidavit or otherwise made admissible in evidence").

12. While Plaintiff may use the allegations in her TAC to try to demonstrate that she has stated a cause of action against Quality, she cannot rely on her unsworn TAC to contradict the record evidence submitted by Quality in support of its motion for summary judgment.

13. *Szymankiewicz v. Doying*, 187 F. App'x 618, 622 (7th Cir. 2006) (internal citations omitted) ("In evaluating a summary judgment motion, the court may consider as evidence properly authenticated and admissible documents or exhibits. . . To be admissible, documents must be authenticated by an affiant through whom the exhibits could be admitted into evidence.").

14. *Weeks v. Samsung Heavy Industries Co., Ltd.*, 126 F.3d 926, 934 (C.A.7 (Ill.) 1997), *quoting Jones v. Merchants Nat'l Bank & Trust Co.*, 42 F.3d 1054, 1058 (7th Cir.1994); *see also AKW Const. & Envtl. Servs., Inc. v. Galioto*, 98 C 7104, 2000 WL 1809976 at *4 (N.D. Ill. Dec. 11, 2000) ("The party that bears the burden of proof on an issue may not rest on the pleadings, but must demonstrate affirmatively that there is a genuine issue of material fact.").

requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted."[15] Statements that result from conjecture, or that are conclusory, such as Plaintiff's Statement of Facts do not satisfy Rule 56, Fed.R.Civ.P., and this Court should not consider them.[16]

Third, Plaintiff admits in her Response to Quality's Rule 56.1 Statement, that she provided her cellular telephone number when she placed an online order for slippers.[17] Plaintiff also admits that by using Stompeez's website to purchase slippers and pursuant to the Privacy Policy, which she deems a contract,[18] she "read[s], understand[s] and agree[s] to be bound by this Privacy Policy."[19] Plaintiff further admits that the Privacy Policy discloses that information Stompeez collected, such as her cellular telephone number, is "*shared with other organizations to help them contact consumers by e-mail and/or telephone for marketing purposes.*"[20]

The foregoing undisputed material facts, including the Privacy Policy, demonstrate that Plaintiff provided her cellular telephone number knowing that she would be contacted by other organizations, such as Quality, about her order and for marketing purposes.[21] Because Plaintiff has conceded essential facts to defeat her claim, and has failed to present any declaration or other admissible evidence supporting any of her arguments, this Court should accept Quality's Rule 56.1 Statement as true for the purposes of summary judgment and find that Plaintiff has failed to identify any record evidence to raise a genuine issue of material fact.

---

15. *Trustees of Chicago Reg'l Council of Carpenters Pension Fund v. Van Der Laan Bros Concrete Contractors, Inc.*, 12 C 7785, 2013 WL 5966983 at *2 (N.D. Ill. Nov. 7, 2013).
16. *AKW Const. and Environmental Services, Inc.*, 2000 WL 1809976 at *1.
17. *See* DE 149, Plaintiff's Response to Defendants' Rule 56.1 Statement, ¶ 12.
18. *See* DE 148, Plaintiff's Response, p. 21.
19. *See* DE 149, Plaintiff's Response to Defendants' Rule 56.1 Statement, ¶ 11.
20. *See id.*, ¶ 10.
21. There is certainly no record evidence to the contrary and it is telling that Plaintiff made no effort to submit any such contradicting evidence.

### 2. Plaintiff's Misstatements of Record Evidence and Reliance on Non-Binding Authority and Case Law are Insufficient to Defeat Quality's Motion for Summary Judgment

Plaintiff makes several arguments in an attempt to show that she did not provide express consent to receive calls from Quality on her cellular telephone even though she concedes that pursuant to the Order Form and Privacy Policy, she voluntarily provided her cellular telephone to Stompeez and other organizations for marketing purposes.[22]

**First**, Plaintiff's argument that Quality has applied an improper standard as to "prior express consent" or the wrong FCC ruling is meritless. Contrary to Plaintiff's argument, "[m]yriad federal district courts have relied on the 1992 FCC Order ruling to conclude that plaintiffs who provided a business with their telephone number and then received a text message from the business had no claim under the act."[23] The 1992 FCC Order defines what constitutes express consent as follows:

> ***[P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given***, absent instructions to the contrary. Hence, telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached.[24]

