13-42.141                                          December 1, 2014

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SARAH TONEY, on behalf of herself    )
and others similarly situated,       )
                                     )
              Plaintiff,             )
                                     )
        v.                           )    No. 13 CV 42
                                     )
QUALITY RESOURCES, INC.,             )
SEMPRIS, LLC d/b/a Budget Savers,    )
and PROVELL, INC. f/k/a Budget       )
Savers,                              )
                                     )
              Defendants.            )

<u>**MEMORANDUM OPINION**</u>

Before the court are two motions: (1) that of defendant Quality Resources, Inc. to dismiss the Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or in the alternative for summary judgment pursuant to Federal Rule of Civil Procedure 56(c); and (2) that of defendants Sempris, LLC and Provell, Inc. to dismiss the Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the court denies the motions of defendants Quality Resources, Inc. and Sempris, LLC and grants the motion of Provell, Inc.

**BACKGROUND**

On January 3, 2013, plaintiff, Sarah Toney, filed a class action complaint asserting claims against three defendants for

violations of the Telephone Consumer Protection Act ("TCPA"), 47
U.S.C. § 227(b) and (c). Since then, plaintiff has amended the
complaint several times. The current version, the Third Amended
Complaint, names three entities as defendants: Quality Resources,
Inc. ("Quality"); Sempris, LLC, doing business as Budget Savers
("Sempris"); and Provell, Inc., formerly known as Budget Savers
("Provell"). Quality is a telemarketing company. Sempris is a
company that operates the Budget Savers website,
www.budgetsaversonline.com, which offers a subscription membership
club that provides retail and restaurant discounts. Provell is a
defunct corporation that Sempris purchased in February 2011.

Toney alleges that on December 8, 2012, she placed an order
for three pairs of children's slippers from a website called
Stompeez.com ("Stompeez").[1] She entered her credit card
information, shipping address, and e-mail address on the website's
order form. She also provided her cellular telephone number
pursuant to the field of the order form that required it "for
questions about [the] order." (Third Am. Compl. ¶¶ 30-31.) Toney
alleges that the representation that customers' phone numbers would
be used "for questions about order[s]" was "untrue" because
Stompeez had a contract with Quality pursuant to which Quality
purchased information about Stompeez's customers for approximately
$1.50 per customer and then used the information to make

---

[1] Although Toney named Stompeez as a defendant in previous versions of
the complaint, she does not include it in the current complaint.

telemarketing calls to sell the products and services of other parties, such as Sempris and Provell. (Id. ¶¶ 32-33.)

On December 10, 2012, Toney received three calls on her cellular telephone. The caller-identification information showed that the caller's number was (866) 379-2003 (which is Quality's number). (Id. ¶ 34.) Toney did not answer the calls. (Pl.'s Opp'n to Quality's Mot. at 1.) The next day, she received another call from the same number and answered it. (Third Am. Compl. ¶ 35.) The call started with a distinctive click and pause prior to the caller's coming on the line, indicating that it was coming from a predictive dialer, an automatic telephone dialing system. (Id. ¶¶ 45-47.) The caller told Toney that he was calling about her Stompeez purchase to verify her address. After the caller verified Toney's information, he then tried to sell Toney a membership in the "Budget Savers" program, which was offered by Sempris and Provell. (Id. ¶¶ 36.) The caller followed a script, which is attached to the complaint. (Id. ¶ 41, Ex. A.) Plaintiff does not allege that she bought a Budget Savers membership during the call, but she does allege that Quality entered into contracts with call recipients on Sempris's behalf during more than 95 percent of the completed calls that are the subject of this lawsuit. (Id. ¶ 39.)

Plaintiff alleges that Quality acted as the agent of Sempris and Provell during the telemarketing calls and that Quality has had a business relationship with the two companies since, at the

- 3 -

latest, February 2005. (Id. ¶¶ 49-50.) Throughout the course of that relationship, the parties had a "Telemarketing Program Sales Agreement" (the "Agreement") that was modified at least five times. (Id. ¶ 51.) The Agreement with Sempris requires Quality to market Sempris's "Budget Savers" programs "via outbound telemarketing." (Sempris & Provell's Mem. in Supp. of Mot., Ex. 2.)[2] Sempris states that it "relies exclusively" on Quality to market the Budget Savers program. (Id. at 2.) Plaintiff alleges that Quality "had a similar arrangement with Provell during the class period, until Provell transferred its telemarketing contract to Sempris." (Third Am. Compl. ¶ 52.)

According to plaintiff, Quality called her phone "several times under the guise of 'confirming' her address and payment information for Stompeez," which plaintiff had already provided, but "[i]t is clear from the script used to make the call, as well as the call itself, [that] the real reason for the call was to try to sell Plaintiff the goods and services of Budget Savers, which is currently owned and operated by defendant [Sempris] and has no relationship with Stompeez." (Third Am. Compl. ¶ 2.) In Count I, plaintiff alleges that defendants violated § 227(c) of the TCPA by

_____

[2] Sempris and Provell attach the Telemarketing Program Sales Agreement as Exhibit 2 to the memorandum in support of their motion to dismiss and contend that the court can consider it part of the pleadings because plaintiff refers to it in the complaint and it is central to plaintiff's claims. Plaintiff does not object. Because the Agreement is mentioned in the complaint and is central to plaintiff's claims, the court will consider the Agreement without converting Sempris and Provell's motion into a motion for summary judgment. See Burke v. 401 N. Wabash Venture, LLC, 714 F.3d 501, 505 (7th Cir. 2013).

making unsolicited telemarketing calls to her cellular telephone number and to other phone numbers that were on the National Do Not Call Registry. Count II alleges that defendants violated § 227(b) of the TCPA by using an automatic telephone dialing system to call her and others' cellular telephones.

