**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SARAH TONEY on behalf of herself and others similarly situated, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13-cv-42 |
| | ) | |
| v. | ) | Judge Shadur |
| | ) | |
| QUALITY RESOURCES, INC. and SEMPRIS LLC D/B/A BUDGET SAVERS | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**AND FOR CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS**

# TABLE OF CONTENTS

I.      INTRODUCTION......................................................................................................1

II.     NATURE OF THE CASE ..........................................................................................2

III.    THE PROPOSED SETTLEMENT ...........................................................................4

        A.    The Settlement Class.......................................................................................4

        B.    Settlement Relief .............................................................................................4

              1.    Class Member Relief:  Settlement Fund ...............................................4

              2.    Class Member Relief:  Assignment of Indemnity Rights against Quality .5

              3.    Class Representative Incentive Award ..................................................5

              4.    Attorneys' Fees and Costs ....................................................................6

              5.    Remaining Funds .................................................................................6

        C.    Notice and Settlement Administration..............................................................6

        D.    Opt-Out and Objection Procedures .................................................................7

        E.    Release .............................................................................................................7

IV.     ARGUMENT .............................................................................................................8

        A.    The Settlement Approval Process.....................................................................8

        B.    The Settlement Merits Preliminary Approval .................................................10

              1.    The Proposed Settlement Provides Substantial Relief to the Settlement
                    Class Particularly in Light of the Uncertainty of Prevailing on the
                    Merits. ..............................................................................................10

              2.    Continued Litigation Is Likely to Be Complex, Lengthy, and
                    Expensive. ..........................................................................................13

              3.    The Settlement Resulted from Extensive, Arm's-Length Negotiations
                    and Is Not the Result of Collusion......................................................13

              4.    The Stage of the Proceedings and the Amount of Discovery Completed
                    Supports Preliminary Approval. .........................................................14

        C.    Plaintiff's Requested Fees Are Reasonable. ...................................................15

i

**D.**      **The Requested Incentive Award Is Reasonable.** ...............................................**16**

**E.**      **The Proposed Class Notice Satisfies Due Process.** ............................**16**

**F.**      **The Court Should Grant Class Certification for Settlement Purposes.** .........**18**

     **1.**      **The Rule 23(a) Factors Are Met.** ...........................................**19**

     **2.**      **The Rule 23(b)(3) Factors Are Satisfied.** ...............................**22**

**G.**      **Scheduling a Final Approval Hearing Is Appropriate.** ....................................**24**

**V.**      **CONCLUSION** ...........................................................................................**24**

# TABLE OF AUTHORITIES

## Cases

*Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ................................................................................................. 12

*Am. Int'l Grp., Inc. v. ACE INA Holdings.*, Nos. 07-2898, 09-2026, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) ...................................................................................... 9

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997) .................................... 24

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1196 (2013) .......... 24

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312–13 (7th Cir. 1980).. 8

*Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009).......................................... 22

*Butler v. Sears, Roebuck & Co.,* 702 F.3d 359, 362 (7th Cir. 2012) ("*Butler I*"), *vac'd on other grounds* 133 S. Ct. 2768 (2013), *judgment reinstated*, 727 F.3d 796 (7th Cir. 2013) ("*Butler II*"), *cert. denied* 134 S. Ct. 1277 (2014) ................................................................ 24

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 2016 WL 228345 (U.S. 2016).......... 13

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ........................ 25

*Chapman v. First Index, Inc.*, No. 09-5555, 2014 WL 840565, at *2 (N.D. Ill. Mar. 4, 2014) ... 12

*Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) ................................................ 16

*F.C.V., Inc. v. Sterling Nat'l. Bank*, 652 F. Supp. 2d 928, 944 (N.D. Ill. 2009)..................... 17, 18

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)......................................................... 8

*G.M. Sign, Inc. v. Brinks Mfg. Co.*, No. 09-5528, 2011 WL 248511, at *8 (N.D. Ill. Jan. 25, 2011) ....................................................................................................................... 12

*Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) ........................ 23

*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981)........................................................ 19

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) ... 10

*In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ................................ 15

*Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)........................................................ 8

*Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. Ill. 1998)................................................................. 23

*Kleen Products LLC v. Int'l Paper*, 306 F.R.D. 585, 589 (N.D. Ill. 2015) .................................. 19

*Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) ................................................. 19

*Mars Steel Corp. v. Cont'l Ill. Nat'l. Bank & Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987) .......................................................................................................................................... 14

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) ........................ 18

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).................................... 17

*Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015)............................................. 19

*Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. Ill. 2006) ............................................... 23

*Parko v. Shell Oil Co.*, 739 F.3d 1083, 1084 (7th Cir. 2014) ...................................................... 19

*Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014)........................................................... 15

*Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) ....................................................... 21

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985) ........................................................ 17

*Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007)............................................................................................................................... 12

*Pruitt v. City of Chicago*, 472 F.3d 925, 926 (7th Cir. 2006) ...................................................... 19

*Robins  v Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014) *cert. granted* 135 S. Ct. 1892 (Apr. 27, 2015) ............................................................................................................................................ 13

*Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) .......................................................... 23

*Savanna Group, Inc. v. Trynex, Inc.*, No. 10-7995, 2013 WL 66181, at *3 (N.D. Ill. Jan. 4, 2013) ............................................................................................................................................ 12

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011)..................................... 13

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014)....................................... 19, 21

*Synfuel Tech., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) .................... 1

*Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 732 (N.D. Ill. 2014)........................................... 3

iv

*v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ...................................................... 24

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) .................................................. 22

## Statutes

47 U.S.C. § 227 ............................................................................................................................... 2

