1
2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

3       SARAH TONEY,                        )    No. 13 C 42
                                           )
4                          Plaintiff,      )    Chicago, Illinois
                                           )    July 12, 2016
5                                          )    9:20 o'clock a.m.
        -vs-                               )
6                                          )
                                           )
7       QUALITY RESOURCES, INC., et        )
        al,                                )
8                          Defendants.     )

9                   TRANSCRIPT OF PROCEEDINGS - MOTION
                 BEFORE THE HONORABLE MILTON I. SHADUR
10
        APPEARANCES:
11      For the Plaintiff:        BURKE LAW OFFICES
                                  BY:  MR. ALEXANDER H. BURKE
12                                155 North Michigan Avenue
                                  Suite 9020
13                                Chicago, Illinois 60601

14      For Defendant            GREENSPOON MARDER, P.A.
        Quality Resources:       BY:  MR. JEFFREY BACKMAN
15                               200 East Broward Boulevard
                                 Suite 1800
16                               Fort Lauderdale, Florida 33301
                                             and
17                               TABET DiVITO ROTHSTEIN
                                 BY:  MR. TIMOTHY A. HUDSON
18                               209 South LaSalle Street
                                 7th Floor
19                               Chicago, Illinois 60604

20      For Defendant            JENNER & BLOCK LLP
        Sempris, LLC:            BY:  MR. DAVID E. JIMINEZ-EKMAN
21                               353 North Clark Street
                                 Chicago, Illinois 60654
22

23      Court Reporter:          ROSEMARY SCARPELLI
                                 219 South Dearborn Street
24                               Room 2304A
                                 Chicago, Illinois  60604
25                               (312) 435-5815

1      THE CLERK:  13 C 42, Toney versus Quality

2  Resources.

3      THE COURT:  Yes.

4      MR. BURKE:  Good morning, Alex Burke for plaintiff.

5      MR. BACKMAN:  Good morning, your Honor, Jeffrey

6  Backman for Quality Resources.

7      MR. HUDSON:  Good morning, your Honor, Tim Hudson

8  for Quality Resources.

9      MR. JIMENEZ-EKMAN:  Good morning, your Honor, David

10  Jiminez-Ekman of Jenner & Block on behalf of defendant

11  Sempris.

12      THE COURT:  Good morning.

13      MR. JIMENEZ-EKMAN:  Good morning, Judge.

14      THE COURT:  Well, let me start with something I

15  don't think anybody is objecting to, and that is Toney's

16  motion to go over 15 pages that they are filing.

17      MR. HUDSON:  I would like to be heard on that, your

18  Honor.

19      THE COURT:  No, actually your motion should be to

20  tell me which 15 pages to read.  So that one I am granting.

21      Now I have got a couple things to say about the

22  developments that I think are important in light of the

23  motion that I got from Quality Resources that may impact on

24  the situation with Sempris.  So why don't you all sit down.

25  Let me talk about those and then I will hear from you.

1         The first one is that as you know from Quality
2    Resources' motion they are essentially asserting -- because
3    they are basically relying on a consent aspect of Miss
4    Toney's involvement so as to knock her out in terms of the
5    ability to bring this action.  What that does, it seems to
6    me, is to create a potential time bomb in the sense that if I
7    grant the motion on Toney's behalf and Sempris' behalf for
8    the preliminary approval order, the one thing I -- that I
9    don't think anybody would like to see happen is to have a
10   potential determination lurking there that says that that
11   gets undercut because of a problem that is involved as to
12   Miss Toney but not necessarily as to the class.

13        So the first thing that struck me was that I
14   thought that plaintiffs would be well served and all of us
15   would be better served by obtaining another named plaintiff
16   as well.  I am not suggesting knocking out Miss Toney because
17   there has been no adjudication on that score.  The issue has
18   been raised, and I think understandably, by Quality
19   Resources.  But I don't think that the Court at this point is
20   without jurisdiction because an adverse determination would
21   have to be made about Miss Toney's situation in order to
22   create a problem on that as contrasted with an incipient
23   problem.

24        So it seems to me that the first order of business
25   ought to be to have some added named plaintiff identified,

1    which then I think permits the proposed settlement to be

2    going forward on the basis of the preliminary approval order.

