# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SARAH TONEY, on behalf of herself and others similarly situated, | ) ) | |
|     Plaintiff, | ) ) | Case No. 1:13-cv-42 |
| v. | ) ) | Hon. Judge Milton I. Shadur |
| QUALITY RESOURCES, INC. and SEMPRIS LLC D/B/A BUDGET SAVERS, | ) ) ) ) | |
|     Defendants. | ) | |

**PLAINTIFF'S MOTION FOR AND MEMORANDUM IN SUPPORT OF
AWARD OF ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD
<u>WITH RESPECT TO CLASS ACTION SETTLEMENT WITH SEMPRIS, LLC</u>**

## TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ................................................................... 1

II.    BACKGROUND AND SETTLEMENT ........................................... 2

III.   LEGAL STANDARD FOR ATTORNEY'S FEE DECISIONS ...................................... 7

IV.   ARGUMENT ........................................................................ 7

     A.      The Court Should Calculate Fees as a "Percentage of the Fund." ......................... 7

     B.      Counsel's Request Is Within the "Market Rate." ................................. 10

         1.      The Requested Fee Comports with the Contracts Between Plaintiff and Counsel. .............................................................. 11

         2.      The Requested Fee Reflects the Fees Awarded in Other Settlements. ................................................................ 12

             a.      Pre-Pearson Percentage of the Fund Settlements......................... 12

             b.      Post-Pearson: The Pearson Presumption Did Not Alter the Market Rate for Fees. ...................................................... 14

         3.      Other Factors Support the Requested Fee. ................................ 15

             a.      Risk of Nonpayment ..................................................... 15

             b.      Quality of Performance and Work Invested ................................ 20

             c.      Stakes of the Case ....................................................... 21

     C.      The Incentive Award to the Class Representative Should Be Approved. ........... 22

V.      CONCLUSION ....................................................................... 23

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Lockheed Martin Corp.*,
No. 06-701, 2015 WL 4398475 (N.D. Ill. July 17, 2015) ......................................................14

*Allen v. JPMorgan Chase Bank, NA*,
No. 13-8285 (N.D. Ill. Oct. 21, 2015)....................................................................................14

*Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*,
743 F.3d 243 (7th Cir. 2014) ....................................................................................................7

*In re Ampicillin Antitrust Litig.*,
526 F. Supp. 494 (D.D.C. 1981) .............................................................................................13

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
792 F. Supp. 2d 1028 (N.D. Ill. 2011) ..............................................................................18, 19

*Balschmiter v. TD Auto Fin. LLC*,
303 F.R.D. 508 (E.D. Wis. 2014) ...........................................................................................17

*In re Bankcorp. Litig.*,
291 F.3d 1035 (8th Cir. 2002) .................................................................................................13

*Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*,
480 F. Supp. 1195 (S.D.N.Y. 1979).........................................................................................13

*Benzion v. Vivint, Inc.*,
No. 12-61826 (S.D. Fla. Feb. 23, 2015) ..................................................................................23

*Bickel v. Sheriff of Whitley Cnty*,
No. 08-102, 2015 WL 1402018 (N.D. Ind. Mar. 26, 2015).....................................................14

*Birchmeier v. Caribbean Cruise Line, Inc.*,
302 F.R.D. 240 (N.D. Ill. 2014)...............................................................................................17

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)...................................................................................................................7

*Brey Corp. v. LQ Mgmt. LLC*,
2014 U.S. Dist. LEXIS 11223 (D. Md., Jan. 29, 2014)...........................................................19

*Campbell-Ewald Co. v. Gomez*,
136 S. Ct. 663 (2016).........................................................................................................4, 18

*In re Capital One*,
80 F. Supp. 3d 781 (N.D. Ill. 2015) .................................................................8, 14, 20

*CE Design Ltd. v. CV's Crab House North, Inc.*,
No. 07-5456 (N.D. Ill. Oct. 27, 2011).......................................................................12

*CE Design, Ltd. v. Exterior Sys., Inc.*,
No. 07-66 (N.D. Ill. Dec. 6, 2007) ...........................................................................12

*Charvat v. AEP Energy, Inc.*,
No. 14-cv-03121, Dkt. No. 44 (N.D. Ill. Nov. 20, 2015) ........................................14

*City of Greenville v. Syngenta Corp Prot., Inc.*,
904 F. Supp. 2d 902 (S.D. Ill. 2012)........................................................................13

*In re Combustion, Inc.*,
968 F. Supp. 1116 (W.D. La. 1997).........................................................................13

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ......................................................................................9

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) ..................................................................................22

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
No. 11-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) ......................................8

*Cummings v. Sallie Mae*,
No. 12-9984 (N.D. Ill. May 30, 2014) ......................................................................12

*In re Dairy Farmers of Am., Inc.*,
MDL No. 2031, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015)....................................15

*Desai v. ADT Sec. Servs., Inc.*,
No. 11-01925 (N.D. Ill. June 21, 2013) ....................................................................23

*Desai v. ADT Sec. Servs., Inc.*,
No. 11-1925 (N.D. Ill. June 21, 2013) ......................................................................12

*Donaca v. Dish Network, LLC.*,
303 F.R.D. 390 (D. Colo. 2014) ...............................................................................19

*Fitzhenry v. ADT Corp.*,
2014 U.S. Dist. LEXIS 166243 (S.D. Fla. Nov. 3, 2014)........................................19

*Florin v. Nationsbank of Ga., N.A.*,
34 F.3d 560 (7th Cir. 1994) ...............................................................................9, 16

iii

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
No. 07-5953 (N.D. Ill. Nov. 1, 2010) ....................................................................12

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) ................................................................................11

*Gaskill v. Gordon*,
942 F. Supp. 382 (N.D. Ill. 1996) ...........................................................................9

*Green v. DirecTV, Inc.*,
No. 10-117, 2010 WL 4628734 (N.D. Ill. Nov. 8, 2010) ..............................18, 20

*Greene v. Emersons Ltd.*,
No. 76-2178, 1987 WL 11558 (S.D.N.Y. May 20, 1987) .....................................13

*Gusman v. Comcast Corp.*,
298 F.R.D. 592 (S.D. Cal. 2014) ...........................................................................19