In an effort to distinguish this commonly used language from the FCC's 1992 Order, Plaintiff cites to other FCC orders and cases in an attempt to urge the court to apply a non-existent, heightened

---

22. *See* DE 149, Plaintiff's Response to Quality's Rule 56.1 Statement, ¶¶ 10-12.
23. *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1102-03 (C.D. Cal. 2014). *See, e.g.*, *Emanuel v. Los Angeles Lakers,* 2013 WL 1719035, at *3 (C.D.Cal. Apr. 18, 2013) ("'[T]he TCPA is silent on the issue of what form of express consent—oral, written, or some other kind—is required.' … But 'under the prohibitions set forth in § 227(b) (1) … persons who knowingly release their phone number have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.'"); *Roberts v. PayPal, Inc.,* 2013 WL 2384242, at *3 (N.D.Cal. May 30, 2013) ("'Prior express consent' to receive a call is given when the 'called party' voluntarily proffers her telephone number to the calling party."); *Ibey v. Taco Bell,* 2012 WL 2401972, at *3 (S.D.Cal. June 18, 2012); *Pinkard v. Wal–Mart Stores,* 2012 WL 5511039, at *4–5 (N.D.Ala. Nov. 9, 2012); *Gutierrez v. Barclays Group,* 2011 WL 579238, at *3 (S.D.Cal. Feb. 9, 2011).
24. *Greene*, 2010 WL 4628734 at *3 citing to *In re Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 (1992) ("1992 FCC Order").

6

standard.[25] Specifically, Plaintiff argues that the 2008 FCC Order "read in conjunction with the prior orders" demonstrate that providing a phone number alone cannot amount to prior express consent, but Plaintiff's argument improperly construes the law. For example, the 2008 Order specifically addresses calls in the context of debt collection, and therein the FCC clarified the rules regarding calls made about an existing debt.[26] Although not in the debt collection context here, Quality can rely on all FCC Orders including the GroupMe Order cited by Plaintiff (discussed below) to find that consent exists in this context: Plaintiff provided her number, and even admitted in response to Quality's undisputed material facts that <u>she consented to the terms and conditions</u> found in the Privacy Policy accessible from the Stompeez website.[27] As such, Plaintiff's assertions that Quality has relied on outdated FCC Orders as to what currently is considered express consent by the FCC should be disregarded.

Plaintiff's reliance on the recent decision of *Kolinek v. Walgreen Co.* is similarly misplaced.[28] In that case, plaintiff Robert Kolinek had provided his cell phone after a Walgreens pharmacist told him the phone number "was needed for verification purposes (*i.e.*, if another customer named Robert Kolinek attempted to fill a prescription at the same Walgreens, the pharmacist would be able to confirm the correct person using the phone number on record)."[29] Thereafter, he began receiving "robocalls" and filed a complaint, which Walgreens moved to dismiss. Kolinek did not execute any official agreement, and no contract between Kolinek and

---

25. Plaintiff cites to *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012) and *Carlson v. Nevada Eye Care Professionals*, 2:13-CV-00364-RCJ, 2013 WL 2319143 (D. Nev. May 28, 2013), two cases which are entirely distinguishable from the "consent" argument here. In those cases, the agreement or invoice signed by the respective plaintiffs contained different terms and conditions than those at issue here.
26. *See Hudson v. Sharp Healthcare*, 13-CV-1807-MMA NLS, 2014 WL 2892290, at *3 (S.D. Cal. June 25, 2014).
27. *See* DE 149, ¶¶9-11.
28. *See* DE 148, p. 13, citing *Kolinek v. Walgreen Co.*, 13 C 4806, 2014 WL 3056813 (N.D. Ill. July 7, 2014).
29. *Kolinek v. Walgreen Co.,* 2014 WL 3056813, at *1.