Quality moves to dismiss the Third Amended Complaint or for summary judgment. Sempris and Provell have filed a separate motion to dismiss the Third Amended Complaint.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." Richards v. Mitcheff, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (ellipsis omitted). Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. Put differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "In reviewing the sufficiency of a

- 5 -

complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" Alam v. Miller Brewing Co., 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009)).

**ANALYSIS**

**I. Quality's Motion to Dismiss**

**A. Failure to State a Claim**

Quality argues that Toney fails to state a claim for violations of the TCPA because her allegations are "conclusory and entirely inadequate" and "impermissibly lump the defendants together." (Quality's Mot. at 9.) Quality complains that the "sole allegations" for Count I are that "defendants made unsolicited telemarketing phone calls to plaintiff and the class" and that "defendants' policies, practices and procedures for TCPA compliance are insufficient," and that Count II "simply concludes," while "improperly lumping defendants together," that "defendants made improper calls to plaintiff and others' cellular telephones using an automatic telephone dialing system." (Id. (citing Third Am. Compl. ¶¶ 86-87, 105).) Quality, however, simply ignores the sixteen pages of allegations, incorporated by Counts I and II, that precede these paragraphs. Those allegations adequately describe

plaintiff's theories of liability and each defendant's alleged role in the TCPA violations. These allegations sufficiently put the defendants on notice of plaintiff's claims and the grounds upon which they rest.

### B. Consent Defense

#### 1. Provision of Phone Number "For Questions About Order"

Under the TCPA, it is unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii). A defendant may avoid liability under this section by proving that it made the call with the prior express consent of the called party. Quality concedes that it bears the burden of establishing this affirmative defense. (Quality's Mot. at 8-9 n.52, 10.) See, e.g., Thrasher-Lyon v. Ill. Farmers Ins. Co., 861 F. Supp. 2d 898, 905 (N.D. Ill. 2012). Complaints need not anticipate affirmative defenses, Levin v. Miller, 763 F.3d 667, 671 (7th Cir. 2014), but a court may dismiss a suit on the basis of a valid affirmative defense that is obvious from the face of the complaint. Syler v. Will County, Ill., 564 F. App'x 848, 849 (7th Cir. 2014).

Quality contends that the court should dismiss the complaint or grant summary judgment on both counts because it is undisputed that Quality called Toney with Toney's prior express consent. Quality relies on two factors. The first is that Toney admits in the complaint that she provided her phone number to Stompeez "for questions about [the] order," Third Am. Compl. ¶ 31, and, according to Quality, "[t]his is precisely what Quality did--call Toney to confirm and verify her order" on Stompeez's behalf. (Quality's Mot. at 13-15.)

The TCPA does not define what constitutes "prior express consent." The FCC, however, which has the authority to promulgate rules and regulations that implement the TCPA, 47 U.S.C. § 227(b)(2), has shed some light on the issue. Under the Hobbs Act, the court must apply a final FCC order if it governs the matter at issue. CE Design, Ltd. v. Prism Bus. Media, Inc., 606 F.3d 443, 450 (7th Cir. 2010); Griffith v. Consumer Portfolio Servs., Inc., 838 F. Supp. 2d 723, 726 (N.D. Ill. 2011). Quality asserts that a 1992 FCC order contains the "operative definition of consent" and is controlling. (Quality's Mot. at 9.) In that order, the FCC stated: "[P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. Hence, telemarketers will not violate [TCPA rules] by calling a number which was provided as one at which the called party wishes

to be reached." <u>In re Rules & Regulations Implementing the Tel.</u> <u>Consumer Prot. Act of 1991</u>, Report and Order, 7 FCC Rcd. 8752, 8769 ¶ 31 (Oct. 16, 1992).

In its opening memorandum, Quality cites four cases in which the court found that the plaintiff's act of providing his cellular telephone number to the defendant constituted prior express consent. In <u>Murphy v. DCI Biologicals Orlando, LLC</u>, No. 6:12-cv-1459-Orl-36KRS, 2013 WL 6865772, at *5-8 (M.D. Fla. Dec. 31, 2013), the court found that plaintiff had expressly consented to receiving text messages from the defendants where the plaintiff had voluntarily provided his phone number to the defendants' plasma collection center on a "new donor information sheet," the sheet stated that the information was being obtained to "process" new donors, and the plaintiff gave no instructions to the contrary. In <u>Frausto v. IC System, Inc.</u>, No. 10 CV 1363, 2011 WL 3704249, at *2 (N.D. Ill. Aug. 22, 2011), plaintiff had provided his cellular phone number in applying for an account with an electronic payment service whose terms stated that account holders' personal information could be used to collect fees. The court found that the plaintiff had expressly consented to receive debt-collection calls and that the third-party debt collector who had called the plaintiff stepped into the shoes of the payment service on whose behalf it was attempting to recover the debt. <u>Id.</u> In <u>Baird v.</u> <u>Sabre Inc.</u>, 995 F. Supp. 2d 1100, 1106-07 (C.D. Cal. 2014), the

plaintiff had given an airline her cellular telephone number when booking a flight. The court held that she had therefore expressly consented to receive a flight-notification text message from the company that had contracted with the airline to send notifications on the airline's behalf. In Greene v. DirecTV, Inc., No. 10 CV 117, 2010 WL 4628734, at *3 (N.D. Ill. Nov. 8, 2010), the court concluded that the plaintiff, by providing her cellular telephone number to a consumer reporting agency as the preferred manner for potential creditors to contact her for verification purposes, had expressly consented to receive fraud-alert notification calls from one of the defendants, a third party that had contracted with a potential creditor to make automated fraud-alert calls.