47 U.S.C. § 227(c)(5) .................................................................................................................... 11

## Other Authorities

*Manual for Complex Litig.* § 21.633 (4th ed. 2004) ...................................................................... 9

## Rules

Fed. R. Civ. P. 23(e)(2) ................................................................................................................... 9

## Treatises

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg") § 11:41 (4th ed. 2002) ........................................................................................................................................ 8

Newberg § 11:42 ........................................................................................................................... 14

Wright, *et al.*, 7A *Fed. Practice & Proc.* § 1751 (3d ed. 2010) .................................................. 19

## Regulations

47 C.F.R. § 64.1200(a)(1)(iii) ........................................................................................................ 2

47 C.F.R. § 64.1200(c)(2) ............................................................................................................... 2

# I.   INTRODUCTION

After more than three years of litigation, dispositive motions, discovery motions, extensive discovery efforts, a dispute over applicable insurance coverage, numerous arm's-length negotiations between counsel, and three mediation sessions over eighteen months, including two sessions before the Hon. James H. Holderman (Ret.), Plaintiff Sarah Toney, along with the Defendant Sempris, LLC d/b/a Budget Savers ("Sempris") have reached a class action settlement of this matter. The Settlement[1] includes the establishment of a $2,150,000 common fund, to be distributed *pro rata* to Settlement Class Members who file a valid claim after payment of notice and administration costs, class counsel fees, and an incentive award to the Plaintiff. Notice will be effectuated through postcards mailed directly to Settlement Class Members identified in records obtained in discovery, an online media campaign, and a website through which Claim Forms may be directly submitted by any Class Members whose addresses cannot be located. In addition to the $2,150,000 common fund, Sempris has agreed to assign the Plaintiff and the Settlement Class any rights to indemnity or subrogation against Quality Resources for claims arising out of the claims asserted by the Plaintiff in this action.

In evaluating the fairness of a proposed class action settlement, the key consideration is the strength of the Plaintiff's case on the merits balanced against the amount offered in the Settlement.  *See Synfuel Tech., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).  Although Plaintiff here believes that she would secure class certification and ultimately prevail on the merits at trial, success is far from assured. At every turn of the litigation and in negotiations, Sempris has denied liability and vigorously defended its position. If approved, the Settlement would bring a sure end to what would be contentious and costly litigation centered on

---

[1] All capitalized terms not defined herein have the meanings set forth in the Parties' Class Action Settlement Agreement ("Agr."), attached as <u>Exhibit 1</u>.

questions of whether a class should be certified and whether Sempris is liable for the allegedly unlawful calls challenged in this action placed by the co-defendant, Quality Resources Group, Inc. ("Quality"). Notably, the settlement class members are not foregoing their claims against Quality as part of this settlement, and retain the ability to pursue Quality for these telemarketing calls, as the Plaintiff will continue to seek to represent a class of individuals who were subjected to Quality's telemarketing practices.

The relief provided here—cash payments from a Settlement Fund, where Settlement Class Members can still pursue claims against the co-defendant—meets the applicable standards of fairness when taking into consideration the nature of Plaintiff's claims and the risks inherent in class litigation. Accordingly, Plaintiff respectfully request that the Court: (1) grant preliminary approval of the Settlement; (2) provisionally certify the proposed Settlement Class; (3) appoint Plaintiff's attorneys as Class Counsel; (4) appoint Plaintiff as representative of the Settlement Class; (5) approve the proposed Notice Plan, Notice, and Claim Form; and (6) schedule the Final Approval Hearing and related dates as proposed.

## II.    NATURE OF THE CASE[2]

This case rests on alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which prohibits, *inter alia*, initiating any telephone solicitation to a telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry, or calling a cell phone using an artificial or prerecorded voice.  *See* 47 C.F.R. § 64.1200(c)(2); § 64.1200(a)(1)(iii).  This case involves telemarketing that operated as follows: Stompeez is a California based company that sells goods over the internet via its web site.

---

[2] Sempris's non-opposition is limited to not objecting to certification of the settlement class and approval of the settlement.  Sempris does not concede or admit to any of the factual or legal assertions of the Plaintiff and, in fact, continues to vigorously dispute many of them.

2

Consumers purchasing goods from the Stompeez web site were asked to provide a phone number in the event Stompeez had "questions about [the] order." *See Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 732 (N.D. Ill. 2014). Ms. Toney was never informed that her contact information would be sold to third parties to make telemarketing calls to her cell phone. However, Stompeez sold the contact information of consumers who purchased goods and services from its web site, including Ms. Toney, to Quality. As part of this telemarketing program, Quality agreed to call Stompeez's customers for two purposes: first, Quality would confirm that the contact information provided to Stompeez was correct. Second, and more importantly, after Quality confirmed the contact information for Stompeez, it engaged in an "up sell" to the consumer, in order to sell other goods and services of Sempris, unrelated to Stompeez or Quality.

On December 8, 2012, the Plaintiff bought two pairs of children's slippers for her godchildren for Christmas from Stompeez. Shortly thereafter, Plaintiff began receiving telephone calls from an unknown telephone number. When Ms. Toney finally answered the persistent calls, she spoke directly with a telemarketing representative for Quality who confirmed the plaintiff's address on the order was correct; of course, it was. Then the telemarketing representative of Quality entered into the high-pressure sales pitch, which notified plaintiff that, as a result of her Stompeez purchase, she was being automatically enrolled into Sempris' "Budget Savers" program. Through discovery, the Plaintiff was able to identify the other individuals who were subjected to the same telemarketing practices.