3              So before I go farther, let me hear from everybody

4    on that, and I include not only plaintiff and Sempris but

5    also Quality Resources to see whether there is any difficulty

6    with that.

7              MR. BURKE:  Judge, earlier in the case Quality

8    Resources filed a motion to dismiss based upon consent and

9    submitted evidence --

10             THE COURT:  This was when Judge Grady had it?

11             MR. BURKE:  Judge St. Eve.

12             THE COURT:  Oh, Judge St. Eve, No. 2.  Okay.

13             MR. BURKE:  No. 2, Judge St. Eve had it, and she

14   ruled in the plaintiffs' favor on the issue of consent.  And

15   there is a memorandum opinion and order in the file holding

16   this.

17             THE COURT:  Is that the one that is 75 F.3d --

18   Federal Supp. 3d -- or I don't know --

19             MR. BURKE:  Yeah, it may be.

20             THE COURT:  It antedated my involvement of course,

21   so --

22             MR. BURKE:  It --

23             THE COURT:  But I saw a reference to one that was a

24   2014 decision, and I think it was 75 F.3d -- Federal Supp.

25   3d, rather.

1    MR. BURKE:  That sounds right.  I think she

2    published it, your Honor.

3    THE COURT:  Yes.  Okay.  Well, that may be for

4    present purposes law of the case, but law of the case at the

5    District Court level is not necessarily ultimately

6    determinative.  As a matter of fact, that reinforces the

7    point that I made at the beginning, and that is that the

8    advancement by Quality Resources of the issue in its present

9    form does not deprive the Court of jurisdiction.  There has

10   already been a judicial determination, from what you tell me,

11   on that subject.

12   But, again, that does not alter the point that I am

13   making, and that is we want to preserve the integrity of

14   settlement while at the same time giving Quality Resources

15   the ability to make the challenges that it is making.  So is

16   there any reason you can't do that?

17   MR. BURKE:  Find another plaintiff?

18   THE COURT:  Yes.

19   MR. BURKE:  I don't see any reason why we --

20   THE COURT:  And do it swiftly I think --

21   MR. BURKE:  Yes.

22   THE COURT:  -- so that you can then go ahead with

23   the -- with the proposed preliminary approval.

24   MR. BURKE:  And, Judge, we would -- we would use

25   the discovery from the case to assist us in finding a new

1    plaintiff.

2              THE COURT:  Yes.  Okay?

3              All right.  What is Sempris --

4              MR. JIMENEZ-EKMAN:  Judge, David Jiminez-Ekman on

5    behalf of Sempris.  We have less of a dog in this particular

6    fight right now, so we certainly have no objection to what

7    your Honor is suggesting.  However, I -- maybe I am missed

8    something here and maybe Mr. Burke can tell me -- but the

9    consent issue in the case I don't think is going to be

10   different from class member to class member.  I think the

11   consent issue that was asserted had to do --

12             THE COURT:  I am not ruling on it.

13             MR. JIMENEZ-EKMAN:  I understand, Judge.  What I am

14   -- what I am -- what I am suggesting is I don't think that

15   getting a second named plaintiff is going to affect it one

16   way or the other.  Either consent was valid or it wasn't.

17             THE COURT:  Wait just -- wait just a minute.

18             MR. JIMENEZ-EKMAN:  So I --

19             THE COURT:  Wait just a minute.

20             MR. JIMENEZ-EKMAN:  Yes, your Honor.

21             THE COURT:  When we deal with representatives in a

22   class action, we deal with several considerations, as we

23   know.  One of them is typicality.  And what has been advanced

24   by Quality Resources in part challenges the typicality of

25   Miss Toney in terms of being a class representative.  I am

1    not ruling on it.  But it seems to me that it would be

2    shortsighted to ignore the possibility that the -- that the

3    best-intentioned resolution on the part of the plaintiffs'

4    class and one defendant could be defeated by having that

5    sitting there as a -- I have used the term in other contexts

6    recently, the ticking time bomb.