*Hanley v. Fifth Third Bank*,
No. 12-1612 (N.D. Ill.) .........................................................................................12

*Heekin v. Anthem, Inc.*,
No. 05-01908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ..............................23

*Hinman v. M&M Rentals, Inc.*,
No. 06-1156 (N.D. Ill. Oct. 6, 2009)......................................................................12

*Holtzman v. CCH*,
No. 07-7033 (N.D. Ill. Sept. 30, 2009) ..................................................................12

*Jamison v. First Credit Servs.*,
290 F.R.D. 92 (N.D. Ill. 2013)..................................................................17, 18, 20

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 1986) ................................................................................11

*Kolinek v. Walgreen Co.*,
311 F.R.D. 483 (N.D. Ill. 2015)..................................................................... *passim*

*In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*,
280 F.R.D. 364 (N.D. Ill. 2011)..................................................................7, 8, 13

*Mangone v. First USA Bank*,
206 F.R.D. 222 (S.D. Ill. 2001) ............................................................................11

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ...........................................................................21

iv

*Martin v. Dun & Bradstreet, Inc.*,
   No. 12-215 (N.D. Ill. Jan. 16, 2014) ......................................................................12

*Martin v. JTH Tax, Inc.*,
   No. 13-6923 (N.D. Ill. Sept. 16, 2015) ....................................................................14

*McCue v. MB Fin., Inc.*,
   No. 15-988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) ........................................14

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...................................................................................13

*Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*,
   No. 08-5959 (N.D. Ill. Dec. 21, 2011) .....................................................................12

*Pearson v. NBTY, Inc.*,
   772 F.3d 778 (7th Cir. 2014) .............................................................2, 10, 12, 14

*Prena v. BMO Fin. Corp.*,
   No. 15-09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015)...................................14

*Redman v. RadioShack Corp.*,
   768 F.3d 622 (7th Cir. 2014) ......................................................................................2

*Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*,
   No. 97-7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001).....................................11

*Rose v. Bank of Am. Corp.*,
   2014 U.S. Dist. LEXIS 121641, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) ...................21

*Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*,
   No. 09-776 (N.D. Ill. Jan. 14, 2011) ........................................................................12

*Saf-T-Gard Int'l v. Vanguard Energy Servs.*,
   No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012)........................................17

*Silverman v. Motorola Solutions, Inc.*,
   739 F.3d 956 (7th Cir. 2013) ....................................................................................16

*Spano v. The Boeing Co.*,
   No. 06-743, 2016 WL 3791123 (S.D. Ill. March 31, 2016) .....................................14

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)..........................................................................................4, 18

*Stumpf v. PYOD*,
   12-4688, 2013 WL 6123156 (N.D. Ill. Nov. 20, 2013) ...........................................11

*Sutton v. Bernard*,
   504 F.3d 688 (7th Cir. 2007) .................................................................7, 15, 16, 20

*In re Synthroid Marketing Litig.*,
   325 F.3d 974 (7th Cir. 2003) ........................................................................2, 8, 10

*In re Synthroid Mkt. Litig.*,
   264 F.3d 712 (7th Cir. 2001) .........................................................11, 15, 16, 22

*Taubenfeld v. AON Corp.*,
   415 F.3d 597 (7th Cir. 2005) ...............................................................................11, 13

*Toney v. Quality Res., Inc.*,
   75 F. Supp. 3d 727 (N.D. Ill. 2014) .................................................................3, 4, 19

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
   724 F. Supp. 160 (S.D.N.Y. 1989) ........................................................................9

*Van Gemert v. Boeing Co.*,
   516 F. Supp. 412 (S.D.N.Y. 1981) ......................................................................13

*Will v. Gen. Dynamics Corp.*,
   No. 06-698, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010)................................13, 23

*Zolkos v. Scriptfleet, Inc.*,
   No. 12-8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015) ....................................14

**Statutes**

47 U.S.C. § 227....................................................................................................1, 2, 6, 23

47 U.S.C. § 227(b)(3) ..................................................................................................6

**Regulations**

47 C.F.R. § 64.1200(a)(1)(iii)......................................................................................2

47 C.F.R. § 64.1200(c)(2) ............................................................................................2

## I.     <u>INTRODUCTION</u>

On August 16, 2016, this Court preliminarily approved a proposed class action settlement between Plaintiff Sarah Toney and Sempris, LLC d/b/a Budget Savers (collectively, "the Parties"). (Dkt. 267, amended Dkt. 280 changing date of final approving hearing). The Settlement creates an $2,150,000, non-reversionary common fund for the benefit of 52,260 consumers whose telephone numbers Quality Resources, Inc. ("Quality") called using an automatic telephone dialing system or while they were on the National Do Not Call Registry, in alleged violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. In addition to the $2,150,000 common fund, Sempris has agreed to assign the Plaintiff and the Settlement Class all of its contractual rights to indemnity or subrogation against Quality for claims arising out of the claims asserted by the Plaintiff in this action. The assigned indemnity claim adds at least a $3,000,000 claim to the value of the settlement redounding to the class. The indemnification claim is for the total of the settlement by Sempris plus the amount it spent in defense of the action. *See Declaration of Edward A. Broderick* at ¶ 15, attached as Exhibit 1. ("*Broderick Declaration*")

Plaintiff and her counsel will continue to litigate their case against Quality and its principal Cheryl Mercuris, who are not participating in the settlement, for the benefit of the Class. Class Counsel have zealously prosecuted Plaintiff's claims for more than three and a half years, achieving the settlement only after extensive first and third-party discovery; contested motion practice, including motions to dismiss, motions for summary judgment, motions to compel, depositions and three mediation sessions, including two before the Honorable James Holderman (Ret.) of JAMS, the last of which was conducted on May 10, 2016.