Walgreens contained any "terms and conditions" upon which Walgreens could contend it obtained "consent." On reconsideration of his order granting Walgreens' Motion to Dismiss, Judge Kennelly relied on a March 27, 2014 FCC ruling entitled *In re Group Me/Skype Communications S.A.R.L. Petition for Expedited Declaratory Ruling* (the "GroupMe Order").[30] While the focus of the GroupMe Order was on non-telemarketing calls to wireless numbers, text messages, and obtaining consent through an intermediary (which is allowed), many points of law set forth in the GroupMe Order demonstrate Quality obtained "prior express consent." Even the GroupMe Order, in discussing the FCC's 2008 Order, notes that the 2008 Order "did make clear that consent to be called at a number in conjunction with a transaction extends to a ***wide range of calls*** 'regarding' that transaction, even in at least some cases where the calls were ***made by a third party***."[31] Importantly, the GroupMe Order also demonstrates the extent of the prior express consent obtained in that instance was based on GroupMe's terms of service.[32]

Although Judge Kennelly's analysis changed after considering other FCC orders, his updated opinion in the *Kolinek* case does not change the analysis as to the consent Plaintiff provided to be called. Here, Quality's terms and conditions clearly and expressly state a phone number can be used to contact consumers by telephone for marketing purposes. Even the *Kolinek* opinion cited by Plaintiff supports a ruling for Quality.[33]

---

30. FCC Rcd. 14-33, 2014 WL 126074 (Mar. 27, 2014).
31. *In the Matter of Groupme, Inc./skype Commc'ns S.A.R.l Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 29 F.C.C. Rcd. 3442, at *4 (2014) (emphasis added).
32. *See id.* at *1 ("A user who wishes to create a group using GroupMe's service must register with GroupMe and agree to its terms of service, which require the group creator to represent that each individual added to the group has consented to be added and to receive text messages."); *id.* at *5 ("We also disagree with commenters who argue that GroupMe is seeking a 'get-out-of-jail-free card' for its 'inherently risky' manner of gaining prior express consent based upon its Terms of Service agreement.").
33. "The Court should have taken from the 2012 Order an indication that the FCC considers the scope of a consumer's consent to receive calls to be dependent on the context in which it is given." *Kolinek v. Walgreen Co.*, 2014 WL 3056813, at *3.

8

**Second**, Plaintiff asserts that providing her cellular telephone number did not create prior express consent based on the Privacy Policy at issue; however, Plaintiff's entire argument to defeat summary judgment hinges on a portion of the Stompeez Privacy Policy that is essentially inapplicable to her. Specifically, as set forth in Plaintiff's Response to Quality's Rule 56.1 Statement, Plaintiff focuses on language in the Privacy Policy that relates to when a person chooses to "opt in" to "receive announcement lists from these third party advertisers [via E-mail]."[34] However, Plaintiff never alleged in her Third Amended Complaint, or in any iteration thereof, that she did "opt in" to receive emails from Stompeez's third party advertisers. Simply because Plaintiff failed to opt in to the email lists, however, does not mean that Plaintiff did not accept the terms and conditions of the Stompeez Privacy Policy when she used the website. Undaunted by the clear and unmistakable terms of the Online Form and Privacy Policy, Plaintiff urges this Court to believe that the Privacy Policy states that "Stompeez will not use any personally identifiable information, such as phone numbers, for 'any purposes' other than to send e-mails,"[35] *when there is nothing in the Privacy Policy that actually says this.*

To the contrary, Plaintiff concedes, as she must, that the Privacy Policy states that "the [i]nformation we collected is used to communicate with you about your product orders . . . [and] *shared with other organizations to help them contact consumers by e-mail and/or telephone for marketing purposes.*"[36] Plaintiff's contention that the Privacy Policy prevents Stompeez from using any information such as phone numbers for any purposes other than to send e-mails actually refers to the second paragraph of Section 3. As stated above, that paragraph concerns only "opting in" to *an added benefit* with *third party advertisers* that send e-mail announcements to users, while the first paragraph of Section 3 refers and concerns only with "*other organizations*" that may

---

34. *See* DE 149, Plaintiff's Response to Quality's Rule 56.1 Statement, ¶ 14.
35. *See* De 148, Plaintiff's Response p. 10.
36. *See* DE 149, Plaintiff's Response to Quality's Rule 56.1 Statement, ¶ 10.

9

contact users via email or telephone "for marketing purposes." As such, a plain reading of the two paragraphs reveals that Plaintiff is again mischaracterizing and applying an irrelevant portion of the Privacy Policy.