Plaintiff responds that these decisions are distinguishable because plaintiff provided her cell phone number to Stompeez, not Quality. But Frausto, Baird, and Greene all stand for the proposition that a third-party contractor performing services for the entity to which a plaintiff provided her cell phone number stands in the shoes of that entity in a consent analysis. See, e.g., Baird, 995 F. Supp. 2d at 1106 ("No reasonable consumer could believe that consenting to be contacted by an airline company about a scheduled flight requires that all communications be made by direct employees of the airline, but never by any contractors performing services for the airline."); Frausto, 2011 WL 3704249, at *2 (holding that the defendant debt collector was the equivalent

of the party to whom the plaintiff had provided her cell phone number for purposes of the TCPA).[3]

Plaintiff's second argument regarding consent is much stronger. Plaintiff points out that she provided her phone number to Stompeez for an explicitly limited purpose--"questions about [her] order"--and that Quality went beyond this purpose by trying to sell her a Budget Savers membership.[4] The FCC addressed the concept of limited consent in a 2012 order as follows:

> One commenter . . . appears to suggest that oral consent is sufficient to permit any autodialed or prerecorded calls to wireless numbers. It argues that its customers may orally provide their wireless phone number as a point of contact and therefore those customers expect _marketing_ and service calls. We disagree. Consumers who provide a wireless phone number for a limited purpose--for service calls only--do not necessarily expect to receive telemarketing calls that go beyond the limited purpose for which oral consent regarding service calls may have been granted.

---

[3]/ In Frausto, the court relied on an FCC Declaratory Ruling in which the FCC responded to a request by a trade association that represents debt-collection agencies. In that Ruling, the FCC "clarif[ied] that autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Declaratory Ruling, 23 FCC Rcd. 559, 559 ¶ 1 (Jan. 4, 2008). The FCC also stated: "We emphasize that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." Id. at 564-65 ¶ 10. Moreover, "[c]alls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." Id. at 565 ¶ 10.

The 2008 Declaratory Ruling pertained to debt collectors, but plaintiff does not provide any reason why the FCC's reasoning therein should not apply to other kinds of callers who contract to provide calling services for the entity to whom a phone number is knowingly given.

[4]/ Plaintiff also maintains that Quality's "confirmation" of her address for the Stompeez order was a pretext to promote Budget Savers. (Pl.'s Opp'n to Quality's Mot at 13 n.7.) The Budget Savers call script attached to plaintiff's complaint acknowledges that some of the call recipients may already have received the products they had ordered. (Third Am. Compl., Ex. A.)

<u>In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, Report and Order, 27 FCC Rcd. 1830, 1840 ¶ 25 (Feb. 15, 2012).

In <u>Kolinek v. Walgreen Co.</u>, No. 13 CV 4806, 2014 WL 3056813 (N.D. Ill. July 7, 2014), Judge Kennelly reconsidered the defendant's motion to dismiss the plaintiff's claim that defendant Walgreens had violated the TCPA by making automated "robocalls" to plaintiff's cell phone reminding him to refill his prescriptions. The plaintiff alleged that he had provided his phone number to Walgreens "for verification purposes (<u>i.e.</u>, if another customer [with the same name as plaintiff] attempted to fill a prescription at the same Walgreens, the pharmacist would be able to confirm the correct person using the phone number on record." 2014 WL 3056813, at *1. The court had previously granted the defendant's motion to dismiss the claim, but plaintiff argued that the court should reconsider that ruling in light of the FCC's rulings interpreting the prior express consent defense as well as its recent ruling titled <u>In re GroupMe, Inc./Skype Communications S.A.R.L Petition for Expedited Declaratory Ruling, Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, Declaratory Ruling, 29 FCC Rcd. 3442 (Mar. 27, 2014). Judge Kennelly discussed the FCC's 1992 and 2012 orders and its 2008 ruling, and then stated:

> In retrospect, the Court should have taken from the 2012 Order an indication that the FCC considers the scope of a consumer's consent to receive calls to be dependent on the context in which it is given—contrary to what the

Court had seen in the 1992 Order as a general rule that consent for one purpose means consent for all purposes. Any doubt in this regard is removed by the GroupMe Order, issued after the Court's February 2014 ruling. In that order, the FCC took the opportunity to "further clarify" the boundaries of prior express consent under the TCPA. <u>GroupMe Order</u>, 2013 WL 1266074, at *5 ¶ 12. The FCC said that a consumer gives "prior express consent" when she provides her wireless number to the private organizer of a text message group "agree[ing] to receive associated calls and texts." This, the FCC said, gives the business entity providing the private group messaging service the consumer's consent to receive certain administrative texts and calls related to the operation of the private messaging group as well as the private group members' texts. <u>Id.</u> The FCC went on to state that the "prior express consent requirement is satisfied with respect to both GroupMe and the group members regarding that particular group, <u>but only regarding that particular group</u>." <u>Id.</u> (emphasis added). <u>By that last clause, the FCC made it clear that turning over one's wireless number for the purpose of joining one particular private messaging group did not amount to consent for communications relating to something other than that particular group.</u>

When one reads the cited FCC orders together, it is clear that the Court erred in its February 2014 ruling in this case. The FCC has established no general rule that if a consumer gives his cellular phone number to a business, she has in effect given permission to be called at that number for any reason at all, absent instructions to the contrary. Rather, <u>to the extent the FCC's orders establish a rule, it is that the scope of a consumer's consent depends on its context and the purpose for which it is given. Consent for one purpose does not equate to consent for all purposes.</u>

This, in the Court's view, is a more natural reading of the TCPA's exception for a call "made with the prior consent of the called party." 47 U.S.C. § 227(b)(1)(A). The "rule" that the Court had erroneously found in the FCC 2008 Order amounted to a version of implied consent. But that is not what the statute requires; it says that prior express consent is needed. Walgreens' argument to the contrary, and the out-of-district cases it has cited in support, are unpersuasive.