In addition to numerous informal discussions between counsel, the Parties participated in three mediation sessions over the course of eighteen months, including two before the Honorable James Holderman (Ret.) of JAMS, the final of which on May 10, 2016 resulted in a settlement in principal. (Holderman Affidavit ¶ 4; Burke Aff. ¶ 10.) In connection with the mediations, the

Parties submitted detailed mediation briefs to Judge Holderman, setting forth their respective views on the strengths of their cases.  (Holderman Aff. ¶ 5.) At all times, the Parties' settlement negotiations were adversarial, non-collusive, and at arm's-length. (Holderman Aff. ¶ 7.)  These discussions culminated in the Settlement Agreement.

## III.  THE PROPOSED SETTLEMENT

### A.    The Settlement Class

The proposed Settlement would establish a "Settlement Class" for settlement purposes only, defined as:

> All persons who are or were the subscribers and/or customary users of the telephone numbers on the Class List, and to whom, from January 3, 2009 through the date of preliminary approval, Quality Resources, Inc., made a call or calls in connection with Stompeez Kids Slippers purchases. The following persons are excluded from the Settlement Class: Sempris, any parent, subsidiary, or affiliate of Sempris, the officers, directors, agents, servants, or employees of any of the foregoing as of the entry of the Preliminary Approval Order, Class Counsel, the Settlement Administrator, the Mediator, and any judge presiding over the Action.

 (Agr. ¶ 1.23.)  The records obtained in discovery indicate that there are 64,106 unique telephone numbers attributable to Settlement Class Members. (Burke Aff. ¶10.)

### B.    Settlement Relief

1.    Class Member Relief:  Settlement Fund

The proposed Settlement establishes a non-reversionary $2,150,000 Settlement Fund, which will be used to pay: (1) cash settlement awards to Settlement Class Members; (2) Settlement Administration Expenses (estimated to be $51,089); (3) court-approved attorney's fees of up to one-third of the total amount of the Settlement Fund, in addition to out of pocket expenses; and (4) a court-approved incentive award to the Class Representative of up to $15,000. (Agr. ¶ 2.4)

Each Settlement Class Member who submits a valid claim will receive a *pro rata* share of the Settlement Fund after the deduction of the amount for Settlement Administration Expenses, attorneys' fees and costs to Class Counsel, and any incentive award. (Agr. ¶ 2.3) If all of these amounts are approved as requested and agreed to by the parties, based on expected claims rates, Plaintiff's counsel would expect that each Settlement Class Member would receive $200. (Burke Aff. ¶ 10.) This payment also does not prevent the Settlement Class from continuing to pursue its claim against Quality. The Settlement places no cap on individual Settlement Class Member recoveries, and, in fact, provides for a further *pro rata* distribution of any amount remaining amount remaining in uncashed settlement distribution checks, to the extent administratively feasible.[3] (Agr. ¶ 2.4.)

       2.      <u>Class Member Relief:  Assignment of Indemnity Rights against Quality</u>

As a result of this Lawsuit, Sempris has agreed that the Plaintiff and the Settlement Class will receive any rights to indemnity or subrogation against Quality Resources for claims arising out of the claims asserted by the Plaintiff in this action. (Agr. ¶ 2.2) This benefit received by the Settlement Class Members increases the likelihood that Settlement Class Members will also be able to recover against Quality as this action moves forward.

       3.      <u>Class Representative Incentive Award</u>

If approved by the Court, the Plaintiff will receive an incentive award of $15,000 from the Settlement Fund, in lieu of any payments on claims to which she might otherwise be entitled

---

[3] If distribution of any amounts remaining from uncashed checks is administratively infeasible— *i.e.*, Settlement Class Members would receive less than an additional $1.00, after administrative costs—then that amount will instead be distributed to a Court-approved *cy pres* recipient. (Agr. ¶ 2.2.) The Parties propose the National Consumer Law Center as the designated *cy pres* recipient. (Agr. ¶ 2.2.)

as a Settlement Class Member under the Settlement. (Agr. ¶ 8.2.) This award will compensate Plaintiff for her time and effort and for the risk they undertook in prosecuting this case.

4.  Attorneys' Fees and Costs

Before the hearing on final approval of the settlement, Class Counsel will apply to the Court for an award of attorneys' fees in the amount of up to one-third of the total amount of the Settlement Fund, in addition to out of pocket expenses. (Agr. ¶ 8.1.) As Class Counsel will address in their fee application, an award of attorneys' fees and costs will compensate Class Counsel for the work already performed in relation to the settled claims, as well as the remaining work to be performed in documenting the Settlement, securing Court approval of the Settlement, making sure the Settlement is fairly implemented, and obtaining dismissal of the action.

5.  Remaining Funds

Any amount remaining in the Settlement Fund after paying all Approved Claims, Settlement Administration Expenses, and any Fee Award and incentive award will be distributed to a Court-approved *cy pres* recipient. (Agr. ¶ 2.4(d).) The Parties propose National Consumer Law Center. (*Id.*) This will only include the amount remaining from uncashed checks, to the extent further distribution to the Settlement Class is not administratively feasible. (*Id.*)

**C.    Notice and Settlement Administration**

All Settlement Administration Expenses will be paid from the Settlement Fund. (Agr. ¶ 1.20.) The Parties have agreed upon, and propose that the Court approve, the nationally-recognized class action administration firm Kurtzman Carson Consultants LLC ("KCC") to be the Settlement Administrator (Agr. ¶ 1.21), and to implement the Notice Plan and administer the Settlement, subject to review by counsel. The Settlement Administrator's duties will include: (1) sending Notice to the Settlement Class pursuant to the Notice Plan; (2) responding to inquiries regarding the process from persons in the Settlement Class; (3) processing and

evaluating claim forms, opt-outs and objections and (4) issuing settlement payments. (Agr. ¶ 5.1)