7            You know, it is -- and the way I usually refer to

8    it is somebody sticks something in an affirmative defense

9    that really should be dealt with up front to get it out of

10   the way.  And I say, "Come on, we don't want to have a

11   potential affirmative defense that can unravel the whole

12   works lurking there.  Let's get at it."

13           And all I am saying is that I think the designation

14   of an added named plaintiff is the way that strikes me as the

15   best bet for avoiding that kind of problem.

16           MR. JIMENEZ-EKMAN:  I --

17           THE COURT:  You are interested in resolving this

18   settlement because you people came to that result as a result

19   of the good efforts of my former colleague here, Jim

20   Holderman, who worked the thing out for all of you, right?

21           MR. JIMENEZ-EKMAN:  We are -- absolutely, Judge.  I

22   mean we have entered into a settlement.

23           THE COURT:  Yes.

24           MR. JIMENEZ-EKMAN:  We would like to consummate the

25   settlement.

1    We also -- the only downside to what the Court

2  suggests is some delay.  And all I am --

3    THE COURT:  No, there is no delay.  I look to you

4  people to get -- to do that immediately.  What delay?

5    MR. BURKE:  I mean we would work immediately to

6  find someone new.  I think that what Mr. Jiminez --

7    THE COURT:  It is not somebody new.  It is somebody

8  added.

9    MR. BURKE:  Right, yes.

10    THE COURT:  Because I am not suggesting that Miss

11  Toney is knocked out of the box but rather that -- and it is

12  often the case, as all of us know, that when class actions

13  are brought, there may be more than one named plaintiff along

14  with it.  It is perfectly standard stuff.

15    MR. BURKE:  Certainly, your Honor.  The -- I think

16  the point that counsel was trying to make is that unlike in

17  some cases in this case the consent argument for the named

18  plaintiff, for Miss Toney, is the same argument --

19    THE COURT:  I hear that.

20    MR. BURKE:  -- for the rest of the class.

21    THE COURT:  But again that is not -- that is not

22  fully responsive to my point because Judge St. Eve acts, as I

23  do, at a district court level.

24    MR. BURKE:  Yes.

25    THE COURT:  And so the old notions that apply to

1  law of the case which are operative when the Court of Appeals

2  has spoken, and now the question is, what does the district

3  court do, that doesn't apply.  It just doesn't.  So I am

4  really trying to save the potential of a problem.

5           MR. BURKE:  I hadn't considered this, so we are

6  sort --

7           THE COURT:  I know you hadn't.

8           MR. BURKE:  But -- so what we have is an alleged

9  principal-agent relationship.  And the principal is trying to

10  settle the vicarious liability for the actions of the alleged

11  agent.

12          The claims of the named plaintiff as to both the

13  principal and the agent rise and fall on the same facts as

14  Miss Toney, and the defenses of the principal and agent rise

15  and fall on the same facts as Miss Toney.  So as I --

16          THE COURT:  I don't think that -- that is not true.

17  That is not true.  They have -- they have made a

18  particularized contention as to Miss Toney which is not

19  necessarily at all shared by other people who have had the

20  same communications but may not have had the same kind of and

21  most likely have not had precisely the same kind of history

22  and experiences that are -- that are outlined by the Quality

23  Resources.

24          Now don't misunderstand, I am not buying their --

25  into their argument.  I am simply -- I have read it and I

1    recognize what it is for what it is for.  What I am saying is

2    that that taint from their perspective does not by definition

3    apply to everybody in the putative class.

4              Yes?

5              MR. JIMENEZ-EKMAN:  Judge -- and I think the

6    Quality Resources' motion does discuss the issue of consent,

7    but I think the bigger issue is the injury in fact and

8    standing point from the Spokeo case.  And as it relates to

9    that I think what the Court is saying makes eminent sense

10   because you may have different class members in different

11   situations.

12             THE COURT:  Right.

13             MR. JIMENEZ-EKMAN:  I -- we were just addressing

14   the issue of consent which we -- at least as I understand it,

15   would essentially be the same across class members.

16             THE COURT:  Yes.  Spokeo has been overread a lot,

17   not unexpectedly.  You know, it is -- and so again I have

18   dealt with Spokeo on a couple -- in a couple of different

19   ways in different cases because it doesn't -- it is not one

20   size fits all.  And that is really all that I am trying to --

21   trying to help you with the resolution that will permit you

22   to go ahead with the settlement and at the same time leaves

23   Quality Resources to do battle with the class as it is

24   seeking to do by its motion.