As compensation for the substantial benefit conferred upon the Settlement Class, Class Counsel respectfully move the Court for an award of attorneys' fees of $716,552 which represents 34.4% of the settlement fund after deducting from the total amount the costs of notice and administration pursuant to *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014), and *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014), and the value of a requested incentive award for Plaintiff Sarah Toney of $15,000. Plaintiff notes that this assessment of the value of the settlement to the Class does not include the additional benefit of Sempris assigning its claims against Quality to the Class. Class Counsel additionally seek reimbursement of their out of pocket costs of $43,722.71 incurred in prosecuting the case. This request should be approved because (1) it represents the market rate for this type of settlement and is in line with the Seventh Circuit's directive in *In re Synthroid*, particularly as it is not a "mega-fund" case which yield lower percentages of settlement funds to attorneys, and (2) represents a reasonable and appropriate amount in light of the substantial risks presented in prosecuting this action, the quality and extent of work conducted, and the stakes of the case. Class Counsel also respectfully move the Court for an award of $15,000 to Plaintiff Sarah Toney for her work on behalf of the Class.

## II.    BACKGROUND AND SETTLEMENT

This case concerned alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which prohibits, *inter alia*, initiating any telephone solicitation to a telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry, or calling a cell phone using an artificial or prerecorded voice. *See* 47 C.F.R. § 64.1200(c)(2); § 64.1200(a)(1)(iii). This telemarketing in this case operated as follows: Stompeez is a California based company that sells goods over the internet via its web site.

Consumers purchasing goods from the Stompeez web site were asked to provide a phone number in the event Stompeez had "questions about [the] order." *See Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 732 (N.D. Ill. 2014). The Stompeex customers were never informed that her contact information would be sold to third parties to make telemarketing calls to their cell phone. However, Stompeez sold the contact information of consumers who purchased goods and services from its web site, including Ms. Toney, to Quality. As part of this telemarketing program, Quality agreed to call Stompeez's customers for two purposes: first, Quality would confirm that the contact information provided to Stompeez was correct. Second, and more importantly, after Quality confirmed the contact information for Stompeez, it engaged in an "up sell" to the consumer, in order to sell other goods and services of Sempris, unrelated to Stompeez or Quality.

On December 8, 2012, the Plaintiff bought two pairs of children's slippers for her godchildren for Christmas from Stompeez. Shortly thereafter, Plaintiff began receiving telephone calls from an unknown telephone number. When Ms. Toney finally answered the persistent calls, she spoke directly with a telemarketing representative for Quality who confirmed the plaintiff's address on the order was correct; of course, it was. Then the telemarketing representative of Quality entered into the high-pressure sales pitch, which notified plaintiff that, as a result of her Stompeez purchase, she was being automatically enrolled into Sempris' "Budget Savers" program. Through discovery, the Plaintiff was able to identify the other individuals who were subjected to the same telemarketing practices.

The Plaintiff filed this case on January 3, 2013, and hard-fought litigation continued for years to follow. *See Broderick Declaration* at ¶ 11. Shortly thereafter, Quality filed a motion to dismiss and/or for summary judgment. Dkt. No. 18. *Broderick Declaration.* at ¶ 12. In response,

3

the Plaintiff amended her complaint to include Sempris, and Quality again filed a motion to dismiss and/or for summary judgment. Dkt. No. 32. Sempris shortly thereafter filed a motion to dismiss. Dkt. No. 47.

At the Court's direction, the parties engaged in discovery during the first round of motion practice. The parties litigated numerous discovery motions (Dkt. Nos. 51, 55, 97). The discovery received amounted to tens of thousands of pages related to Sempris' potential vicarious liability for the calls at issue, identify of the class members and complaints arising from the telemarketing that occurred. *Broderick Declaration* ¶ 11. Following receipt and review of this information (much of which was compelled over Quality's objection), Class Counsel took four depositions of Quality personnel, including a Rule 30(b)(6) deposition, and defended Plaintiff Sarah Toney's deposition concerning the same information. *Broderick Declaration* ¶ 12.

After the discovery revealed the extent of the telemarketing at issue, the Plaintiff filed a second amended complaint, following a motion. Dkt. No. 60. Sempris and Quality then filed additional motions to dismiss the complaint and/or for summary judgment. Dkt. Nos. 76, 83. The Plaintiff opposed this motion through extensive briefing, including the submission of additional material facts. The Court denied nearly all of the aspect of the defendants' motions other than dismissing claims against a defunct entity. *See Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 732 (N.D. Ill. 2014).

After the Court denied the motions to dismiss and for summary judgment, the Plaintiff filed a motion for class certification. *See* Dkt. No. 213. Next, counsel for Quality attempted to rely on the grant of *certiorari* by the Supreme Court in *Spokeo* and *Campbell-Ewald Co.* to support dismissal or a stay of this action. Dkt. No. 225. This Court stayed the litigation pending those decisions. *See* Dkt. No. 230. Following the decision by the Supreme Court in each of these

4

cases, the litigation was lifted, and Sempris and Plaintiff presented this settlement, which was negotiated during that stay. In addition to numerous informal discussions between counsel, Sempris and the Plaintiff participated in three mediation sessions over the course of eighteen months, including a mediation with the Hon. Edward Infante (Ret.) of JAMS in San Francisco and two before the Honorable James Holderman (Ret.) of JAMS in Chicago, the final of which on May 10, 2016 resulted in a settlement in principal. *Broderick Declaration* ¶ 14. These discussions culminated in the Settlement Agreement. While the Settlement was under consideration by the Court, defendant Quality served a motion to dismiss, asserting that the Court lacked subject matter jurisdiction to consider the case as it asserted Plaintiff had not suffered an injury in fact. Plaintiff successfully opposed this motion, which was denied by the Court from the bench on August 26, 2016. Dkt. No. 274. Notably, as a challenge to the Court's subject matter jurisdiction, the motion had the potential to derail the settlement with Sempris, as well as the continuing case against Quality and Ms. Mercuris.

The Settlement requires Sempris to pay $2,150,000 for the benefit of this settlement class defined as:

> All persons who are or were the subscribers and/or customary users of the telephone numbers on the Class List, and to whom, from January 3, 2009 through the date of preliminary approval, Quality Resources, Inc., made a call or calls in connection with Stompeez Kids Slippers purchases.

> The following persons are excluded from the Settlement Class: Sempris, any parent, subsidiary, or affiliate of Sempris, the officers, directors, agents, servants, or employees of any of the foregoing as of the entry of the Preliminary Approval Order, Class Counsel, the Settlement Administrator, the Mediator, and any judge presiding over the Action.