**Third**, Plaintiff erroneously asserts that consent cannot be transferred to Quality. Plaintiff's reliance on the non-binding Ninth Circuit ruling in *Satterfield* is inapplicable to the facts in this case, and has in fact been distinguished in a case cited by Quality, *Baird v. Sabre Inc.*[37] Plaintiff contends that *Satterfield* is "[d]irectly on point,"[38] but Plaintiff's position and summary of the Ninth Circuit's holding is misplaced. In *Satterfield*, the plaintiff, to receive a free ringtone, registered with Nextones by providing a telephone number and completing an online form.[39] The online form specifically stated that you will "receive promotions from Nextones affiliates and brands," and that you agree that you have read and agreed to the terms and conditions.[40] Subsequently, the plaintiff received text messages from a third party, Simon & Schuster, who obtained the plaintiff's phone number from a list of 100,000 cellular telephone numbers of Nextones' subscribers.[41] The Ninth Circuit held that the plaintiff "did not consent to receipt of such a message because Simon & Schuster is not an affiliate or brand of Nextones."[42] Plaintiff, ignoring the facts and holding, contends that *Satterfield* stands for the proposition that consent cannot be shared unless there is shared ownership or other legal connection.[43]

On the contrary, the Ninth Circuit based its holding on a strict construction of the particular facts and circumstances in that case. The contract simply did not allow for ***non-affiliates or brands*** of Nextones to send promotional text messages; it only allowed ***actual affiliates*** of Nextones which

---

37. *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1103 (C.D. Cal. 2014).
38. See DE 148, Plaintiff's Response, p. 20.
39. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949 (C.A.9 (Cal.),2009).
40. *Satterfield,* 569 F.3d at 949.
41. *Satterfield,* 569 F.3d at 949.
42. *Satterfield,* 569 F.3d at 955.
43. See DE 148, Plaintiff's Response, p. 16.

10

the court specifically defined. Since Nextones neither owned nor controlled Simon & Schuster, and did not have a direct contractual relationship with Simon & Schuster, the Ninth Circuit held that Simon & Schuster was not an "affiliate" or "brand" of Nextones.[44]

Cases and FCC orders clarify that the extent of the consent obtained should be construed by the language set forth in an available contract or terms and conditions. Indeed, even the recent GroupMe Order relied on by Plaintiff notes that the 2008 FCC Order "did make clear that consent to be called at a number in conjunction with a transaction extends to a *wide range of calls* 'regarding' that transaction, even in at least some cases where the calls were *made by a third party*."[45] Moreover, the *Baird* case also involved a third party calling on behalf of an airline, which the court found to be perfectly permissible despite lack of express approval to be called by third parties in the contract at issue in *Baird*.[46] Unlike the Nextones online form's terms and conditions, which limited the express consent to "affiliates" and "brands" only of Nextones, Stompeez's Privacy Policy is much broader and states that personal information (such as a telephone number), is shared with "other organizations to help them contact consumers by . . . telephone for marketing purposes." In addition, unlike the defendants in *Satterfield*, Stompeez has "a direct contractual relationship with Quality."[47] As such, contrary to Plaintiff's contentions, a party can "graft" prior express consent from another party so long as the contract (*i.e.*, online form and terms and conditions) allows for it.[48]

---

44. *Satterfield,* 569 F.3d at 955.
45. *In the Matter of Groupme, Inc./skype Commc'ns S.A.R.l Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 29 F.C.C. Rcd. 3442, at *4 (2014) (emphasis added).
46. *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1106 (C.D. Cal. 2014).
47. Similarly, as explained in *Baird v. Saber*, "this case is unlike *Satterfield,* in which the plaintiff consented to receive messages from a business and its affiliates, but not from wholly unrelated enterprises." *Baird v. Sabre*, 995 F. Supp. 2d 1100, 1106 (C.D. Cal. 2014).
48. *See also Sengenberger v. Credit Control Servs., Inc.*, 09C2796, 2010 WL 1791270 at *3 (N.D. Ill. May 5, 2010) *adhered to on reconsideration*, 09 C 2796, 2010 WL 6373008 (N.D. Ill. June 17, 2010) (supporting the proposition that prior express consent is transferrable and holding that "[c]alls placed

**Fourth**, Plaintiff erroneously claims that Quality has misstated the amendments to the TCPA regulations and misunderstood their effect.[49] On October 16, 2013, 47 C.F.R. 64.1200 was amended to provide that express consent needed to be in writing, consistent with the requirement previously imposed by entities seeking consent to call Do Not Call registrants. However, as Quality explained in its Motion, this difference is inconsequential because Quality did obtain the express written consent of Plaintiff to receive calls. 47 C.F.R. §64.1200(f)(8)(ii) provides "[t]he term 'signature' shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law." Thus, even though the regulations were amended in October 2013, the same arguments as to Quality's liability apply regardless of whether Plaintiff's telephone number was on the National Do Not Call Registry.