Kolinek's complaint alleges that he gave Walgreens his cellular phone number in response to a request from a pharmacist who said it "was needed for potential identity

> verification purposes." Compl. ¶ 18. <u>If that is what
> happened, it does not amount to consent to automated
> calls reminding him to refill his prescription.</u> The
> Court does not, of course, adjudicate the accuracy of
> Kolinek's claim at this point; that must await factual
> development. For now, the Court is required to take his
> allegation as true. As a result, Walgreens is not
> entitled to dismissal under Rule 12(b)(6) based on its
> prior express consent defense.

2014 WL 3056813, at *3-4 (emphasis added and citation omitted).

Judge Kennelly's discussion is consistent with the FCC's orders.

Accordingly, the court rejects Quality's contention that Toney's

providing her phone number to Stompeez "for questions about [her]

order" constituted consent to phone calls offering the services of

Budget Savers.

The court also rejects Quality's characterization of its call

to Toney as a "confirmation telephone call." (Quality's Mot. at

3.) In a 2003 order that established the Do Not Call Registry, the

FCC discussed "dual-purpose" calls:

> The so-called "dual purpose" calls described in the
> record--calls from mortgage brokers to their clients
> notifying them of lower interest rates, calls from phone
> companies to customers regarding new calling plans, or
> calls from credit card companies offering overdraft
> protection to existing customers--would, in most
> instances, constitute "unsolicited advertisements,"
> regardless of the customer service element to the call.
> The Commission explained in the 2002 Notice that such
> messages may inquire about a customer's satisfaction with
> a product already purchased, but are motivated in part by
> the desire to ultimately sell additional goods or
> services. If the call is intended to offer property,
> goods, or services for sale either during the call, or in
> the future (such as in response to a message that
> provides a toll-free number), that call is an
> advertisement.

In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Report and Order, 18 FCC Rcd. 14014, 14098 ¶ 142 (July 3, 2003).  The FCC would deem Quality's call a sales call.  Toney alleges that the scope of her consent was limited to questions about her Stompeez order and did not include consent to receive an advertisement for another party's services.  Pursuant to the FCC's orders and Kolinek, Quality is not entitled to dismissal at this stage based on a prior express consent defense.

### 2.    Stompeez's Privacy Policy

Quality attempts to bolster its consent defense by introducing the Privacy Policy that was located somewhere[5] on Stompeez's website.  This is a matter outside the pleadings.  Plaintiff does not refer to the Privacy Policy in the complaint, nor is it central to her claims.  "If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  Because plaintiff does not object to treating Quality's motion as a summary judgment motion, the court will do so

---

[5]/  The archived web address is printed on the copy of the Privacy Policy that Quality provides.  (Quality's Mot., Ex. B.)  The address, however, sheds no light on how a user of Stompeez's website would have found the Privacy Policy, and there is no other evidence in that regard.  For example, did Stompeez's order form contain a link to the Privacy Policy?  Was there a link at the bottom of the Stompeez home page?  Moreover, Quality provides no evidence that the Privacy Policy attached to its motion was the version in effect at the time Toney ordered Stompeez in December 2012.

with regard to the Privacy Policy and address the substance of Quality's argument.

Quality relies on the following provisions of Stompeez's Privacy Policy as evidence that Toney "agreed . . . to provide other organizations, such as Quality, permission to call her cellular telephone for marketing purposes" (Quality's Reply at 13):

> By using any of [Stompeez's] Websites, you signify that you have read, understand and agree to be bound by this Privacy Policy.
> . . .
> **How We Use the Information We Collect.**
> <u>The information we collect is used to communicate with you about your product orders</u>, improve the content of our Websites, used to customize the content and/or layout of our page for each individual visitor, used by us to contact consumers for marketing purposes, <u>shared with other organizations to help them contact consumers by email and/or telephone for marketing purposes</u>, disclosed when legally required to do so, at the request of governmental authorities conducting an investigation, to verify or enforce compliance with the policies governing our Websites and applicable laws or to protect against misuse or unauthorized use of our Websites.

(Quality's Mot., Ex. B, at 1 (emphasis added).)    In Quality's view, the Privacy Policy "demonstrate[s] that Plaintiff provided her cellular telephone number knowing that she would be contacted by other organizations, such as Quality, about her order *and for marketing purposes.*"  (Quality's Reply at 5 (emphasis added).)

Quality fails to submit any evidence indicating that Toney saw the Privacy Policy or agreed to it when she placed her Stompeez order.  It fails to cite any authority for the propositions that the Privacy Policy binds Toney simply because she used Stompeez's

website or that the existence of the Privacy Policy is the equivalent of express consent to receive telemarketing calls. Furthermore, the statement Quality relies upon--"[t]he information we collect . . . is shared with other organizations to help them contact consumers by email and/or telephone for marketing purposes" is not a clear expression that the ordering party would be among those consumers who would possibly be "contact[ed] by email and/or telephone for marketing purposes." The phrase appears to be deliberately vague in that sense and by referring to Stompeez's action, which is a step removed from contact--"sharing" information to "help" "other organizations" contact unspecified "consumers." This provision of the Privacy Policy does not use same type of direct language used in the first phrase, which states plainly to users that the information Stompeez collects "is used to communicate with *you* about *your* product orders" (emphasis added). Even if Quality had provided evidence or law to support its argument that the Privacy Policy binds Toney, the statement upon which it relies in the Privacy Policy is not clear enough to constitute an express notification that website users would be contacted by third parties for marketing purposes.