The Settlement Administrator will send direct postcard notice via the U.S. Postal Service—substantially in the form attached as Exhibit 3 to the Settlement Agreement—to the names and addresses of Settlement Class Members. (Agr. ¶ 4.2(a).) The Settlement Administrator also will administer a Settlement Website, substantially in the form of Exhibit 4 to the Settlement Agreement, through which Settlement Class Members will be able to submit Claim Forms in response to Publication Notice and obtain further details and information about the Settlement, including reviewing the Parties' Stipulation of Settlement. (Agr. ¶ 4.2(c).) Notice will be further bolstered through an online media notice campaign directing consumers to the Settlement Website. (Agr. ¶ 4.2(b).)

### D. Opt-Out and Objection Procedures

Persons in the Settlement Class will have the opportunity to exclude themselves from the Settlement or object to its approval. (Agr. ¶¶ 4.3-4.4.) The procedures and deadlines for filing opt-out requests and objections will be conspicuously listed in the Notices and on the Settlement Website. (*See* Agr. at Exs. 2-3.) The Notice informs Settlement Class Members that they will have an opportunity to appear and have their objections heard by this Court at a Final Approval Hearing. (*Id.*) The Notice also informs Settlement Class Members that they will be bound by the release contained in the Settlement Agreement unless they timely exercise their opt-out right. (*Id.*)

### E. Release

The release is appropriately tailored to this case involving alleged violations of the TCPA and limited to the individuals called by Quality as a result of a Stompeez slippers online order, as

was made to the Plaintiff. There are 64,106 unique telephone numbers contained in the Class

List. In exchange for settlement benefits, Plaintiff and all subscribers and customary users of

those 64,106 telephone numbers (the Settlement Class Members) who do not timely opt out of

the Settlement will release Sempris and its present, former, and future predecessors, successors,

assigns, parents, subsidiaries—from any and all claims against the Released Parties, or any of

them, arising out of or relating to the act of promoting Sempris goods or services by Quality as a

result of the online purchase of Stompeez slippers, that were calls made to: (a) telephone

numbers that were listed on the National Do Not Call registry and/or (b) to telephone numbers

using a pre-recorded message.  (Agr. ¶¶ 1.24; § 3.). The co-defendant Quality is not participating

in the Settlement and Quality and its officers are not receiving a release.

## IV.  ARGUMENT

### A.     The Settlement Approval Process

Federal courts strongly favor and encourage settlements, particularly in class actions and

other complex matters, where the inherent costs, delays, and risks of continued litigation might

otherwise overwhelm any potential benefit the class could hope to obtain.  *Armstrong v. Bd. of

Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312–13 (7th Cir. 1980) (noting that "[i]n the

class action context in particular there is an overriding public interest in favor of settlement")

(citations, quotations, and internal marks omitted), *overruled on other grounds by Felzen v.

Andreas*, 134 F.3d 873 (7th Cir. 1998); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)

("Federal courts naturally favor the settlement of class action litigation."); *see also* 4 Herbert B.

Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg") § 11:41 (4th ed. 2002) (citing

cases).  The traditional means for handling claims like those at issue here — individual

litigation — would unduly tax the court system, require a massive expenditure of public and

private resources and, given the relatively small value of the claims of the individual Settlement

Class Members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner.

A court may approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A proposed class settlement is presumptively fair where it "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." Newberg § 11.41; *Am. Int'l Grp., Inc. v. ACE INA Holdings.*, Nos. 07-2898, 09-2026, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (quotation and internal citation omitted).

Approval of a class action settlement is a two-step process. *Armstrong*, 816 F.2d at 314. At the preliminary approval stage, the question for this Court is whether the settlement falls "within a range of possible approval" and therefore warrants dissemination of notice apprising class members of the proposed settlement. *Id.* If the Court preliminarily approves the class action settlement, it then proceeds to the second step in the review process – the fairness hearing. *Id.*; *Manual for Complex Litig.* § 21.633 (4th ed. 2004).

In assessing the fairness, reasonableness and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. *Isby*, 75 F.3d at 1199. The Court "should not substitute [its] own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315. To evaluate fairness at the preliminary approval stage, courts consider the following factors: (1) the strength of the case for plaintiff on the merits, balanced against the amount offered in settlement; (2) the complexity, length and expense of the litigation; (3) the presence of collusion in reaching a settlement; and (4) the stage of the

proceedings and the amount of discovery completed.  *Synfuel Techs., Inc.*, 463 F.3d at 653; *see also Armstrong*, 616 F.2d at 314; *Isby*, 75 F.3d at 1199.

As set forth in the following, the settlement here warrants preliminary approval so that persons in the Settlement Class can be notified of the settlement and provided an opportunity to voice approval or opposition.