25             Okay?  So let me go on to the next item, if I may,

1   and that is in terms of the preliminary approval order it

2   refers at -- in Paragraph 2 at -- or, no, I guess it may be

3   Page 2 -- let me see -- at Line 5 as to a dismissal of this

4   action, but I think for a completeness it should have said

5   dismissal of this action as against defendant Sempris.

6           I don't think that that is fatal because -- and I

7   think in the next paragraph it is made plain that Sempris is

8   what is being talked about, although it is inartful to talk

9   about dismissal of this action, which is a unitary concept

10  when Quality Resources is still very active in it.  So you

11  may want to modify that.

12          The other thing is that -- and this is common to

13  the -- both to the preliminary approval order and to the

14  notice to class members, which is Exhibit 2 I think to the

15  settlement agreement.  I have always disfavored the notion of

16  using a postmark date as the determinant for opt-ins, opt

17  outs.  Why?  Because using a postmark date you see doesn't

18  have -- it permits the possibility that somebody comes out of

19  the woodwork later on and says, "Wait a minute.  I sent

20  something.  Whatever happened to me?"

21          You know, the Post Office has proved one thing over

22  the years, it is not infallible.  And so what I typically

23  have required in all class actions in all situations in which

24  opt-ins or opt outs are necessary is to include a provision

25  that the controlling thing is the matter of receipt rather

1    than transmittal and make it plain that the party who is

2    transmitting has the responsibility for making sure that the

3    -- that the receipt comes in in time.  That may expand the

4    time frames a little that you want to have, but I think it is

5    important and useful.

6              So take a look at that aspect of it.  It occurs, as

7    I say, both in the notice to the -- to the class members both

8    in Paragraph 2 and Paragraph 3 of that notice, and it also

9    occurs in the -- in the preliminary approval order in the

10   opt-out provision.

11             By the way, in the opt -- in the preliminary

12   approval order notice that in Paragraph 5 you talk about

13   filing, which is quite proper because that is an

14   ascertainable thing.  We know that it has happened because

15   filing is something that is -- comes in to the Court.  Not

16   true if you deal with the postmark date of transmittal to

17   parties.  So that I wanted to mention to you.

18             Also I just wanted to mention something in

19   connection with the potential fee award.  The case that you

20   cite for the not less than a third is kind of a weak reed on

21   which to lean, I must tell you, because it says that in an

22   odd context.  But -- and I am not -- and I should add, by the

23   way, that I am among the judges who is troubled by the

24   conversion of the Lodestar from what used to be simply looked

25   at as kind of a check against services to somehow having a

1    dominant position.

2              But the case law says that we have got to look at

3    Lodestar.  And the only thing I wanted to say about that is

4    that as and when we get to that, you have to make sure that

5    you separate out time that is attributable to the ongoing

6    dispute with Quality Resources just in terms of presenting

7    what the Lodestar time has been.  Again I will try to deal

8    with the thing in terms of a reasonable award, all things

9    considered.  But you have got to be careful when you are

10   dealing with Lodestar.

11             This is the unusual situation, unlike the thing

12   that we often encounter in which somebody has asserted four

13   different theories.  They are successful on three.  You don't

14   discount their application on the basis that they were not

15   successful on all of them.  This is really quite different

16   from that.

17             Anyway, so unless there is anything that you want

18   to add or talk about in connection with the -- with the

19   proposed settlement with Sempris, I would like to go on to

20   Quality Resources' motion in that regard.  Okay?  Anything

21   else on -- as between plaintiffs and Sempris?  No?

22             MR. JIMENEZ-EKMAN:  No, your Honor.

23             MR. BURKE:  No.  Thank you.

24             THE COURT:  Okay.  So let's talk now about the just

25   received -- the Quality Resources' motion to dismiss the

1    third-amended complaint.  And they have raised it as a

2    12(b)(1) point relying -- surprise -- on Spokeo.  And so my

3    question is, what is -- what do you want in terms of time to

4    respond to the motion to dismiss?