(Agr. ¶ 1.23.) This Settlement Fund will be distributed on a *pro rata* basis to Settlement Class Members who submit valid Claims, after payment of Claims Administrator costs, Class Counsel's fee award, and any service award to Plaintiff. (Agr. ¶ 2.4). The Settlement is

completely non-reversionary—all unclaimed or undistributed amounts remaining in the Settlement Fund after all payments under the Settlement Agreement will, to the extent administratively feasible, be redistributed to the Settlement Class or, if not administratively feasible, to a Court-approved *cy pres* recipient.[1] Notice and administration through Kurtzman Carson Consultants LLC ("KCC") is expected to cost approximately $52,000. Settlement Class Members who submit a valid Claim are expected to receive Settlement Awards of $200 or more, Dkt. No. 352 at 12—an outstanding result outcome given that the non-fee-shifting TCPA generally provides for $500 in damages per violation. 47 U.S.C. § 227(b)(3), especially because in addition to the common fund, Sempris has agreed to assign the Plaintiff and the Settlement Class any rights to indemnity or subrogation against Quality Resources for claims arising out of the claims asserted by the Plaintiff in this action. Furthermore, Plaintiff and her counsel will continue to litigate their case against Quality, who is not participating in the settlement, and class members' claims against Quality will also continue. *Broderick Declaration* ¶ 16.

Plaintiff respectfully requests that the Court approve attorneys' fees of $716,552 and costs of $43,722.71, as well as a $15,000 service award for Plaintiff Toney. As explained below, the requested fee award is in line with the market rate for similar attorney services in this jurisdiction, and fairly reflects the result achieved. Similarly, the requested service award is comparable to other TCPA cases, and should be approved.

---

[1] If distribution of any amounts remaining from uncashed checks is administratively infeasible—*i.e.*, Settlement Class Members would receive less than an additional $1.00, after administrative costs—then that amount will instead be distributed to a Court-approved *cy pres* recipient. (Agr. ¶ 2.2.) The Parties propose the National Consumer Law Center as the designated *cy pres* recipient. (Agr. ¶ 2.2.)

### III.    LEGAL STANDARD FOR ATTORNEY'S FEE DECISIONS

The Seventh Circuit and other federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit").

In common fund cases, courts have discretion to use one of two methods to determine whether the request is reasonable: (1) percentage of the fund; or (2) lodestar plus a risk multiplier. *Americana Art China, Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014). However, "the approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class." *In re Ky. Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, 280 F.R.D. 364, 379 (N.D. Ill. 2011).

### IV.    ARGUMENT

### A.    The Court Should Calculate Fees as a "Percentage of the Fund."

As directed, Class Counsel are providing the amount of hours spent on the case litigating over three and half years: Burke Law, LLC spent 360.1 attorney hours, The Law Office of Matthew P. McCue spent 155 attorney hours, and Broderick & Paronich, P.C. spent 664.5 hours, for total attorney hours of 1,179.6. *Broderick Declaration* ¶ 19; *Declaration of Alexander Burke*, ¶ 11, attached as Exhibit 2; *Declaration of Matthew P. McCue* ¶ 13, attached as Exhibit 3.[2] The

---

[2] As is reflected in the attached Declarations of Class Counsel, Class Counsel billed at their customary rates, which are consistent with rates charged by attorneys' in Chicago and nationally

attorney's lodestar time yields the following totals per Plaintiff's firm: Burke Law, LLC, $190,453; The Law Office of Matthew P. McCue, $108,500; Broderick & Paronich, P.C., $361,665. The total lodestar between the three firms is $660,618.

Although Class Counsel's lodestar strongly supports the requested fee—requiring a only minimal risk multiplier of approximately 1.085 to reach the requested fee—a lodestar analysis should not be used in this case for three reasons: (1) the Seventh Circuit strongly favors the percentage approach in cases where there is no fee-shifting statute; (2) the percentage approach best reflects the market rate for legal services; and (3) no reason exists in this particular case to deviate from a percentage approach here.

Courts look to *In re Synthroid Marketing Litig.* ("*Synthroid II*"), 325 F.3d 974, 980 (7th Cir. 2003), to assist in determining fees, and have nearly uniformly held that the percentage of the fund reflects the "market rate" for consumer class actions because "given the opportunity … class members and Plaintiff's counsel would have bargained for" such. *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015); *In re Capital One Tel. Consumer Prot. Act Litig.* ("*In re Capital One*"), 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (percentage of the fund method is "more likely to yield an accurate approximation of the market rate" in TCPA case, and that, "had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a percentage of

---

with similar levels of experience and expertise, and are rates have been previously approved by federal courts in the context of TCPA class action settlements. Mr. Broderick's attorney time is billed at his customary rate of $700 per hour, Mr. Paronich at $450, Mr. McCue is billed at $700 per hour, Mr. Burke at $550 and Mr. Marovitch at $340 per hour. The reasonableness of Mr. Paronich's time is attested to by the Broderick Declaration, as well as the *Declaration of Anthony I. Paronich*, attached as Exhibit 4. Although time in Class Counsel's lodestar has been spent pursuing Quality as well as Sempris, inclusion of that time is entirely proper, as the claims against the two defendants are inextricably intertwined. Indeed, the case against Sempris is based on its vicarious liability for calls made by Sempris. *Broderick Declaration ¶* 21.

the recovery, consistent with the normal practice in consumer class actions"). The overwhelming preference for the percentage-of-the-fund approach makes sense because it best reflects the way fees work in such cases. In a non-fee-shifting matter like a personal injury or TCPA case, the only way for a lawyer to be paid is through a percentage of the client's recovery. It would be nonsensical for a client to pay a lawyer hourly for a TCPA case because the fees for hourly work would quickly eat up the client's possible recovery. An even stronger case can be made where the lawyer is very experienced because the higher hourly rate would surpass the client's recovery even more quickly.