### 3. Plaintiff Cannot Refute or Distinguish Binding Case Law Supporting Quality's Entitlement to Summary Judgment

Plaintiff has not refuted or distinguished the binding case law cited by Quality. For example, in similar instances where a plaintiff provided her cellular telephone number as a contact number, courts in this District have concluded that the plaintiff provided her express consent to be contacted.[50] In *Greene v. DirectTV, Inc.*, the plaintiff contacted a consumer reporting agency, Equifax, and placed a fraud alert message in her credit reports which stated that she was the victim of identity theft and that potential creditors should verify her identity by calling her cell phone

---

by a third-party collector on behalf of that creditor [to whom prior express consent was provided] are treated as if the creditor placed the call").

49. *See* DE 148, p. 17 ("Quality erroneously states that the above requirement on express consent in writing were (sic) only recently imposed by the 'Telemarketing Sales Rule' and effective as of October 16, 2013. … Quality is wrong. The TCPA's requirement that consent to contact a consumer listed on the Registry must be in writing long predates October of 2013.").

50. *See Greene,* 2010 WL 4628734, and *Frausto v. IC Sys., Inc.*, 10 CV 1363, 2011 WL 3704249 (N.D. Ill. Aug. 22, 2011).

number before they opened credit using her personal information.[51] The plaintiff did not place any conditions on the use of her number. A third party contacted DirecTV about opening a satellite television account using the plaintiff's social security number.[52] When DirecTV pulled the plaintiff's credit report, it received her fraud alert. DirecTV's vendor then called the plaintiff's cellular telephone and played a prerecorded message asking whether she had ordered satellite television service from DirecTV.[53] In response, the plaintiff filed suit, alleging that the prerecorded message call violated the TCPA because it was made without her express consent. The court entered summary judgment for the defendants and held that by giving her cellular telephone number to Equifax for fraud protection, the plaintiff had given express consent for third parties to contact her.[54]

Here, Plaintiff's mischaracterization of the Privacy Policy does not change the simple fact: that a person who knowingly released his or her cellular telephone number pursuant to an online user agreement has in effect given their permission to be called by the party they gave the number to, or anyone acting on behalf of that party.[55] Plaintiff's TCPA claim suffers from the same infirmities that doomed the TCPA claims in *Frausto* and *Greene*.[56] That is, Plaintiff voluntarily inputted her cellular telephone number on the Order Form, and agreed pursuant to the Privacy Policy, to provide other organizations, such as Quality, permission to call her cellular telephone for marketing purposes. Based on the foregoing, this Court should conclude that Plaintiff expressly

---

51. *Greene,* 2010 WL 4628734 at *1.
52. *Greene,* 2010 WL 4628734 at *2.
53. *Greene,* 2010 WL 4628734 at *2.
54. *Greene,* 2010 WL 4628734 at *2.
55. *Frausto,* 2011 WL 3704249 at *1. See DE 140, Defendants' Motion to Dismiss and/or Motion for Summary Judgment, p. 14-15, for a more detail summary of the facts and holding in *Frausto*.
56. Notably, Plaintiff's counsel, Alexander Burke, Esq., represented the plaintiffs in both *Frausto* and *Greene*. Plaintiff's counsel has now attempted to contrive new tactics and misstate record evidence to avoid additional adverse rulings regarding a party's prior express consent under the TCPA.

consented to the calls made by Quality and award summary judgment as to Defendants on Counts I and II of Plaintiff's TAC.