### C. "Upsells"

Quality asserts that "[a]fter verifying and completing Plaintiff's order, Quality was permitted to market or upsell" a third party's services. (Quality's Mot. at 16.) Quality argues

that it is therefore entitled to summary judgment, but it offers no evidence that Toney's Stompeez order was "incomplete" before Quality called.  (Toney's position is that the order was complete and that the need to "verify" her information was a pretext.)

Quality bases its "upsell" argument in part on its argument that the complaint makes clear, or there is no genuine issue that, Toney expressly consented to Quality's calls, which the court has rejected.  Quality also contends that it "abided by the applicable TSR requirements for upselling."  (Quality's Mot. at 16.)  By "TSR," Quality is referring to the "Telemarketing Sales Rule," 16 C.F.R. § 310.1 et seq. (the "Rule"), an FTC rule that prohibits deceptive or abusive telemarketing acts or practices.  Quality fails to develop its argument by explaining how the TSR interacts with the TCPA or why compliance with the Rule would entitle it to summary judgment on a claim for violation of the TCPA.  Moreover, the Rule defines the act of "upselling" as "soliciting the purchase of goods or services following an initial transaction during a single telephone call. The upsell is a separate telemarketing transaction, not a continuation of the initial transaction."  16 C.F.R. § 310.2(ee).  Quality characterizes its Budget Savers offer as an "upsell" but fails to explain why the call fits within the Rule's definition.  Plaintiff does not allege, and Quality does not submit any evidence, that any "initial transaction" occurred during the call.  Accordingly, Quality's assertion that it was permitted

under the TCPA to "upsell" Sempris and Provell's services fails.

###    D.    Class Action Allegations

Quality maintains that Toney's class allegations are "implausible" and pleaded in a conclusory manner. The court disagrees. The Third Amended Complaint contains sufficient facts to support the class allegations. Quality also makes a number of premature arguments regarding the suitability of class treatment. The court views this presentation as an improper preemptive attack on the putative classes prior to class certification proceedings. The parties have not yet completed discovery, and the class allegations are not facially deficient. See, e.g., Boatwright v. Walgreen Co., No. 10 CV 3902, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011) ("Because a class determination decision generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, . . . a decision denying class status by striking class allegations at the pleading stage is inappropriate."); Birchmeier v. Caribbean Cruise Line, Inc., No. 12 CV 4069, 2012 WL 7062748, at *2 (N.D. Ill. Dec. 31, 2012) ("Plaintiffs have alleged the necessary elements under Rule 23, and they have done so plausibly. Determination of whether plaintiffs actually can establish the basis for class certification is premature.").

The court denies Quality's motion to dismiss or in the alternative for summary judgment.

## II.  Sempris and Provell's Motion to Dismiss

### A.  Provell

Toney alleges that she received the calls at issue here in December 2012.  (Third Am. Compl. ¶¶ 34-35.)  Provell, which was a Delaware corporation, maintains that its shareholders dissolved it on October 30, 2012 and thus it could not have committed the acts that allegedly violated the TCPA because it no longer existed as a corporate entity.

Provell submits a Delaware Certificate of Dissolution (the "Certificate") for Provell, Inc., dated October 31, 2012, which states that Provell's dissolution was effective on October 31, 2012. (Sempris & Provell's Mem. in Supp. of Mot., Ex. 1.)  Provell requests that the court take judicial notice of the Certificate, and plaintiff does not object.  The court will do so because it may take judicial notice of matters within the public record without converting a Rule 12(b)(6) motion into a motion for summary judgment.  <u>Adkins v. VIM Recycling, Inc.</u>, 644 F.3d 483, 493 (7th Cir. 2011).

In response, Toney cites the following Delaware statute:

Continuation of corporation after
<u>dissolution for purposes of suit and winding up affairs</u>

All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or

administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized. With respect to any action, suit or proceeding begun by or against the corporation either prior to or within 3 years after the date of its expiration or dissolution, the action shall not abate by reason of the dissolution of the corporation; the corporation shall, solely for the purpose of such action, suit or proceeding, be continued as a body corporate beyond the 3-year period and until any judgments, orders or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the Court of Chancery. . . .

Del. Code Ann. tit. 8, § 278.

Section 278 provides that a Delaware corporation like Provell is subject to suit for at least three years after dissolution. But the court agrees with Provell that by relying on this statute, Toney is confusing the ability to commence a lawsuit against an entity after its dissolution with the ability of that entity to perform an act that could subject it to liability. The question is whether Toney has stated a claim against Provell for acts that allegedly occurred after Provell was dissolved. Toney omits from her citation of the statute the important exception stating that a dissolved corporate entity is *not* continued "for the purpose of continuing the business for which the corporation was organized," and she fails to cite any authority for the proposition that a dissolved corporation has any ability to perform acts that would subject it to liability. Toney points out that the Budget Savers website stated as late as May 2013 that it was "owned and operated

by Provell,"[6] but that representation does not change the fact that Provell was dissolved on October 31, 2012.

Plaintiff also contends that Provell should be liable for Sempris's conduct because "Provell originally wrote the contract and came up with the telemarketing scheme that is the subject of this case" and that the court should treat Sempris and Provell "as a single entity for purposes of this suit" because "Sempris is a mere corporate continuation of Provell." (Pl.'s Opp'n to Sempris & Provell's Mot. at 21-22.) Plaintiff fails to cite authority in support of either argument.