**B.      The Settlement Merits Preliminary Approval**

1.      <u>The Proposed Settlement Provides Substantial Relief to the Settlement Class Particularly in Light of the Uncertainty of Prevailing on the Merits.</u>

a.      *Benefits to the Class*

"The most important factor relevant to the fairness of a class action settlement is the first one on the list:  the strength of the Plaintiff' case on the merits balanced against the amount offered in the settlement."  *Synfuel Techs., Inc.*, 463 F.3d at 653.  Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to Plaintiff."  *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

The Settlement Agreement requires Sempris to pay $2,150,000 into a fund out of which Settlement Class Members will receive a cash payment.  (Agr. ¶ 2.3.)  Although the precise amount of each Settlement Class Member's award cannot be determined until all claims have been submitted, Plaintiff estimates, based on similar TCPA class actions, awards of approximately $200 for each claimant after deductions for Settlement Administration Expenses, Court-approved attorneys' fees and costs, and any Court-approved incentive award.  (Burke Aff. ¶ 10.) Plaintiff acknowledges that the $2,150,000 Settlement Fund does not constitute the full measure of damages potentially available to Settlement Class Members, who theoretically could recover up to $500 in statutory damages for each violation of the TCPA if they were to prevail in

10

litigation, less fees and costs. *See* 47 U.S.C. § 227(c)(5) (permitting up to $500 in statutory damages for each TCPA violation). This fact alone, however, should not weigh against preliminary approval. "Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315.

Furthermore, the Settlement Class is receiving substantial non-monetary benefits through this Settlement Agreement. Sempris has agreed to assign the Plaintiff and the Settlement Class any rights to indemnity or subrogation against Quality Resources for claims arising out of the claims asserted by the Plaintiff in this action.

> b.    *The Strength of Plaintiff's Case*

Plaintiff continues to believe that his claims against Sempris have merit, and that he could make a compelling case if his claims were tried. Nevertheless, Plaintiff's claims would face a number of difficult challenges if the litigation were to continue.

Apart from the numerous affirmative defenses asserted in its Answer, Sempris has consistently argued in negotiations, and would in its impending opposition to Plaintiff's motion for class certification assert that class certification is not appropriate because individualized questions will predominate at trial, including questions relating to whether it was a class member, or a previous subscriber, as well as the fact that a class is difficult, if not impossible, to ascertain in this matter. These arguments are analogous to assertions of individualized issues of consent, which often are raised by defendants in TCPA class actions. "Courts are split on whether the issue of individualized consent renders a TCPA class uncertifiable on predominance

and ascertainability grounds, with the outcome depending on the specific facts of each case."

*Chapman v. First Index, Inc.*, No. 09-5555, 2014 WL 840565, at *2 (N.D. Ill. Mar. 4, 2014)

(citing cases). For example, in *Savanna Group, Inc. v. Trynex, Inc.*, No. 10-7995, 2013 WL

66181, at *3 (N.D. Ill. Jan. 4, 2013), the court granted class certification and rejected the

defendant's argument that questions of consent caused individual issues to predominate, noting

that the defendant had not offered evidence tending to show that any particular class member

consented to the faxes at issue. On the other hand, in *G.M. Sign, Inc. v. Brinks Mfg. Co.*, No. 09-

5528, 2011 WL 248511, at *8 (N.D. Ill. Jan. 25, 2011), the court declined to certify a class,

finding that the defendant offered evidence illustrating that consent could not be shown with

common proof. If Sempris were able to present convincing facts to support its position that

individualized issues predominate, there is a risk that the Court would decline to certify the class,

leaving only the named Plaintiff to pursue their individual claims.

In addition, at least some courts view awards of aggregate, statutory damages with

skepticism and reduce such awards — even after a plaintiff has prevailed on the merits — on due

process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011

WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum

statutory damages award for willful FACTA violations in this case — between $100 and $1,000

per violation — would not violate Defendant's due process rights …. Such an award, although

authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see*

*Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill.

Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th

Amendment does not impose upon Congress an obligation to make illegal behavior affordable,

particularly for multiple violations.").

12

Finally, Plaintiff faced the very real risk of failing to persuade a jury that Quality Resources, who placed the calls at issue, were agents of Sempris. Even if Plaintiff did prevail at trial, any judgment could be reversed on appeal. By contrast, the Settlement provides substantial relief to Settlement Class Members without delay and is within the range of reasonableness, particularly in light of the above risks that Settlement Class Members would face in litigation.

Finally, the Agreement was achieved despite significant risk of no recovery for class members. During this Supreme Court term, there were two cases that, if *either* resolved in the favor of the Defendant, could have eliminated or diminished TCPA class actions all together. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 2016 WL 228345 (U.S. 2016) and *Robins v Spokeo, Inc.,* 742 F.3d 409 (9th Cir. 2014) *cert. granted* 135 S. Ct. 1892 (Apr. 27, 2015).

### 2. Continued Litigation Is Likely to Be Complex, Lengthy, and Expensive.

Litigation would be lengthy and expensive if this action were to proceed. Although the Parties have nearly concluded discovery, extensive motion work, including finishing the briefing of motions for class certification and summary judgment, remain. The Parties also likely will need to retain experts to analyze the applicable call data. Realistically, it could be more than a year before the case would proceed to trial. The appeals process may further delay any judgment in favor of Settlement Class Members. The Settlement avoids these risks and provides immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

### 3. The Settlement Resulted from Extensive, Arm's-Length Negotiations and Is Not the Result of Collusion.

The requirement that a settlement be fair is designed to prevent collusion among the parties. *Mars Steel Corp. v. Cont'l Ill. Nat'l. Bank & Trust Co. of Chicago*, 834 F. 2d 677, 684

(7th Cir. 1987) (approving settlement upon a finding of no "hanky-panky" in negotiations). There is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations. Newberg, *supra*, § 11:42; *see also Am. Int'l Grp.*, 2012 WL 651727, at *10.