5            MR. BURKE:  Three weeks, Judge.

6            THE COURT:  Three weeks.  Okay.  That would be

7    August 2nd I think.  Take a look.  Yep.  So response is

8    August 2nd.  And I gave up a long time ago automatically

9    ordering a one-two-three sequence because so often the

10   parties, especially when they are well-represented, have met

11   head on in the motion and response.  What I do instead is to

12   set a next status date that is essentially a contingent one,

13   that is, if the -- if Quality Resources thinks that a reply

14   is needed, they will let us know at that next status date.

15   If I think that a reply is needed because you haven't met

16   fully head on, I may ask for that.  But otherwise the status

17   date would simply go away.

18          So for that purpose if we get something in hand on

19   the 2nd, I can give you Friday August 5th or Monday August

20   8th at 9:00 o'clock simply for a status that, as I say, may

21   vanish.

22           MR. BACKMAN:  I am out of the country that entire

23   week, your Honor.

24           THE COURT:  Which?

25           MR. BACKMAN:  From the 5th through the following

15

1  Saturday.

2            THE COURT:  The 5th through the 12th?

3            MR. BACKMAN:  Yes.  So that Monday on my return I

4  can be here.

5            THE COURT:  Well, let me ask you, the only purpose

6  of that again is to -- when are you actually leaving?

7            MR. BACKMAN:  I leave the evening of the 4th, your

8  Honor.

9            THE COURT:  So you will have seen the thing that

10  was filed on the 2nd?

11            MR. BACKMAN:  Correct.

12            THE COURT:  Is there any reason that you can't

13  communicate internally?

14            MR. BACKMAN:  Not at all.  Mr. Hudson can appear

15  for purposes of deciding whether or not a reply is necessary.

16  That is fine.

17            THE COURT:  So which day are we talking about?

18            MR. HUDSON:  Friday the 5th, your Honor.

19            THE COURT:  Friday the 12th you said?

20            MR. HUDSON:  Friday the 5th, your Honor.  I believe

21  that was the first date you mentioned.

22            THE COURT:  Okay.  As long as I get it in physical

23  form so I can read it over, it is fine with me.  So status

24  Friday August 5th at 9:00 o'clock.  And again that status may

25  go away.  What you will do if you don't think a reply is

1    called for is you will let opposing counsel know and you will

2    let Carol know, and we will just vacate it.  Okay?

3                   MR. HUDSON:  Okay.

4                   THE COURT:  Anything else that we need?

5                   When can I get the revised form that so I can enter

6    the preliminary approval thing?

7                   MR. BURKE:  Well, we can certainly do the revised

8    papers in short order.

9                   THE COURT:  Yeah.

10                  MR. BURKE:  Today is Wednesday I think --

11                  THE COURT:  Tuesday.

12                  MR. BURKE:  Tuesday.  I can do it by Friday.

13                  THE COURT:  That is all right.  I started at 8:15

14   this morning and had two TRO's.  So I -- half a day is gone.

15   I recognize that, yeah.

16                  MR. BURKE:  By Friday perhaps we can get the

17   revised forms in.

18                  As to finding an additional plaintiff --

19                  THE COURT:  Yes.

20                  MR. BURKE:  -- I think that it would be helpful to

21   use the discovery that we have received so far.

22                  THE COURT:  Yes.

23                  MR. BURKE:  There is additional information that we

24   would seek from Quality Resources or pursuant to subpoena to

25   infomercials, which is the names and addresses of the class

1  members.  Up to this point we have had the phone numbers of

2  class members which we have used --

3          THE COURT:  Yes.

4          MR. BURKE:  -- to anonymously --

5          THE COURT:  Yes.

6          MR. BURKE:  -- negotiate the deal.  But at this

7  point going into notice for the settlement and as well as

8  reaching out to potential additional plaintiffs, I think that

9  it is appropriate to get the names and addresses.

10         THE COURT:  Any problem -- and that -- your source

11  for that is Quality Resources, right?