One of the advantages that the percentage of the fund has over lodestar, and a substantial reason why percentage of the fund more accurately represents the "market rate," is that "the lodestar method [would] require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis, something a class of nine million lightly-injured plaintiffs likely would not be interested in doing." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015). Indeed, "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). As one seminal case found:

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

> *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170

(S.D.N.Y. 1989); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting it is easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Gaskill v. Gordon*, 942 F.

Supp. 382, 386 (N.D. Ill. 1996) (percentage of fund method "provides a more effective way of determining whether the hours expended were reasonable."), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

### B. Counsel's Request Is Within the "Market Rate."

*Synthroid II* holds that the Court should determine this percentage by approximating the market rate, and specifically found that the "market" fee for the first $10 million of a consumer class action was 30% of the *entire* settlement fund. More recently, in *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014), the Court established a presumption for fee requests and found that notice and administration costs should be deducted before calculating the percentage for attorney's fees.

However, *Pearson* did <u>not</u> overrule *Synthroid II*, and did <u>not</u> purport to lower the "market rate" for attorney's fees in consumer class actions like this one. Instead, *Pearson* held that the calculation for *comparing* settlements must account for costs as a benefit to counsel rather than a benefit to the class. *Pearson* holds that District Courts enjoy wide discretion to award whatever fees are reasonable and appropriate; under the *Pearson* presumption, fees in any given settlement should not "exceed a third or at most a *half* of the total amount of money going to class members and their counsel." *Pearson*, 772 F.3d at 782 (emphasis added).

Here, Plaintiff's request falls squarely within the *Pearson* presumption. Plaintiff respectfully requests that the Court approve $716,552 in attorney's fees. This request amounts to less than one-third of the entire $2,150,000 Settlement Fund, or 34.4% of the estimated $2,083,000 Settlement Fund, exclusive of notice and administration costs and the requested service award. The Seventh Circuit has elucidated 'benchmarks' that can assist courts in estimating the market rate, including "the fee contract between the plaintiff and counsel, data from similar cases, and information from class-counsel auctions," *Kolinek*, 311 F.R.D. at 501

(citing *In re Synthroid Mkt. Litig.* ("*Synthroid I*"), 264 F.3d 712, 719 (7th Cir. 2001)). Other

factors are relevant, as well, including the risk counsel undertook in accepting the case, the

quality of performance and the stakes of the case. *Synthroid I*, 264 F.3d at 721. As explained

below, each of these factors supports the requested fee.

    1.    **<u>The Requested Fee Comports with the Contracts Between Plaintiff
and Counsel.</u>**

The requested fee award is not only supported by the fee awards deemed reasonable in

similar class cases; it is in line with representation agreements commonly entered into in this

District, including between Plaintiff and her counsel. In addition to analyzing the market price

for legal services from analogous cases, courts also may examine "actual fee contracts that were

negotiated for private litigation." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005);

*see also Stumpf v. PYOD*, 12-4688, 2013 WL 6123156, at *2 (N.D. Ill. Nov. 20, 2013) ("The

named plaintiff's agreement to a floor of 33.33% of any net recovery supports the claim that

30% of the net recovery is tied to the market."); *Mangone v. First USA Bank*, 206 F.R.D. 222,

226 (S.D. Ill. 2001) (requiring weight be given to the judgment of the parties and their counsel

where, as here, the fees were agreed to through arm's length negotiations after the parties agreed

on the other key deal terms).

The customary contingency agreement in this Circuit is 33% to 40% of the total recovery.

*Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (noting that typical contingency fees

are between 33% and 40% and affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323

(7th Cir. 1986) (observing that "40% is the customary fee in tort litigation" and noting, with

approval, contract providing for one-third contingent fee if litigation settled prior to trial); *Retsky

Family Ltd. P'ship v. Price Waterhouse, LLP*, No. 97-7694, 2001 WL 1568856, at *4 (N.D. Ill.

Dec. 10, 2001) (recognizing that a customary contingent fee is "between 33 1/3% and 40%" and awarding counsel one-third of the common fund).

Here, Plaintiffs entered into a retainer agreement with Class Counsel that reflects or exceeds this fee range, as is normal in consumer TCPA cases in this District. *Burke Decl.* ¶ 15. Such evidence supports a finding that the requested fee reflects the amount Class Counsel would have received had they negotiated their fee *ex ante*.

2. **The Requested Fee Reflects the Fees Awarded in Other Settlements.**

*a.* ***Pre-Pearson Percentage of the Fund Settlements.***

Awards of one-third of the entire settlement fund were commonplace before *Pearson*. Some TCPA cases where this happened are as follows: *Martin v. Dun & Bradstreet, Inc.*, No. 12-215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (one-third of total payout); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) (Dkt. No. 87) (awarding attorneys' fees of one-third of total settlement fund); *Cummings v. Sallie Mae*, No. 12-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 11-1925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (one-third of the settlement fund); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-5959 (N.D. Ill. Dec. 21, 2011) (Kennelly, J.) (Dkt. No. 116) (fees equal to one-third of the settlement fund plus expenses); *CE Design Ltd. v. CV's Crab House North, Inc.*, No. 07-5456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424) (fees equal to one-third of settlement plus expenses); *Saf-T-Gard Int'l, Inc. v. Seiko Corp. of Am.*, No. 09-776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Dkt. No. 100) (fees and expenses equal to 33% of the settlement fund); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-5953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Dkt. No. 146) (fees of one-third of settlement plus expenses); *Hinman v. M&M Rentals, Inc.*, No. 06-1156 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (Dkt. No. 225) (fees and expenses equal to 33% of the fund); *Holtzman v. CCH*, No. 07-7033 (N.D. Ill.

Sept. 30, 2009) (Nordberg, J.) (Dkt. No. 33) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 07-66 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Dkt. No. 39) (same).