### B. PLAINITFF'S CONCLUSORY ALLEGATIONS ARE INSUFFICIENT TO STATE A CLAIM AGAINST QUALITY UNDER THE TCPA

#### 1. Both Count I and Count II of Plaintiff's Third Amended Complaint are Wholly Inadequate to State a Cause of Action for Purported TCPA Violations

As an alternative to summary judgment, Quality asserts that Plaintiff has failed to cure the pleading deficiencies that, presumably, led to amending her complaint on three prior occasions. For the reasons set forth in Quality's Motion, both counts should be dismissed for failure to state a claim. As Plaintiff admits in response to Quality's Undisputed Facts, and concedes throughout the Third Amended Complaint, she provided her phone number and agreed to the terms and conditions set forth in the Stompeez Privacy Policy. Moreover, the legal conclusions in the Third Amended Complaint are wholly insufficient and there is nothing therein for the Court to conclude that the consented-to telephone calls were made using an automated telephone dialing system ("ATDS") as defined by the TCPA and applicable case law.

#### 2. Plaintiff's Class Allegations are Deficient and Should Be Dismissed

Plaintiff's claim for a class action is not plausible and must be dismissed because it includes a "fail-safe" definition. A fail-safe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim."[57] Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment.[58] "This type of class definition is called a 'fail safe' class

---

57. *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 825 (7th Cir.2012).
58. *Messner* 669 F.3d 802 at 825.

14

because the class definition precludes the possibility of an adverse judgment against class members; the class members either win or are not in the class."[59]

Here, Plaintiff pleads a class of persons called by Plaintiff who did not provide Defendants with prior express consent to place the call.[60] This constitutes an impermissible "fail-safe" definition because whether an individual is a member of the proposed class cannot be determined without inquiring into the merits of each person's claim.[61] Under Plaintiff's proposed class definition, if Plaintiff provided prior express consent, the person is not a member of the class and therefore is not bound by the Court's judgment. Alternatively, if the Court determines that Plaintiff did not provide prior express consent to call, the person is deemed part of the class and liability is already established. As a result, and for the additional reasons set forth in Quality's Motion, Plaintiff's class action is not plausible and must be dismissed.

### III. CONCLUSION

Because (1) Plaintiff concedes that she provided her phone number and consented to the Stompeez Privacy Policy; and (2) Plaintiff failed to identify any admissible record evidence to defeat Quality's Motion for Summary Judgment, final summary judgment as to Plaintiff's TCPA claims is appropriate.[62] In the alternative, Quality respectfully request that this Court dismiss Plaintiff's Third Amended Complaint because Plaintiff has failed to plead the essential elements of her TCPA claims and Plaintiff has failed to set forth sufficient facts which would support the maintenance of this matter as a class action.

---

59. *Genenbacher v. CenturyTel Fiber Co. II,* 244 F.R.D. 485, 488 (C.D.Ill.2007).
60. *See* DE 134, p.21.
61. *Messner*, 669 F.3d 802, at 825.
62. *AKW Const. & Envtl. Servs., Inc. v. Galioto*, 98 C 7104, 2000 WL 1809976 at *4 (N.D. Ill. Dec. 11, 2000) ("The party that bears the burden of proof on an issue may not rest on the pleadings, but must demonstrate affirmatively that there is a genuine issue of material fact.").

Defendant's Reply in Support of Motion for Summary Judgment
Case No.: 1:13-CV-42

DATE: October 3, 2014

Respectfully submitted,

*s/Jeffrey A. Backman*
RICHARD W. EPSTEIN, ESQ.
(Fla. Bar No. 229091)
Admitted *Pro Hac Vice*
Richard.Epstein@gmlaw.com
JEFFREY A. BACKMAN, ESQ.
(Fla. Bar No. 0662501)
Admitted *Pro Hac Vice*
Jeffrey.Backman@gmlaw.com
GREENSPOON MARDER, P.A
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
954.491.1120 (Telephone)
954.343.6958 (Facsimile)

-and-

Timothy A. Hudson
THudson@TDRLAWFIRM.com
TABET DiVITO & ROTHSTEIN, LLC
209 S. LaSalle Street, Suite 700
Chicago, Illinois 60604
Telephone: (312) 762-9450
Facsimile: (312) 762-9451
Firm No.: 38234

*Attorneys for Defendants Quality Resources Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court by using CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notification on this 3rd day of October, 2014.

*s/Jeffrey A. Backman*
JEFFREY A. BACKMAN