The court dismisses Provell with prejudice for failure to state a claim.

### B.  Sempris

Sempris contends that Toney has failed to allege facts to support her claims under either a direct or vicarious liability theory.[7] It also contends that Toney's "Do Not Call" claim in Count I must be dismissed because she fails to allege that she received more than one telephone call within a twelve-month period by or on behalf of Sempris.

---

[6] This representation was promptly changed to substitute Sempris for Provell when plaintiff's counsel brought the matter to the attention of defendants' counsel. (Pl.'s Opp'n to Sempris & Provell's Mot. at 21 n.12.)

[7] Provell also makes this argument. The court has dismissed Provell because it did not exist at the time of the alleged misconduct, but the court will note in this discussion how plaintiff has otherwise failed to state a claim against Provell.

- 22 -

### 1. Direct Liability

Toney does not allege that she received any phone calls from Sempris; she alleges that Quality made all of the calls at issue. (Third Am. Compl. ¶¶ 34-35.)  Sempris asserts that plaintiff thus fails to state a claim against it for direct TCPA liability.

Plaintiff impliedly concedes that she fails to state a claim against Sempris and Provell under a direct liability theory as to Count II.  (Pl.'s Opp'n to Sempris & Provell's Mot. at 7-11.)  As to Count I, she does not argue outright that she has stated a claim under a direct liability theory, but simply directs the court's attention to the following language of 47 U.S.C. § 227(c), the TCPA's Do Not Call provision:  "A person who has received more than one telephone call within any 12-month period <u>by or on behalf of the same entity</u> in violation of the regulations prescribed under this subsection may . . . bring . . . an action based on a violation of the regulations prescribed under this subsection . . . ."  47 U.S.C. § 227(c)(5) (emphasis added).  She also contends that "[i]t is well settled that a company can be liable for a 227(c)(5) violation despite having not physically dialed the call at issue."  (Pl.'s Opp'n to Sempris & Provell's Mot. at 8.)  She fails to develop any argument, however, that "on behalf of" liability under this provision is equivalent to direct liability, and thus waives the argument.

Toney's direct liability argument also fails to address a 2013

FCC Declaratory Ruling, cited in the next section of her brief, in which the FCC construed the term "on behalf of," as well as case law relying on the FCC's construction.  The FCC clarified that a seller is not directly liable for a violation of the TCPA unless it "initiates" a call, meaning "tak[ing] the steps necessary to physically place a telephone call," but that it could "be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer."  In re Joint Petition Filed By Dish Network, LLC, Declaratory Ruling, 28 FCC Rcd. 6574, 6582-83 ¶¶ 24-26 (May 9, 2013) (the "2013 FCC Ruling"); Smith v. State Farm Mut. Auto. Ins. Co., No. 13 CV 2018, 2014 WL 3906923, at *3 (N.D. Ill. Aug. 11, 2014); Golan v. Veritas Entm't, LLC, No. 4:14 CV 00069 ERW, 2014 WL 2095310, at *4 (E.D. Mo. May 20, 2014).  The parties do not dispute that Quality, not Sempris or Provell, physically placed the allegedly unlawful calls at issue.  Plaintiff has therefore failed to state a claim against Sempris and Provell under a direct liability theory.

### 2.  Vicarious Liability

Sempris contends that Toney also fails to state claims against it for vicarious TCPA liability.  As discussed above, the FCC in its 2013 Ruling clarified that a seller who does not initiate a call nonetheless may be held vicariously liable under federal common law principles of agency for violations of § 227(b) and 227(c) that are committed by third-party telemarketers.  2013 FCC

Ruling, 28 FCC Rcd. 6582-83 ¶¶ 24-26.  The FCC further explained that a seller may face vicarious liability "under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." Id. at 6584 ¶ 28.  The parties acknowledge that this FCC ruling applies here. Plaintiff contends that Sempris is vicariously liable for Quality's telemarketing calls under formal agency principles and principles of apparent authority and ratification.

### a. Formal Agency

Agency is a "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006).[8]  The agent's authority to act may be either actual or apparent. Id. §§ 2.01, 2.03 (2006); 2013 FCC Ruling, 28 FCC Rcd. 6586 ¶ 34.  "An essential element of agency is the principal's right to control the agent's actions." Restatement (Third) of Agency § 1.01, cmt. f(1) (2006). In particular, "[t]he power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents." Id.

---

[8]/  The federal common law of agency is in accord with the Restatement. Opp v. Wheaton Van Lines, Inc., 231 F.3d 1060, 1064 (7th Cir. 2000); NECA-IBEW Rockford Local Union 364 Health & Welfare Fund v. A & A Drug Co., 736 F.3d 1054, 1058 (7th Cir. 2013).

Viewing the allegations in the light most favorable to plaintiff and drawing all reasonable inferences in her favor, as the court must, plaintiff has alleged sufficient facts to make it plausible that Quality was acting as Sempris's agent when it placed the calls at issue. Plaintiff alleges that Quality and Sempris had a telemarketing agreement pursuant to which Sempris authorized Quality, and Quality assented, to make telemarketing calls like the ones to plaintiff for the purpose of entering into Budget Savers contracts with the call recipients on Sempris's behalf, and that Sempris was authorized to enter into contracts on Sempris's behalf. (Third Am. Compl. ¶¶ 2, 37-40, 49-52.)[9] Plaintiff further alleges that Sempris had the right to, and did, control the manner and means of Quality's telemarketing that promoted Budget Savers; participated in developing the script and sales pitch that Quality used; required that solicitations be presented "verbatim" to call recipients; required the consensual recording of all calls made on Sempris's behalf; required that Quality provide Sempris's toll-free phone number during telemarketing calls; and, in regard to sales, imposed strict guidelines about Quality's handling of credit card numbers and customers' acceptance of Sempris's terms and conditions. (Id. ¶¶ 53-57, 59.) Furthermore, plaintiff alleges