Here, the proposed settlement was negotiated through three mediation sessions over the course of eighteen months, and only effectuated after significant back-and-forth between the Parties. (Holderman Aff. ¶¶4-7.) Plaintiff's counsel are particularly experienced in the litigation of nationwide class action cases, particularly under the TCPA. (*See* Burke Aff. ¶¶ 1-9; Paronich Aff. ¶¶ 3-9; Broderick Aff. ¶¶ 3-9, McCue Aff. ¶¶ 3-9.) In negotiating this Settlement, putative Class Counsel had the benefit of years of experience with class actions in general and a familiarity with the facts of this case in particular. *Id.* An experienced mediator, the Honorable James Holderman (Ret.) of JAMS, participated actively throughout the negotiation process. (Burke Aff. ¶ 10, Holderman Aff. ¶ 4.) The fact that Plaintiff achieved an excellent result for the Settlement Class despite facing significant procedural and substantive hurdles is a testament to the non-collusive nature of the Settlement.

4. The Stage of the Proceedings and the Amount of Discovery Completed Supports Preliminary Approval.

The Parties have engaged in substantial, substantive discovery, permitting a thorough analysis of the factual and legal issues involved in this matter. (Burke Aff. ¶10) Settlement negotiations have been prolonged and hard-fought, spanning the course eighteen months and three mediation sessions. Before the mediation, the Parties provided Judge Holderman with extensive written analyses of the factual and legal issues involved with the case. (Holderman Aff. ¶ 5) Counsel's thorough legal and factual analyses—including based on substantial discovery and the use of a consulting expert—informed the Settlement.

14

### C.     Plaintiff's Requested Fees Are Reasonable.

Putative Class Counsel seek an award not to exceed one-third of the total settlement fund to compensate counsel for reasonable fees associated with this action (Agr. ¶ 8.1.) Additionally, counsel for the Plaintiff will be applying for reimbursement of the actual costs expended in litigating this matter. (*Id.*) The requested fee, which was negotiated only after the substantive terms of the Settlement Agreement were reached, is reasonable under the circumstances of this case. In the Seventh Circuit, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (citing cases).

Putative Class Counsel have achieved an excellent result for the Settlement Class.  The Settlement creates a non-reversionary Settlement Fund of $2,150,000, affording Settlement Class Members direct monetary relief.  Additionally, Sempris is providing the settlement class with substantial non-monetary relief as it has agreed to assign the Plaintiff and the Settlement Class any rights to indemnity or subrogation against Quality Resources for claims arising out of the claims asserted by the Plaintiff in this action. Although putative Class Counsel were confident in the ability to succeed at class certification and at trial, success was by no means guaranteed, especially considering Sempris's substantial opposition and the complexity of the issues involved.  Because putative Class Counsel agreed to prosecute this case on contingency with no guarantee of ever being paid, counsel faced substantial risk.  Finally, the fee is in line with those deemed reasonable in the Seventh Circuit. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) ("[A]ttorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel.").

Prior to both final approval and the objection deadline, putative Class Counsel will file a separate motion for an award of attorneys' fees and costs, addressing in greater detail the facts and law supporting their fee request in light of all of the relevant facts.

### D.     The Requested Incentive Award Is Reasonable.

Incentive awards for class representatives like the one requested here are appropriate. Such awards, which serve as premiums in addition to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits.  *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving incentive award of $25,000); *see also* Manual for Complex Litig. § 21.62, n. 971 (incentive awards may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery").  Such awards are generally proportional to the representative's losses or claims, and can range from several hundred dollars to many thousands of dollars.

Here, Plaintiff's requested incentive award of not more than $15,000 is appropriate. Unlike unnamed persons in the Settlement Class, who will enjoy the benefits of the Class Representative's efforts without taking any personal action, Plaintiff exposed themselves to Sempris's investigation, committed herself to all the rigors of litigation in the event the case did not settle, and subjected herself to all the obligations of a named party. Ms. Toney had to respond to discovery, provide documents and was subjected to an full day of deposition testimony.

### E.     The Proposed Class Notice Satisfies Due Process.

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement.  Fed. R. Civ. P. 23(e)(1); *see also* Manual for Complex Litig., *supra*, at § 21.312.  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent.*

16

*Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). According to the Manual for Complex

Litigation, § 21.312, a settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedures for making inquiries.

The proposed Notice, attached as Exhibits 2-3 to the Settlement Agreement, satisfies all of the

above criteria. The Notice is clear, straightforward, and provides persons in the Settlement Class

with enough information to evaluate whether to participate in the Settlement. The Notice

therefore satisfies the requirements of Rule 23. *See F.C.V., Inc. v. Sterling Nat'l. Bank*, 652 F.

Supp. 2d 928, 944 (N.D. Ill. 2009) (Rule 23(b)(3) class) (citing *Phillips Petroleum Co. v. Shutts*,

472 U.S. 797, 808 (1985)) (explaining that a settlement notice must provide settlement class

members with an opportunity to present their objections to the settlement).

 The Settlement Agreement provides for direct notice via U.S. Mail to all addresses for all

class members contained in call logs produced in discovery. To supplement this postcard notice,

the Settlement Agreement provides for the creation of a Settlement Website where Settlement

Class Members may obtain additional relevant information about the Settlement and submit

Claim Forms in response to the publication notice online, which itself will be further supported by an online media notice campaign. (Agr. ¶ 4.2(b)-(c).)

This Notice Plan satisfies due process, especially because Rule 23 does not require that each potential class member receive actual notice of the class action. A court must simply make certain that class members receive "the best practicable notice that is: 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *F.C.V., Inc.*, 652 F. Supp. 2d at 944 (Rule 23(b)(3) class) (quoting *Shutts*, 472 U.S. at 808).

All in, the Notice Plan constitutes the best notice practicable under the circumstances, provides due and sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23.