12         MR. BURKE:  It is either Quality Resources or a

13  former defendant infomercial -- I think it is called

14  infomercials.com.  The case arose from Miss Toney ordering

15  children's slippers --

16         THE COURT:  Yeah, I know.  I know.

17         MR. BURKE:  -- through infomercials which was -- it

18  had a relationship with Quality Resources.  And Quality

19  Resources brokered this up sell with Sempris that gave rise

20  to the phone calls afterwards.

21         THE COURT:  I know that.  But what -- but you are

22  going to have to get some further information --

23         MR. BURKE:  Yes.

24         THE COURT:  -- in order to get somebody.  And

25  Quality Resources is here.  Is there any reason that counsel

```
 1    for those two can't get together and get identity of a couple
 2    of potential parties so that you can then in turn communicate
 3    swiftly with the parties and find out whether somebody is
 4    prepared to simply to join in, explaining that they are not
 5    exposed to any added prospect of adverse result as a result
 6    of that?
 7              So, you know, I leave it to you to practice law.
 8              MR. BURKE:  Yes, we think that any reaching out
 9    would have to comply with the ethical rules.
10              THE COURT:  Yes.
11              MR. BURKE:  So I think we would probably send
12    letters, would be the --
13              THE COURT:  Tell them that it is at the Court's
14    directive, you know.
15              MR. BURKE:  Yes.
16              THE COURT:  And so you are not -- you are not
17    really exposed on ethical considerations or otherwise.  Okay?
18              MR. BACKMAN:  Your --
19              THE COURT:  I would think that that should not be a
20    problem.
21              MR. BACKMAN:  Your Honor, may I be heard briefly on
22    this particular issue and the one that was discussed at the
23    outset on behalf of Quality Resources?
24              THE COURT:  What do you want to discuss now?
25              MR. BACKMAN:  I am sorry?
```

1          THE COURT:  What do you want to discuss?

2          MR. BACKMAN:  I want to discuss this particular

3    issue.  I haven't had -- I haven't had a chance to be heard

4    yet and I would just like to address some of the issues that

5    we see from Quality Resources' perspective.

6          THE COURT:  Go ahead.

7          MR. BACKMAN:  Okay.  First, there is a protective

8    order in place and there are also ethical rules with respect

9    to plaintiffs reaching out to -- plaintiffs' counsel reaching

10   out to putative class members, and so we would perhaps take

11   issue with that in particular here where you have a case that

12   is three years old, you have a named plaintiff that the

13   plaintiffs' lawyers have been using as a class representative

14   for the past three years.  We have taken her deposition, all

15   of this discovery.

16         THE COURT:  Wait a minute.  Are you suggesting that

17   the identification -- the attempted identification at the

18   instance of the Court poses an ethical problem for counsel?

19         MR. BACKMAN:  I am suggest ing that plaintiffs'

20   counsel reaching out to putative class members --

21         THE COURT:  But I am telling him -- what do you

22   want to do?  Do you want to have the Court do that, is why

23   the ethical --

24         MR. BACKMAN:  No, your Honor.

25         THE COURT:  Are you trying to throw a roadblock

1    into something that is -- that basically has as its inception

2    a concern about preserving the rights of Quality Resources in

3    order to pursue its position without impeding the situation

4    on the other side?

5         MR. BACKMAN:  All I am suggesting and saying is

6    that after three years of litigation and all the discovery

7    that has taken place, the issues with respect to Miss Toney

8    exist and we uncovered them during the course of that

9    discovery.  And now there is a clear -- what we consider to

10   be a clear 12(b)(1) issue potentially affecting the standing

11   of the named plaintiff which could affect the Court's

12   subjected matter jurisdiction as well as the rights of

13   putative class members.  I understand that completely.

14        What we are saying is it is not as simple perhaps

15   as the plaintiffs just going through Quality's records,

16   calling up John Smith.

17        THE COURT:  I didn't suggest they did that.  What I

18   am suggesting is that in good faith, in good conscience,

19   Quality Resources can be cooperative in providing

20   information.  I am not talking about their hunting through

21   your records or anything else.  It seems to me that you have

22   a responsibility to the system, you know.

23        The fact is that the other defendant has come to a

24   -- has come to a resolution with the plaintiffs.  You have

25   got to respect that.  I don't think that you can in good

1    conscience take a position that will result in disrupting a

2    settlement that has been arrived at with the assistance of an

3    experienced federal judge and that is perfectly satisfactory

4    to them.