Some other, non-TCPA cases where one-third of the entire fund was awarded, include: *Taubenfeld*, 415 F.3d at 600 (noting counsel had submitted a table of thirteen cases in the Northern District of Illinois where counsel was awarded fees amounting to 30–39% of the settlement fund); *In re Ky. Grilled Chicken*, 280 F.R.D. at 380–81 (citing cases, and describing a fee of 32.7% of the common fund as "well within the market rate and facially reasonable"); *City of Greenville v. Syngenta Corp Prot., Inc.*, 904 F. Supp. 2d 902, 908–09 (S.D. Ill. 2012) (approving a one-third fee because a "contingent fee of one-third of any recovery after the reimbursement of costs and expenses reflects the market price" and citing cases); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, *3 (S.D. Ill. Nov. 22, 2010) (finding "the market rate for complex plaintiffs' attorney work in this case and similar cases is a contingency fee" and agreeing "a one-third fee is consistent with the market rate"); *In re Bankcorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming award of 36% of the settlement fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of attorneys' fees equal to 33.33% of the total recovery); *Greene v. Emersons Ltd.*, No. 76-2178, 1987 WL 11558, at *8 (S.D.N.Y. May 20, 1987) (awarding attorneys' fees and expenses in excess of 46% of the settlement fund); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1131–32 (W.D. La. 1997) (awarding attorneys' fees equal to 36% of the common fund); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 503 (D.D.C. 1981) (awarding attorneys' fees in excess of 40% of the settlement fund); *Beech Cinema, Inc. v. Twentieth Century Fox Film Corp.*, 480 F. Supp. 1195, 1198–99 (S.D.N.Y. 1979) (awarding fees in excess of 50% of the settlement fund); *Van Gemert v. Boeing Co.*, 516 F. Supp. 412, 420 (S.D.N.Y. 1981) (awarding fees of 36% of fund).

13

b.    *Post-Pearson: The Pearson Presumption Did Not Alter the Market Rate for Fees.*

The 34.4% fee – after deducting administration costs and any service award – requested here represents the post-*Pearson* market price, and is therefore reasonable. That the rate is within the market is reflected in the following fees approved by judges in this District in TCPA cases since *Pearson*:

- 36% of total fund: *In re Capital One*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (36% of the first $10 million of the settlement) (Holderman, J.).

- 33%: *Charvat v. AEP Energy, Inc.*, No. 14-cv-03121, Dkt. No. 44, (N.D. Ill. Nov. 20, 2015) (Zagel, J.).

- 38% of fund minus expenses, notice/admin costs, and service award: *Martin v. JTH Tax, Inc.*, No. 13-6923 (N.D. Ill. Sept. 16, 2015) (Shah, J.).

- 36% of fund minus notice/admin costs and service award: *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (Kennelly, J.).

- 33% of fund minus notice/admin costs: *Allen v. JPMorgan Chase Bank, NA*, No. 13-8285 (N.D. Ill. Oct. 21, 2015) (Dkt. No. 93 at 6) (Pallmeyer, J.).[3]

Class Counsel's requested fee also reflects post-*Pearson* fees approved by other courts in non-TCPA cases in this Circuit. *Spano v. The Boeing Co.*, No. 06-743, 2016 WL 3791123 (S.D. Ill. March 31, 2016) (awarding 33 1/3% of the monetary settlement); *McCue v. MB Fin., Inc.*, No. 15-988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) (awarding 33.33% of the fund plus costs); *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475 (N.D. Ill. July 17, 2015) (awarding 33.33% of the fund plus costs); *Zolkos v. Scriptfleet, Inc.*, No. 12-8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015) (awarding 33.33% of the fund plus expenses); *Prena v. BMO Fin. Corp.*, No. 15-09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) (awarding 33.5% of the fund after deducting notice costs); *Bickel v. Sheriff of Whitley Cnty*, No. 08-102, 2015 WL

---

[3] The calculations here are for the first $10 million of the settlement. To the extent that these settlements exceeded $10 million, some of the Courts used a diminishing sliding scale.

1402018 (N.D. Ind. Mar. 26, 2015) (awarding 43.7% of the fund); *In re Dairy Farmers of Am., Inc.*, MDL No. 2031, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015) (awarding 33.33% of the fund).[4] Consequently, the requested fee award falls in line with numerous other settlements approved as reasonable in this Circuit.

3.   **Other Factors Support the Requested Fee.**

Beyond comparisons to similar fee awards and agreements, the market price for legal fees "depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Sutton*, 504 F.3d at 693 (quotation and internal marks omitted). Given the outstanding result achieved for the benefit of the Settlement Class in this case, considering the risk of nonpayment to Class Counsel and extensive resources expended over the years this litigation has been pending, Class Counsel respectfully submit that their requested fee is reasonable and appropriate under the totality of circumstances, and should be approved.

a.   *Risk of Nonpayment*

From changing regulatory precedent and even Supreme Court jurisprudence, to the inability to establish an absence of predominating individualized issues sufficient for certification of a litigation class, Class Counsel faced substantial risk and uncertainty at the outset of this action that they would receive no compensation despite investing the time and resources necessary to adequately prosecute this case. This risk supports the requested fee award.

"Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic

---

[4] *Synthroid I* also says that District Courts may look to any data from pre-suit negotiations and class-counsel auctions but such information is basically non-existent" in the TCPA context. *Kolinek*, 311 F.R.D. 501.

counsel." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (citing *Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986)). Thus, the risk of non-payment is a key consideration in assessing the reasonableness of a requested fee, and must be incorporated into any ultimate fee award. *See Florin*, 34 F.3d at 565 ("[A] risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel had no sure source of compensation for their services.... [T]he need for such an adjustment is particularly acute in class action suits. The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent.") (quotations and citations omitted); *Sutton*, 504 F.3d at 694 (finding abuse of discretion where court refused to account for the risk of loss on basis that "class actions rarely go to trial and that they all settle[,]" noting that "there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit[;] ... [b]ecause the district court failed to provide for the risk of loss, the possibility exists that Counsel … was undercompensated").

In this context, "at the time" is at the start of the case: the Court must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Synthroid I*, 264 F.3d at 718. That is so because "[t]he best time to determine this rate is the beginning of the case, not the end (when hindsight alters of the perception of the suit's riskiness, and sunk costs make it impossible for the lawyers to walk away if the fee is too low). This is what happens in actual markets." *Id.* Thus, because this case was filed in January of 2013, the Court must look at the risks associated with the case on that date.