---

[9] Plaintiff does not allege that Provell and Quality had the same contract, but merely a "similar arrangement." (Third Am. Compl. ¶ 52.) Moreover, plaintiff does not allege that Provell exercised control over Quality to the extent that Sempris did. Accordingly, plaintiff fails to state a claim against Provell for vicarious TCPA liability pursuant to a formal agency theory.

that Sempris directly participated in the telemarketing in that Quality uses a script in which the caller informs call recipients that "the verification department is going to hop on the line to make sure [the caller] covered everything" and asks if the recipient has any questions "about Budget Savers before [the caller] brings them on the line." Plaintiff alleges that the "verification department" is Sempris itself.[10] (Id. ¶ 60.)

Sempris contends that plaintiff's allegations "directly contradict the contract between Quality and Sempris, which provides that 'Sempris shall not have any direct or indirect control over [Quality's] methods of marketing the [Budget Savers] Programs or its Marketing Solicitations.'" (Sempris & Provell's Mem. in Supp. of Mot. at 10 (quoting Ex. 2 at 1).) The full quotation from the Telemarketing Program Sales Agreement (the "Agreement"), however, reads: "Although Sempris shall not have any direct or indirect control over [Quality's] methods of marketing the Programs or its Marketing Solicitations, [Quality] agrees to adhere to the Confirmation and Verification Criteria described in Exhibit B

---

[10]/ Plaintiff acknowledges in her brief that "there appears to be a question as to whether Quality is the true entity that closes and verifies the sale, because Quality is the entity that is in possession of the recordings of such verification conversations," but that both possibilities "support a finding of liability," under a formal agency theory if Sempris actually participated in the call or otherwise an apparent authority theory because Sempris authorized Quality to represent that it was transferring the call to "Budget Savers." (Pl.'s Opp'n to Sempris & Provell's Mot. at 15 n.9.)

Sempris contends that plaintiff's argument "plainly distorts" Quality's call script in that the reference to "them" being brought "on the line" means Quality's "verification department," not Budget Savers. (Sempris & Provell's Reply at 6 n.3.) Plaintiff concedes that "it seems less likely" that Sempris actually "c[a]me onto the line." (Pl.'s Opp'n to Sempris & Provell's Mot. at 15 n.9.) The call script is ambiguous.

attached hereto." (Id.) Exhibit B to the Agreement states: "All sales must comply with the following Confirmation and Verification criteria without any deviation whatsoever" and contains a detailed list of requirements. It demonstrates a certain amount of control, regardless of the label that Quality and Sempris chose to utilize.

Sempris also points out that the Agreement states that it "creates no agency, partnership or joint venture relationship." (Sempris & Provell's Mem. in Supp. of Mot., Ex. 2, at 6.) But the existence of an agency relationship is a question of fact, and agency can be created by contract or by conduct. See, e.g., Chemtool, Inc. v. Lubrication Techs., Inc., 148 F.3d 742, 745-46 (7th Cir. 1998). How Sempris and Quality intended for their relationship to operate is of course relevant, but not determinative, of how it actually functioned. The court is mindful that discovery is not yet complete and therefore plaintiff does not have access to all of the details about Sempris and Quality's relationship.

Sempris also asserts that plaintiff fails to allege that Sempris had the power to give Quality interim instructions, which is the hallmark of an agency relationship. Admittedly, the existence of a contract between Sempris and Quality, even one that imposes many constraints on Quality, does not necessarily mean that Sempris had the power to give interim instructions to Quality. Plaintiff, however, alleges sufficient facts to show that Sempris

in fact exercised a level of control over Quality's telemarketing activities to make the existence of an agency relationship plausible. Those facts alone ultimately may not be enough to allow plaintiff to prevail, but they are enough to satisfy federal notice-pleading standards with respect to this issue. See Iqbal, 556 U.S. at 678.

### b. Apparent Authority

"Apparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." Restatement (Third) of Agency § 2.03 cmt. c (2006). Accordingly, to plead apparent authority, Toney must allege that she reasonably believed that Quality called her as Sempris's agent and that her belief is traceable to a manifestation of Quality's authority from Sempris. See id.

Toney fails to plead a plausible basis for holding Sempris liable under an apparent authority theory. She fails to plead that she reasonably believed that Quality was Sempris's agent, and she also fails to trace any belief she may have had about the relationship between Quality and Sempris to a manifestation of Sempris (the alleged principal), rather than a representation made by Quality (the alleged agent). It is well established that apparent authority must derive from the statements or actions of the alleged principal, not the alleged agent. See Opp, 231 F.3d at

1064 ("[O]nly the words or conduct of the alleged principal, not the alleged agent, establish the actual or apparent authority of an agent."(brackets omitted)); see also Restatement (Third) of Agency § 2.03 cmt. c (2006) ("An agent's success in misleading the third party as to the existence of actual authority does not itself make the principal accountable."). In other words, for apparent authority to exist, the principal "must communicate either directly or indirectly with the third party" or take some action that instills in the third party a reasonable belief that the actor had authority to act as the principal's agent. See Bridgeview Health Care Ctr. Ltd. v. Clark, No. 09 CV 5601, 2013 WL 4495221, at *3 (N.D. Ill. Aug. 21, 2013). Toney cannot base her apparent authority theory solely on Quality's representations. Because Toney did not communicate directly or indirectly with Sempris, she has failed to plead a plausible basis for holding Sempris liable under an apparent authority theory. See, e.g., Opp, 231 F.3d at 1064; see also Restatement (Third) of Agency § 3.03 cmt. b (2006).