**F.      The Court Should Grant Class Certification for Settlement Purposes.**

For settlement purposes only, Plaintiff respectfully requests that the Court provisionally certify the Settlement Class defined as:

> All persons in the United States who, from January 3, 2009 through the date of preliminary approval, Quality Resources, Inc., called promoting Sempris' goods or services, either (a) on a cellular telephone or (b) more than once within any twelve-month period to phone numbers registered on the Do Not Call Registry, in connection with Stompeez purchases, which are evidenced in the Class List.

(Agr. ¶ 1.23.) As detailed below, the Settlement Class meets all of the applicable certification requirements.

Class certification is proper if Plaintiff satisfy the requirements of Rule 23(a) and one of the prongs of Rule 23(b). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Rule 23(a) requires Plaintiff to establish "'numerosity, commonality, typicality, and adequacy of representation.'" *Kleen Products LLC v. Int'l Paper*, 306 F.R.D. 585, 589 (N.D. Ill.

2015) (quoting *Messner*, 669 F.3d at 811). In this case, Plaintiff seek certification under Rule 23(b)(3), which "requires the court to find[ ] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014) (quoting the Rule) (internal quotation marks omitted).

The purpose of Rule 23 is to provide for the efficient administration of justice, as the class action mechanism allows large numbers of claims involving the same core issues to proceed in the aggregate, providing a path to relief where otherwise there would be none. "Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); Wright, *et al.*, 7A *Fed. Practice & Proc.* § 1751 (3d ed. 2010). In class actions such as this one, the alternative to certification is reaping the benefits of illegal calls with impunity. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015).

      1.    <u>The Rule 23(a) Factors Are Met.</u>

      a.    *The Class Is Sufficiently Numerous and Joinder Is Impracticable.*

A plaintiff does not need to "specify the exact number of persons in the class, … but cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity." *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) (internal citations omitted). The Seventh Circuit has implied that even a class of forty may be sufficient to warrant class certification. *See Pruitt v. City of Chicago*, 472 F.3d 925, 926 (7th Cir. 2006) (noting that "[s]ometimes 'even' 40 Plaintiff would be unmanageable"). Numerosity is determined prior to any consideration of whether a particular class member has a valid claim. *See Parko v. Shell Oil Co.*, 739 F.3d 1083, 1084 (7th Cir. 2014) ("How many (if any) of the class members have a valid claim is the issue to be determined *after* the class is

certified.") (emphasis in original). In this case, there are tens of thousands of unique telephone numbers that comprise the Class List. This more than establishes that "joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). Numerosity is satisfied.

b.     *The Settlement Class Shares Many Common Issues of Law and Fact.*

"One of the requirements for a class action in federal court is the existence of 'questions of law or fact common to the class.'" *Suchanek*, 764 F.3d at 755 (quoting Fed. R. Civ. P. 23(a)(2)). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Id.* at 756 (citing *Pella Corp. v. Saltzman,* 606 F.3d 391, 394 (7th Cir. 2010)). "The Supreme Court has explained that 'for purposes of Rule 23(a)(2) even a single common question will do.'" *Id.* at 755 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011)). Here, every class member's claims arise from the same common nucleus of operative facts:  Quality Resources called them to market Sempris's products following their purchase of Stompeez children slippers. Similarly, every class member has an interest in the same overarching question of law, *i.e.*, whether Sempris violated the TCPA by allowing its agents and their vendors to make these calls, and accepting the benefits of such calls. On these issues alone, a class is appropriate. Additionally common questions of law and fact include:

- Is Sempris vicariously or directly liable under the TCPA for telemarketing calls placed by Quality?
- Did Quality place the calls under Sempris's actual authority?
- Did Quality place the calls under Sempris's apparent authority?
- Do Sempris's vendors agreements shield it from liability for Quality's TCPA violations?
- If there were violations of the TCPA by Sempris, were those violations knowing or willful, such that treble damages are appropriate under 47 U.S.C. § 227(b)(3)?

These questions are dispositive, apply equally to all class members and, importantly, can be *answered* using common proof and uniform legal analysis. Further, the uniformity of the applicable law — the federal TCPA — distinguishes this case from putative nationwide class actions requiring application of multiple states' laws. The commonality requirement is therefore met. As the Seventh Circuit recently stated, "[c]lass certification is normal in litigation under § 227, because the main questions … are common to all recipients." *Turza*, 728 F.3d at 684.

c. *Plaintiff's Claims Are Typical of the Settlement Class.*

As with commonality, the threshold requirement for typicality is "not high." *See Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009). Typicality means that the plaintiff's claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of the other class members and ... [the] claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted). This component is usually satisfied where "defendants have engaged in standardized conduct towards members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. Ill. 1998). However, typicality does not require that the representative's claims be identical to every other member of the class. *See Oshana v. Coca-Cola Co.,* 472 F.3d 506, 514 (7th Cir. Ill. 2006) (noting that "factual variations may not defeat typicality").

Here, the Plaintiff satisfies the typicality requirement because their interests are sufficiently aligned with those of the class. Like all class members, the Plaintiff received automated telemarketing calls on her cellular telephone multiple times, which was on the National Do Not Call Registry. The Plaintiff is on the Class List obtained in discovery. She seeks the same relief as the class, and is not subject to unique defenses.