5           You do that -- it seems to me you do that at

6    Quality Resources' peril.  If you do something that

7    essentially blocks this thing, as far as I am concerned you

8    have created a real potential for the imposition of -- on

9    Quality Resources of the consequences of blocking this

10   agreed-upon settlement.  You don't want to do that.

11          What you want to do is to preserve your client's

12   rights.  I am perfectly interested in doing that.  I will do

13   anything that is necessary for that purpose.

14          But the idea of being dog in the manger and

15   essentially saying, well, there is this problem and that

16   problem, that doesn't serve any useful purpose.  None.

17          What does it do?  Nobody is asking that you give up

18   your records or anything else.  What I am simply asking is

19   that you behave like lawyers and confer with the counsel on

20   the other side and cooperate in terms of providing

21   information that would make it readily possible for them to

22   communicate with somebody, again court directive, to find out

23   whether they would be prepared, as contrasted with being a

24   member of the class, to be named an added named plaintiff

25   which involves no further risk on their part that I can see

1  or anything else.

2       So I am puzzled by what you have just been raising.

3       MR. BACKMAN:  And perhaps I didn't articulate it in

4  a way that addresses what it is I am trying to actually say.

5  We are simply noting that Miss Toney may not have standing.

6  She may not be an appropriate class representative.

7       THE COURT:  Yes.  And I am preserving your right to

8  assert that.

9       MR. BACKMAN:  Could --

10      THE COURT:  Okay?

11      MR. BACKMAN:  I --

12      THE COURT:  Nobody is blocking that contention on

13  your part.  You have advanced it.  I expect that I am going

14  to have to deal with it in order to deal with Quality's

15  motion for dismissal.  But it is a dismissal of this action

16  as to it.  It is not dismissal of this action as such.  This

17  has been no determination made of whether Spokeo does or not

18  override the decision that was made by one of my colleagues

19  on this consent issue.  And so I am trying to preserve your

20  interest.

21      And the idea of saying, well, there is this

22  objection or that objection troubles me because I think you

23  have lost sight of the whole idea, which is that this action

24  is a totality.  There are two defendants, one of which has

25  agreed to settle.  The other with its own interests at heart,

1    and understandably, has chosen not to.

2             But I think that the idea of saying that that is

3    coupled with the -- your challenge to counsel's right on the

4    theory that they are going to go rummaging through your

5    records, no such thing.  Understood?

6             MR. BACKMAN:  Yes, your Honor.  I didn't think I

7    said that.  I just -- how our motion ultimately impacts their

8    preliminary approval of a class action was not -- is sort of

9    an ancillary issue, if you will, under the circumstances.  We

10   simply want to --

11            THE COURT:  But it is one that the Court has to be

12   concerned with, whether you are or not.

13            MR. BACKMAN:  And I understand that completely.

14   Are they going to -- are the plaintiffs going to have to file

15   a motion to add a party before that actually gets resolved?

16            THE COURT:  I have -- I have basically -- I don't

17   know whether you want to call it in terms of a motion.  I

18   have basically authorized the addition of a named party,

19   appropriate named party as an added plaintiff because of the

20   fact that doing so would avoid the problem of putting at

21   risk, at peril, the settlement as between the plaintiff class

22   -- class and Sempris.

23            MR. BACKMAN:  Understood.  Thank you, your Honor.

24            THE COURT:  Okay?

25            So I will look to you people to cooperate on that,

1  right?

2          MR. BACKMAN:  Yes, your Honor.

3          THE COURT:  Thank you.

4          That is it.

5          MR. HUDSON:  Your Honor, have a nice day.

6          MR. BACKMAN:  Thank you.

7          MR. BURKE:  Thank you.

8          MR. JIMENEZ-EKMAN:  Thank you, your Honor.

9       (Which were all the proceedings heard.)

10                       CERTIFICATE

11      I certify that the foregoing is a correct transcript

12  from the record of proceedings in the above-entitled matter.

13

14  s/Rosemary Scarpelli/        Date:  July 12, 2016

15

16

17

18

19

20

21

22

23

24

25