Class Counsel agreed to pursue this action on a contingent fee basis without the benefit of discovery regarding the size or ascertainability of the asserted class. Class Counsel accepted

16

the case despite that contentious class discovery would likely be required, with not only Sempris but also the third-party participant Quality, which made the calls at issue. Class Counsel also accepted the possibility that, given the class period going back to 2009 and the fact that many vendors reside overseas and often purge their call records on a regular basis, necessary class call data records would likely be difficult to obtain and, in fact, might have already been destroyed, potentially obliterating any ability to identify class members and ultimately obtain class-wide relief.

Moreover, even assuming sufficient discovery would be obtained, Class Counsel accepted the risk that the Court might ultimately deny certification. This is a very real concern, as, for example, courts are currently divided as to whether consent issues predominate over common questions in TCPA cases, depending on the circumstances of the case. *Compare Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) and *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same), with *Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

And throughout much of this litigation, the FCC was considering numerous petitions, many of which were made by industry advocates urging the FCC to loosen prohibitions against autodialed calls like the ones at issue in this case, and the process before the FCC can be unpredictable. For example, on October 30, 2014, the FCC issued an order re-confirming its unequivocal prior orders that fax advertisements must contain specific language explaining how recipients can "opt-out" of receiving more faxes, but providing *retroactive immunity* for violators

that file petitions with the FCC—a wholly unexpected and incongruous result from the consumer perspective.[5] In fact, it was only until two years into this litigation, on July 10, 2015, that the FCC released a declaratory ruling clarifying relevant issues as wide-ranging as consent and the definition of an "automatic telephone dialing system" under the statute.[6] And then there were the overhanging *Spokeo* and *Campbell-Ewald Co.* cases before the Supreme Court affecting standing and defendants' ability to "pick-off" named plaintiffs through a settlement offer or Rule 68 offer of judgment.[7] Recognizing the dispositive nature of those actions, the Court stayed this action pending resolution of those cases. *See* Dkt. No. 230.

Success, especially at the outset of this action, was by no means assured. Class Counsel accepted that litigating these and other issues risked recovering nothing for the class, Plaintiff, or counsel, and would have required significant expenditure of time, money, and resources — including potentially substantial expert expenses — for which Class Counsel would receive absolutely no compensation upon losing at summary judgment, class certification, or trial. S*ee In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1035-35 (N.D. Ill. 2011) (finding significant risk of nonpayment where, among other reasons, counsel would have to overcome case dispositive defenses and certify a class); *Jamison*, 290 F.R.D. at 102–09 (denying class certification in part because a class-wide determination of consent would require "a series of mini-trials"); *Green v. DirecTV, Inc.*, No. 10-117, 2010 WL 4628734, at *5 (N.D. Ill. Nov. 8, 2010) (granting summary judgment against TCPA plaintiff). The risk was real. As detailed in the accompanying declarations of counsel, plaintiffs' lawyers lose TCPA cases

---

[5] *See* http://transition.fcc.gov/Daily_Releases/Daily_Business/2014/db1030/FCC-14-164A1.pdf.
[6] *See* https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf.
[7] *See generally Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016); *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

regularly, both through summary judgment and through denial of class certification. *See, e.g., Donaca v. Dish Network, LLC.*, 303 F.R.D. 390, 396-402 (D. Colo. 2014) (denying class certification in TCPA action); *Fitzhenry v. ADT Corp.,* 2014 U.S. Dist. LEXIS 166243 * 22 (S.D. Fla. Nov. 3, 2014) (order denying class certification); *Brey Corp. v. LQ Mgmt. LLC*, 2014 U.S. Dist. LEXIS 11223 (D. Md., Jan. 29, 2014). *Broderick Decl.* ¶ 17.

One of the primary battles in every TCPA action involves class plaintiffs' attempts to determine the size and scope of the class. Those facts are not (and cannot be) known by plaintiffs' counsel *ex ante*, and typically require contentious discovery and litigation before ever becoming known. This case is no different; Class Counsel engaged in contested motion practice during discovery in an effort to determine the scope of the class. TCPA plaintiffs sometimes lose such motions and are unable to proceed on a class basis as a result. *See, e.g., Gusman v. Comcast Corp.*, 298 F.R.D. 592, 596–97 (S.D. Cal. 2014) (denying motion to compel production of call data). And while Class Counsel were successful in fighting off dispositive motions by Sempris and Quality, *See Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 732 (N.D. Ill. 2014), if the class was certified, success at trial was far from guaranteed.

Plaintiff believes that she would have prevailed on these issues, and does believe she will prevail on the remaining issues against Quality, but success was by no means assured. Litigating these issues against Sempris would have risked recovering nothing for the class, and would have required significant additional expenditure of time, money, and resources — including potentially substantial expert expenses — for which Class Counsel would not be compensated should they lose on summary judgment or fail to certify a class. *See In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d at 1035–35 (finding class counsel incurred significant risk of nonpayment where, among other reasons, class counsel would have to

19

overcome case dispositive defenses and certify a class); *Jamison*, 290 F.R.D. at 102–09 (denying class certification in part because a class-wide determination of consent would require "a series of mini-trials"); *Green*, 2010 WL 4628734, at *5 (granting summary judgment against TCPA plaintiff).

That risk was meaningful. Of course, the facts and circumstances of every case are different and must be individually considered and separately analyzed, but it bears noting that Class Counsel have lost a number of TCPA class actions without any recovery for the class or receiving any compensation for their fees or costs. *Broderick Decl.* ¶ 17; *Burke Decl.* ¶ 14.; *McCue Decl.* ¶ 10. In light of the considerable risk undertaken by Class Counsel in prosecuting this action on a purely contingent fee basis, the requested fee award is reasonable and should be granted. *In re Capital One*, 80 F. Supp. 3d at 805 (awarding 6% risk premium on top of 30% in TCPA class settlement, where some class members may have agreed to be called, there were potential manageability issues in relation to the ability to determine from defendants' records whether class members consented or provided or owned their phone numbers, and FCC petitions similarly at issue in this case potentially could have affected the plaintiffs' claims).