Plaintiff relies solely on the 2013 FCC Ruling to support her apparent authority argument. In that ruling, the FCC provided two paragraphs of "guidance" containing "illustrative examples of evidence that may demonstrate that [a] telemarketer is [a] seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations." See 2013 FCC Ruling, 28 FCC Rcd. 6592–93 ¶¶ 46–47.

Plaintiff's allegations pertaining to apparent authority closely track several of the examples the FCC provided.  She alleges, for example, that (1) Sempris "allow[ed] the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including . . . access to detailed information regarding the nature and pricing of the seller's products"; (2) Quality has the "ability . . . to enter consumer information into the seller's sales or customer systems"; and (3) Sempris reviewed and edited Quality's telemarketing scripts. (Third Am. Compl. ¶¶ 75-77 (quoting the 2013 FCC Ruling).)

The FCC's "guidance" on this subject, however, is not binding on the court, is not entitled to deference, and "has force only to the extent the [FCC] can persuade [the court] to the same conclusion."  Dish Network, L.L.C. v. FCC, 552 F. App'x at 1-2 (D.C. Cir. 2014).  Federal common law principles of apparent authority impose liability on a principal for its alleged agent's actions even though the agent lacked authority to take such actions when a third party reasonably believed that the agent did, in fact, act within its authority, and the belief is traceable to a manifestation of the principal.  Neither the FCC nor plaintiff has provided a persuasive reason for the court to deviate from established principles of federal agency law here.  While it may be possible for plaintiffs in some cases to allege apparent authority through the examples the FCC provided, plaintiff's attempt to do so

here fails for the reasons explained above.[11]

### c. Ratification

"Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) of Agency § 4.01(1) (2006). A principal can ratify an act by "(a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." Id. § 4.01(2). A principal, however, "is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking." Id. § 4.01 cmt. b. "[K]nowing acceptance of the benefits of a transaction ratifies the act of entering into the transaction." Restatement (Third) of Agency § 4.01 cmt. d.

Plaintiff alleges that Sempris ratified Quality's misconduct by knowingly accepting the benefits from tens of thousands of sales of Budget Savers memberships that Quality completed, while knowing that Quality was using automated dialing to obtain those customers. (Third Am. Compl. ¶¶ 39-40, 79, 83-84.) Plaintiff also alleges that Quality and Sempris were aware of a host of complaints that call recipients had lodged concerning Quality's calls about Stompeez and Budget Savers but that they nevertheless persisted

---

[11]/ For the same reasons, plaintiff also fails to state a claim against Provell for vicarious TCPA liability pursuant to a theory of apparent authority.

with the telemarketing campaign and accepted its benefits. (Third Am. Compl. ¶¶ 82-84; Pl.'s Opp'n to Sempris & Provell's Mot. at 19-20.)

Plaintiff's ratification theory fails because plaintiff does not allege that Sempris or Provell accepted any benefit that stemmed from Quality's telemarketing calls to plaintiff. Indeed, plaintiff fails to allege that she did business with Sempris or Provell as a result of Quality's calls.

### 3. Do Not Call Claim (Count I)

Sempris asserts that Toney's "Do Not Call" claim in Count I fails as a matter of law because Toney admits in the complaint that she answered only one call during which Budget Savers was allegedly marketed to her. To state a "Do Not Call" claim, Toney must allege facts allowing a reasonable inference that she "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations." 47 U.S.C. § 227(c)(5). Sempris does not dispute that Quality initiated four calls to Toney in December 2012, Sempris & Provell's Reply at 11-12, but contends that Toney "cannot plausibly allege that the three unanswered calls she purportedly received were initiated by Quality for the purpose of marketing Sempris's Budget Savers membership program, because Toney does not allege--and cannot allege--that she has any personal knowledge of what the content of those calls would have been." (Sempris & Provell's Reply at 12.)

Toney alleges that the three unanswered calls she received on December 10, 2012 were made by Quality "at the direction of, and for the benefit of, Sempris/Provell." (Third Am. Compl. ¶ 34.) Sempris submits that Quality "just as easily could have been calling Toney to market the goods or services of another company it contracts with, for the exclusive purpose of confirming Toney's Stompeez order, or for a different purpose altogther" and that "Toney's assertion that that Quality made the three unanswered calls for the purpose of marketing Budget Savers is nothing more than rank speculation." (Sempris & Provell's Reply at 12-13.) The court disagrees. Toney has alleged that she received and answered a call from Quality in which the caller tried to sell her a Budget Savers membership the day after she received three unanswered calls from Quality. The content and timing of the fourth call allows the court to draw a reasonable inference that Quality made the first three calls to market Sempris's services.

The court denies Sempris and Provell's motion to dismiss as to defendant Sempris.

## CONCLUSION

The court denies the motion of defendant Quality Resources, Inc. to dismiss the Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) [140]. The court grants in part and denies in part the motion of defendants Sempris, LLC

and Provell, Inc. to dismiss the Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [135]. The court dismisses Provell, Inc. from this lawsuit with prejudice but denies the motion to dismiss with respect to Sempris, LLC. The Third Amended Complaint contains sufficient factual allegations to plead a plausible basis for holding Sempris, LLC vicariously liable for the alleged misconduct of Quality Resources, Inc. under a formal agency theory, but not under theories of apparent authority or ratification.

A status hearing is set for December 9, 2014 at 11:00 a.m. to set a date for the close of discovery.


DATE:     December 1, 2014


ENTER:    _____

Amy J. St. Eve, United States District Judge

- 35 -