21

d. *Plaintiff and Her Counsel Are Adequate Representatives.*

"Rule 23(a)(4) requires that the named Plaintiff and class counsel 'will fairly and adequately protect the interests of the class.'" *Birchmeier*, 302 F.R.D. at 252 (quoting the Rule). In adequacy analysis, the Court considers "the adequacy of the named Plaintiff as representatives of the proposed class's myriad members, with their differing and separate interests." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). While the Supreme Court has noted that adequacy and typicality analysis "tend[ ] to merge," *Windsor*, 521 U.S. at 626 n. 20, courts have rejected proposed class representatives due to "conflicts of interest" or "serious credibility problems," *Birchmeier*, 302 F.R.D. at 252 (internal quotation marks and citations omitted).[7]

Here, the Plaintiff has no conflicting interests with class members. In fact, by investigating, documenting, filing, and prosecuting this action by providing discovery responses documents and a full-day deposition, the Plaintiff has demonstrated a desire and ability to protect class members' interests. There is nothing to suggest that the Plaintiff has any interest antagonistic to the vigorous pursuit of the class claims against the defendant. Rather, her interests are perfectly aligned with those of class members. In addition, putative Class Counsel are practitioners with substantial experience in consumer and class action litigation, including cases under the TCPA similar to this one. (Burke Aff. . ¶¶ 1-9; Broderick Aff. . ¶¶ 3-9; Paronich Aff. . ¶¶ 3-9; McCue Aff. . ¶¶ 3-11.) The requirements of Rule 23(a), therefore, are satisfied.

2. The Rule 23(b)(3) Factors Are Satisfied.

Rule 23(b)(3)'s predominance requirement tests whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S.

---

[7] Pursuant to the 2003 amendments to Rule 23, the qualifications of the Plaintiff' counsel are assessed pursuant to subsection (g), and therefore are addressed below.

591, 623 (1997)).  Predominance is satisfied so long as individual issues do not "overwhelm" common issues.  *Id.* (quoting *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013)).  Common issues predominate here because the central liability question— *i.e.*, whether Sempris caused calls to be made in violation of the TCPA—can be established through generalized evidence.  Predominance is "readily met" in certain consumer cases. *Windsor*, 521 U.S. at 625.  The touchstone for predominance analysis in the Seventh Circuit is efficiency. *Butler v. Sears, Roebuck & Co.,* 702 F.3d 359, 362 (7th Cir. 2012) ("*Butler I*"), *vac'd on other grounds* 133 S. Ct. 2768 (2013), *judgment reinstated*, 727 F.3d 796 (7th Cir. 2013) ("*Butler II*"), *cert. denied* 134 S. Ct. 1277 (2014).  "[T]he requirement of predominance is not satisfied if 'individual questions ... overwhelm questions common to the class.'" *Butler II,* 727 F.3d at 801 (quoting *Amgen Inc. v.  Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1196 (2013)).

Because the claims are being certified for purposes of settlement, there are no issues with manageability. *Windsor*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").  Additionally, resolution of hundreds of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication.  *See Butler*, 727 F.3d at 801 (noting that "the more claimants there are, the more likely a class action is to yield substantial economies in litigation") (quoting *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)).  Thus, certification for purposes of settlement is appropriate.

23

### G.      Scheduling a Final Approval Hearing Is Appropriate.

The last step in the settlement approval process is a final approval hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation. Proponents of the Settlement may explain the terms and conditions of the Settlement Agreement, and offer argument in support of final approval.  The Court will determine after the Final Approval Hearing whether the Settlement should be approved, and whether to enter a final order and judgment under Rule 23(e).  Plaintiff requests that the Court set a date for a hearing on final approval at the Court's convenience, but no earlier than 100 days after the preliminary approval order is entered, and schedule further settlement proceedings pursuant to the schedule set forth below:

| ACTION | DATE |
|---|---|
| Preliminary Approval Order Entered | At the Court's Discretion |
| Notice Deadline | Within 21 days following entry of Preliminary Approval Order |
| Class Counsel's Fee Motion Submitted | Within 14 days following entry of Preliminary Approval Order |
| Exclusion/Objection/Publication Claim Deadline | 60 days after Notice Deadline |
| Final Approval Brief and Response to Objections Due | At least 14 days prior to the Final Approval Hearing |
| Final Approval Hearing Date | No earlier than 100 days following entry of Preliminary Approval Order |
| Final Approval Order Entered | At the Court's Convenience |

## V.   CONCLUSION

The proposed class action Settlement is fair, reasonable, adequate, and well within the permissible range of possible judicial approval.  It should, therefore, be approved in all respects.

24

Respectfully submitted,

PLAINTIFF,
individually and on behalf of a class of all persons
and entities similarly situated

Dated: July 5, 2016      By:    _/s/ Alexander H. Burke_         
         Alexander H. Burke
         Email: aburke@burkelawllc.com
         Daniel J. Marovitch
         Email: dmarovitch@burkelawllc.com
         BURKE LAW OFFICES, LLC
         155 North Michigan Avenue, Suite 9020
         Chicago, Illinois 60601
         Telephone: (312) 729-5288
         Facsimile: (312) 729-5289

         Edward A. Broderick
         Email: ted@broderick-law.com
         Anthony I. Paronich
         Email: anthony@broderick-law.com
         BRODERICK & PARONICH, P.C.
         99 High St., Suite 304
         Boston, Massachusetts 02110
         Telephone: (617) 738-7080

         Matthew P. McCue
         Email: mmccue@massattorneys.net
         THE LAW OFFICE OF MATTHEW P. MCCUE
         1 South Avenue, Suite 3
         Natick, Massachusetts 01760
         Telephone: (508) 655-1415
         Facsimile: (508) 319-3077

         _Attorneys for Plaintiff and the Proposed Class_

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 5, 2016, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

 */s/ Alexander H. Burke*
Alexander H. Burke

26