### b. *Quality of Performance and Work Invested*

The quality of Class Counsel's performance and time invested in fighting through years of contested motion practice, substantial discovery, and adversarial negotiations to achieve an $2,150,000, non-reversionary settlement fund for the benefit of the Settlement Class further supports the requested fee award, in addition to the fact that class counsel secured an assignment of rights for Sempris's indemnification claims and allowing class members' claims against Quality to continue. *Sutton*, 504 F.3d at 693. In addition to accepting considerable risk in litigating this action, Class Counsel committed their time and resources to this case without any guarantee of compensation, whatsoever, only achieving the Settlement after over three years of

litigation. Given expected claims rates, Class Counsel expect each claimant could receive $200, which is an excellent result, as greatly exceeds recoveries in many TCPA settlements. Indeed, in *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493-494 (N.D. Ill. 2015) the court approved $30 per claimant, saying it was within the range of approved TCPA settlements, citing *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (approving $34.60 per claimant) and *Rose v. Bank of Am. Corp.*, 2014 U.S. Dist. LEXIS 121641, 2014 WL 4273358, at *10-11 (N.D. Cal. Aug. 29, 2014) (approving recovery of between $20-$40 per claimant. Even though it was on the lower end of the range).

Class Counsel are experienced in consumer and class action litigation, including under the TCPA. *Broderick Decl.* ¶ 9; *Burke Decl.* ¶ 5.; *McCue Decl.* ¶ 9. Moreover, because they were proceeding on a contingent fee basis, Class Counsel "had a strong incentive to keep expenses at a reasonable level[.]" *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010). Given the outstanding settlement obtained for the class, Class Counsel respectfully submit that their experience and the quality and amount of work invested in this action for the benefit of the class supports the requested fee award.

### c.       *Stakes of the Case*

The stakes of the case further support the requested fee award. This case involves tens of thousands of Settlement Class Members who allegedly received unsolicited automated advertising calls from Quality on behalf of Sempris. The amount each Settlement Class Member is individually eligible to recover is low (between $500 and $1,500 per call), and thus individuals are unlikely to file individual lawsuits, especially as here each class member only received a small number – usually one or two – of these telemarketing calls. Indeed, individual litigants likely would have to provide proof of calls well beyond what is required here to submit a claim and call records may not be available going back to 2009 when the class period begins, making it

even less likely that people would file individual lawsuits. A class action is realistically the only way that many individuals would receive any relief. In light of the number of Settlement Class Members and the fact that they likely would not have received any relief without the assistance of Class Counsel, the requested fee is reasonable and should be granted.

### C.   The Incentive Award to the Class Representative Should Be Approved.

Class Counsel also respectfully request that the Court grant a service award of $15,000 to Plaintiff Toney for her efforts on behalf of the class. Service awards compensating named plaintiffs for work done on behalf of the class are routinely awarded. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

Plaintiff travelled from her home and answered questions for hours in a grueling deposition. Plaintiff also spent considerable time responding to, and later supplementing responses to document requests and three sets of interrogatories. Ms. Toney, herself an adjunct law professor, could have decided that "enough is enough" and tried to drop or settle her case individually at any time—and other class plaintiffs might well have done just that. Instead, she persevered for the benefit of the class. Ms. Toney also worked with Class Counsel to investigate the case, stayed abreast of the proceedings through litigation and settlement, and reviewed and approved the proposed settlement. *Burke Decl.* ¶ 16. All of this for the benefit of the class: individual resolution could likely have been immediate. Indeed, Quality Resources held the carrot of quick-and-easy individual settlement in front of Ms. Toney through an individual offer

of judgment, which Ms. Toney did not accept. The Court ultimately struck the offer completely, DE 219, but not before Ms. Toney had the opportunity to accept it.

Moreover, the amount requested here, $15,000, is comparable to or less than other awards approved by federal courts in Illinois and elsewhere. *See, e.g., Cook*, 142 F.3d at 1016 (affirming $25,000 incentive award to plaintiff); *Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 incentive award to lead class plaintiff over objection); *Will*, 2010 WL 4818174, at *4 (awarding $25,000 each to three named plaintiffs); *Benzion v. Vivint, Inc.*, No. 12-61826 (S.D. Fla. Feb. 23, 2015) (Dkt. No. 201) (awarding $20,000 incentive award in TCPA class settlement); *Desai v. ADT Security Servs., Inc.*, No. 11-1925 (N.D. Ill. Feb. 27, 2013) (Dkt. No. 243 ¶ 20) (awarding $30,000 incentive awards in TCPA class settlement). The requested service award of $15,000 for Plaintiff Toney is reasonable and should be approved.

## V.     CONCLUSION

WHEREFORE, Class Counsel respectfully request that the Court grant this motion and award Class Counsel $716,552 in fees and $43,722.71 reimbursement of attorneys' out of pocket costs. Class Counsel further request that the Court approve a service award to Plaintiff Toney in the amount of $15,000.

Respectfully submitted,

SARAH TONEY, on behalf of herself and
others similarly situated

Dated: September 19, 2016        By:  /s/ Alexander H. Burke
                                Alexander H. Burke
                                Email: aburke@burkelawllc.com
                                Daniel J. Marovitch
                                Email: dmarovitch@burkelawllc.com
                                BURKE LAW OFFICES, LLC
                                155 North Michigan Avenue, Suite 9020
                                Chicago, Illinois 60601
                                Telephone: (312) 729-5288
                                Facsimile: (312) 729-5289

                                Edward A. Broderick
                                Email: ted@broderick-law.com
                                Anthony I. Paronich
                                Email: anthony@broderick-law.com
                                BRODERICK & PARONICH, P.C.
                                99 High Street, Suite 304
                                Boston, Massachusetts 02110
                                Telephone: (617) 738-7080

                                Matthew P. McCue
                                Email: mmccue@massattorneys.net
                                THE LAW OFFICE OF MATTHEW P. MCCUE
                                1 South Avenue, Suite 3
                                Natick, Massachusetts 01760
                                Telephone: (508) 655-1415
                                Facsimile: (508) 319-3077

                                *Attorneys for Plaintiff and the Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 19, 2016, I caused the foregoing document to be

electronically filed with the Clerk of the United States District Court for the Northern District of

Illinois using the CM/ECF system, which will send notification of such filing to all counsel of

record.

                                   /s/ Alexander H. Burke

24